## APPELLANT NATALIE ANDERSON'S PETITION FOR PANEL REHEARING AND IN THE ALTERNATIVE EN BANC REHEARING [CORRECTED]

1. Pursuant to Federal Rule of Appellate Procedure 40, Appellants Natalie Anderson respectfully petitions this Court for panel rehearing or in the alternative en banc rehearing[1], of its September 23, 2024 judgment affirming the district court's dismissal of their case. This petition is timely filed[2] within deadline ordered by the Court.

---

### SECTION I. PROCEDURAL GROUNDS FOR REHEARING

---

### I. INTRODUCTION

2. This section of the petition for rehearing addresses a fundamental issue of procedural fairness: whether appellants are entitled to present their substantive arguments on appeal before judgment is rendered against them. The First Circuit's September 23, 2024 judgment affirmed the district court's dismissal after reviewing only responses to a show cause order concerning timeliness, without permitting the appellants to file any briefs addressing the merits of their case or without providing prior notice that they would do so. This procedural issue raises significant concerns about due process and departs from normal established appellate practice.

---

[1] En banc rehearing may be appropriate here because appellants believe that the panel decision conflicts with prior First Circuit precedent including but not limited to the Vivaldi case, as further explained below, and is also a case that involves a question of critical importance.

[2] It should be noted that, on 4/11/25, appellants attempted several times to file documents using the court's e-filing system (ECF) but encountered a technical failure that rendered the ECF system inaccessible for purposes of filing documents. This impeded appellants' ability to e-file documents on Friday 4-11-25, which ostensibly was the court-ordered deadline for filing the petition for rehearing. After much frustration and seeing that the deadline was going to expire without being able to file documents using the e-filing system, and just before midnight, appellants decided to try to send an email to the court with the petition attached. Thus, after numerous unsuccessful attempts to use the ECF system, and facing the imminent deadline, appellants, as a last resort, attempted to email the Petition to the Court at ca01ml_access_coordinator@ca1.uscourts.gov at 11:59 p.m. on 4-11-25 (it was delivered at 12am, at midnight but it was sent, i.e. the send button was pressed, at 11.59pm). This was sent to the only email we have for the court, which was the ADA coordinator's email, which was given to us by the case manager clerk relating to a prior issue regarding submitting an ADA request to the court. Appellants multiple attempts to file through the ECF system and the last-minute email attempt demonstrate appellants diligence and good faith. Please take note of this technical failure. [NB: A technical failure of the court's own electronic filing system that prevents submission of documents constitutes an extraordinary circumstance beyond our control]. Similarly, on the next business day of the morning of Monday 4-14-25, Appellants attempted to electronically efile the petition (along with other documents including a motion for relief from technical failure and to allow late filing, with a declaration or affidavit of technical failure, as well as with an attendant motion to exceed word limits for the petition, which we were previously advised to do by the case manager Ashley, and a motion to seal confidential ADA request attendant to these matters), but encountered continued technical issues that prevented e-fling using the court's ECF system. Consequently, Appellants contacted the clerk promptly first thing in the morning on the next business day of Monday 4-14-25 about this issue and spoke to the court's operation supervisor (Dennis) who advised that we take certain steps to troubleshoot the issues including but not limited to contacting the Pacer help center and/or the court's efiling help desk or to conventionally file the petition by hand at the court, etc., if the issues continued (he also recommended this because we indicated we had a sealed filing to submit as well which needs to be conventionally filed and thus could be conventionally filed at the same time). He also indicated that in the meantime he would make a note of the issue and that we emailed the petition on Friday 4-11-25 (which he confirmed was received by email) and that he'd inquire of his superiors whether the emailed petition could be accepted but encouraged us to refile the petition either way. He also confirmed that mandate would not issue. We were not able to physically come to the court yesterday. However, the efiling system now appears to be working this morning. We are thus re-submitting this petition as instructed by the court's operation supervisor (Dennis). It should be noted that in refiling the petition, certain corrections were made to certain scrivener errors, grammatical errors, typos, missing words and missing exhibit that was referenced but inadvertently not attached. Please treat appellant's filing as timely in accordance with the above and please use this corrected version in lieu of the originally submitted version. Appellant will be filing additional filings addressing the above.

## II. KEY SUMMARY OF RELEVANT PROCEDURAL BACKGROUND

3. On August 3, 2023, the United States District Court for the District of New Hampshire dismissed Appellants' case with prejudice under Federal Rule of Civil Procedure 41(b) for failure to file an amended complaint by a self-imposed deadline.

4. On September 5, 2023, Appellants filed a motion for reconsideration of the district court's dismissal with prejudice.

5. On September 13, 2023, Appellants filed their notice of appeal which was docketed by this Court on September 20, 2023.

6. On September 26, 2023, the district court issued an order on the motion for reconsideration, stating:

> ENDORSED ORDER denying as moot 15 Motion for Reconsideration denying as moot 18 Motion to Intervene. Text of Order: The court granted the plaintiffs' motion for an extension of time to file a motion for reconsideration of the court's order of dismissal, clarifying that a motion for reconsideration extended the deadline to appeal until 30 days after the court decided the motion for reconsideration. Nevertheless, before the court could rule on the motion for reconsideration, the plaintiffs filed a notice of appeal of the court's order of dismissal. In light of the plaintiffs' appeal, this case is stayed and all pending motions are denied as moot without prejudice to refiling after plaintiffs' appeal is resolved. So Ordered by Judge Samantha D. Elliott.(vln)

7. On October 4, 2023, this Court issued a show cause order directing Appellants to "either move for voluntary dismissal under Fed. R. App. P. 42(b) or show cause, in writing, why this appeal should not be dismissed." The order specifically identified timeliness as the sole concern, stating that "it appears that this appeal should be dismissed as untimely" because "[a]n untimely motion for reconsideration does not toll the time for filing a notice of appeal."

8. On December 4, 2023, Appellants filed their response to the show cause order, addressing only the timeliness concern as directed.

9. On December 14, 2023, Appellants filed a supplemental response addressing arguments raised by a proposed intervenor (whose intervention was subsequently denied).

10. Nearly five months later, on May 1, 2024, the case was submitted to the panel consisting of Chief Judge Barron, Judge Gelpi, Jr., and Judge Rikelman.

11. On September 23, 2024, the Court issued its judgment affirming the district court's dismissal on the merits rather than addressing only the timeliness issue raised in the show cause order. In its judgment, the Court stated that it would "assume, without deciding, that the appeal is properly before the court".[3]

12. On February 25, 2025, the Court extended the time to file a petition for rehearing to March 27, 2025.

13. On March 14, 2025, Appellant filed a motion for clarification on the following:

    a) whether this Court's decision to affirm without allowing merits briefing was an oversight or an intentional deviation from standard appellate procedure, and whether Appellants were expected to argue the merits of their underlying case within their response to the show cause order on timeliness, despite the order's specific focus and the word limit for motions under Federal Rule of Appellate Procedure 27(d)(2).

    b) whether the Court expects her to address the underlying merits of the appeal in her forthcoming petition for rehearing (which clarification was necessary because petitions for rehearing typically address errors in the Court's decision rather than presenting arguments that were never made in the first instance).

    c) whether she is expected to address the underlying merits of the case along with the procedural issues in this court, all within the 3,900-word limit for petitions for rehearing established by Federal Rule of Appellate Procedure 40(b)(1) (especially since, given that principal briefs are normally allowed 13,000 words under Rule 32(a)(7), compressing a full merits argument into a 3,900-word petition for rehearing would significantly limit Appellant's ability to present her case).

14. On March 24, 2025, a single justice of the Court issued an order denying clarification, essentially stating that none was necessary, but extending the time to file petition for rehearing until April 7, 2025. NB: The

---

[3] NB: The Court's order did not address the propriety of the dismissal with prejudice. The appellant did not have a chance to address these and other issues because they were not allowed an opportunity to address the merits of the appeal.

order ostensibly addressed only paragraph 14a above, but not paragraph 14b or 14c above. This effectively left appellant without clarification relief requested.

15. On April 2, 2025, appellants filed a motion to allow the district court to rule on pending motion for reconsideration.

16. On April 4, 2025, a single justice of the Court issued an order denying the motion and then resetting a final deadline for filing a petition for rehearing to April 11, 2025.

### III. IMPLICATIONS FROM PROCEDURAL HISTORY AND BACKGROUND
### A. The Show Cause Order Only Pertained To Timeliness of Appeal

17. The Court's show cause order only pertained to "why this appeal should not be dismissed as untimely."

18. The Appellants' response to the show cause order only contained arguments addressing "why this appeal should not be dismissed as untimely." The appellants did not address whatsoever the underlying merits of the appeal nor did the appellants include facts and arguments showing why the underlying dismissal by the district court was unfair, unwarranted, or erroneous. This includes but is not limited to additional facts that are not evident in the district court case docket or record, of which this Court can and should take judicial notice.

19. When the appellants filed their response to the show cause order, they followed the instructions of the court carefully and adhered to the grounds, bases, and reasons for why the Court issued the show cause order.

20. The Court did not issue instructions to the appellants that they should brief the underlying merits of the appeal in their response to the show cause order for timeliness of appeal, nor could the appellants infer from the show cause order that they were in fact required to brief the merits of the appeal in addition to showing why the appeal should not be dismissed for untimeliness.

21. The appellants spent 8 pages in their response to the show cause order, focusing exclusively on the timeliness of appeal issue and were disciplined to not go beyond what the show cause order required or instructed.

22. The appellants were thus taken by surprise by the Court's judgment on the merits of the underlying appeal.

### B. Appellants' Submissions Were Incomplete Given the Limited Scope of the Show Cause Order

23. In its judgment, the Court stated that it affirmed the district court's dismissal "[a]fter careful review of the record and of appellants' submissions thus far." This phrasing is particularly notable because it acknowledges the incomplete nature of Appellants' submissions. The phrase "submissions thus far" inherently recognizes that Appellants' presentations to the Court were preliminary and incomplete. It served as a key indicator that the appellants' submissions were not complete i.e., "submissions thus far". Submissions thus far signify incompleteness. This statement alone should have triggered a reminder or otherwise alerted the Court that something was not quite right with the procedural posture of the appeal. It was in effect indicating the fact that the appellants were cut off from completing their submissions, which is in fact the case. It is not as though the appellants could have submitted further submissions at this preliminary show cause order stage of the appeal, as that would be improper and violative of the show cause order instructions. By way of analogy, if the defendants had participated in this appeal, what the Court did here with the appellants, would be tantamount to deciding the merits of the appeal without allowing the defendants to submit their brief on the merits of the appeal. If it would be unfair to do so to the defendants, then it must be likewise unfair to do so to the appellants.

24. The only submissions that Appellants made were their response to the show cause order regarding timeliness and a supplemental response addressing arguments raised by a proposed intervenor. These submissions were ostensibly constrained by the word limit (for motions, etc.) under Federal Rule of Appellate Procedure 27(d)(2). This word limit, less than half of what is permitted for principal briefs under Rule 32(a)(7), made it practically impossible to address both the timeliness issues and present a comprehensive argument on the merits of the appeal.

25. Furthermore, responses to show cause orders are typically focused exclusively on the issue raised in the order. It would have been procedurally irregular and potentially inappropriate for Appellants to include full

merits arguments in their response to a show cause order that specifically addressed only timeliness. Such an approach could have been viewed as non-responsive to the Court's directive or as attempting to circumvent the normal briefing process. So given that the show cause order focused solely on the timeliness of the appeal and given this specific focus of the show cause order, it was not apparent that Appellants should have included their full merits arguments in that response. Moreover, the word limit for motions under Federal Rule of Appellate Procedure[4] 27(d)(2) would have made it extremely difficult to present both timeliness arguments and a full discussion of the merits of the appeal. By contrast, principal briefs are allowed 13,000 words under Rule 32(a)(7).

26. The Court's recognition that it was reviewing only Appellants' "submissions thus far" should have prompted the establishment of a briefing schedule to allow Appellants to present their complete arguments on the merits of the appeal. Instead, the Court rendered judgment based on admittedly incomplete submissions, depriving Appellants of their opportunity to present their case fully.

27. NB: The use of the phrase "submissions thus far" creates a potentially misleading impression that the appellants submitted some arguments towards the merits. But this is no so. The "submissions thus far" pertained only to the timeliness issues as instructed in the show cause order. It is manifestly unfair to treat the submissions thus far as though it invited a review on the merits. The submissions thus far contained no arguments on the merits. The only way the court could review the merits was to go to the online docket of the district court themselves and review document entries on the record. It should be noted that the record of the case was not provided by the appellants to this court because no briefing was allowed whereupon the appellants could submit an appendix to this court.

### IV. ALTERNATIVE REQUEST FOR VACATUR ON PROCEDURAL GROUNDS

28. Appellants alternatively request that the Court vacate its judgment on procedural grounds and establish a briefing schedule in accordance with the Federal Rules of Appellate Procedure.

29. It is well-established that courts have inherent authority to reconsider and vacate their own judgments when necessary to correct procedural errors or prevent injustice. See Dietz v. Bouldin, 136 S. Ct. 1885, 1891 (2016) ("[A] district court possesses inherent powers that are 'governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.'") (quoting Link v. Wabash R. Co., 370 U.S. 626, 630-31 (1962)); see also Fed. R. App. P. 2 (allowing courts of appeals to "suspend any provision of these rules in a particular case and order proceedings as it directs" to expedite decision or for "good cause").

30. The error in this case—affirming on the merits without allowing briefing—is precisely the type of procedural irregularity that warrants vacatur. The Court's departure from this principle, in the present case constitutes good cause for vacating the judgment and allowing proper briefing.

31. Moreover, federal courts have emphasized the importance of giving parties notice and an opportunity to respond before making dispositive rulings. See Celotex Corp. v. Catrett, 477 U.S. 317, 326 (1986) (discussing the importance of "adequate time for discovery" before summary judgment); Stella v. Town of Tewksbury, 4 F.3d 53, 55 (1st Cir. 1993) (emphasizing the need for "notice and a meaningful opportunity to present evidence" before dismissal). By affirming on the merits without allowing Appellants to brief their substantive arguments, the Court effectively denied Appellants the procedural protections that are fundamental to our adversarial system.

32. Vacating the judgment and establishing a proper briefing schedule would serve the interests of justice and ensure that Appellants receive the full and fair consideration of their appeal that due process requires.

---

[4] NB: It is appellants' understanding that a response to a show cause order falls under Federal Rules of Appellate Procedure 27(a)(2)(A) which requires that motions or responses "state with particularity the grounds for the motion, the relief sought, and the legal argument necessary to support it." This further reinforces why the appellants could not deviate from the instructions of the show cause order for timeliness because appellants had to focus on the particular grounds of the response to the show cause order and on the legal argument necessary to support it.

# V. CONFLICTING POSTURES OF CASE AND APPEAL
## A. District Court's Stay Invitation

33. The district court explicitly preserved Appellants' right to refile their reconsideration motion after appeal resolution. The September 26, 2023 order states: "In light of the plaintiffs' appeal, this case is stayed and all pending motions are denied as moot without prejudice to refiling after plaintiffs' appeal is resolved."

34. This creates a procedural pathway for Appellants to present reconsideration arguments (or evidence) to the district court in order to reconsider the dismissal with prejudice.

35. NB: The district court technically denied the motion for reconsideration as moot because appellants filed a notice of appeal before the court ruled on it (which was done as a precaution to preserve timeliness of appeal); but the denial was not on the merits of the motion. The order explicitly states that the motion for reconsideration was denied without prejudice to refiling after the appeal is resolved. The district court has thus stayed the motion for reconsideration until after the appeal is resolved. This situation has set up a kind of Kafkaesque procedural trap as will be further elucidated below.

## B. This Court's Judgment Without Briefing

36. This Court affirmed dismissal based solely on Appellants' response to a show cause order focused on timeliness. The Court:
    a) Assumed jurisdiction "without deciding" timeliness (Judgment at 2);
    b) Cited Local Rule 27.0(c) to affirm summarily, stating "no substantial question" existed.

37. Appellants believe that this bypassed due process requirements where merits adjudication without briefing is prohibited unless the appeal is "patently frivolous."

38. This appeal is not patently or obviously frivolous. Important civil and constitutional rights including ADA protections, first and fourth amendment protections are invoked in the complaint. Similarly, upon review of a motion for immediate injunctive relief/TRO filed by the appellants, the district court ruled that their was potential merit to the claims but denied the TRO because of certain notice requirements for a TRO and it also said it would not rule on the portion of the motion seeking injunctive relief until the defendants responded. The appellants intended to appeal this decision in this appeal because the district court should have entered a TRO and because the appellants did indicate to the district court that it provided notice to the defendants. This was overlooked or misapprehended by the district court.

39. Moreover, the district court's preliminary screen of the pro se plaintiffs complaint did not result in any dismissal on the merits.

40. Thus, this should be sufficient to indicate that the district court did not view this case as frivolous. Therefore, it would be unfair for this court to view it as frivolous. The claims in the underlying case are valid, legitimate, and meritorious. Plaintiffs should be allowed to have their day in court and to proceed on the merits of their claims in the district court.

## C. Irreconcilable Procedural Conflict

41. Appellants now face a Hobson's choice:
    a) Option 1: File a rehearing petition in this court addressing the merits issues that are not yet ruled on by the district court but are contained in the pending stayed motion for reconsideration filed in the district court. This could risk waiver of rights in the district court and potentially could prejudice Appellants' ability to refile reconsideration motion in the district court.
    b) Option 2: Omit merits arguments from rehearing petition which could risk forfeiture in this court in terms of presenting full arguments in this appeal.

42. The appellants are genuinely concerned that this unfair situation will prejudice them no matter what they do.

43. It should be noted that appellants spoke to the case manager in this court and was informed that appellants have the right to file another notice of appeal if the district court denies the refiled motion for reconsideration (assuming arguendo that this court denies petition for rehearing and that the district court thereafter denies any refiled motion for reconsideration). NB: The Appellant assumes or understand that the first circuit's 9-23-24 judgment affirming the dismissal by Judge Elliott of the NH federal court does

not impede Judge Elliott from reversing her original decision of dismissal with prejudice if she so desires, and if the first circuit upholds its judgment after appellant's filing a petition for rehearing. The Appellant also assumes or understands that appellants would be free to file another appeal on any subsequent denial of the refiled motion for reconsideration in the NH federal court, as invited to do by Judge Elliott in her 9-26-23 order, should that become necessary. If this is not so, appellants ask that court provide the correct information.

### D. Preservation Of District Court's Ability To Correct Its Own Judgment

44. The district court expressly preserved Appellants' right to refile their reconsideration motion after appeal resolution.

45. Judge Elliott's original dismissal contained potential reversible errors, including failure to consider lesser sanctions.

46. Allowing the district court to rule on the pending motion for reconsideration before disposition of a petition for rehearing in this court, would promote judicial economy. If the district court reverses the dismissal, then further appeal would be become moot, eliminating the need for disposing of a petition for rehearing and the need to brief the case on the merits in this court. It would also rectify the situation of the appellants being deprived of an opportunity to brief the appeal, before this court ruled on the merits of the case.

47. If the district court denies reconsideration, then the appeal can be consolidated with all of the relevant pending issues being brought into one matter to be fully resolved by this court.

### E. Prevent Irreparable Harm From Premature Appellate Review

48. This Court affirmed dismissal without merits briefing, which appellants believe is a fundamental due process violation. This is because this court does not even know which issues the appellant planned to appeal. The court assumed that the dismissal was the only item being appealed but that is not so. Appellants had planned to appeal prior decisions including failure to issue summons for service of process and failure to set a deadline to serve process, as well as the July 21, 2022 order on preliminary injunction/TRO. By not allowing any briefing, this court could not know what issues appellants intended to appeal. This is just one example of the devastating effects of not allowing appellants any opportunity to brief the appeal.

49. Appellants face permanent loss of their civil rights claims without full merits review. The opportunity afforded by the district court invitation to refile motion for reconsideration provides an opportunity for merits review by the district court, which has not yet occurred.

50. Appellants have a constitutionally protected interest in such meaningful merits review as this case involves constitutional claims (1st/14th Amendment issues) and because dismissal with prejudice constitutes "legal death penalty" sanction.

### F. This Court's Judgment Did Not Address Pending Motion For Reconsideration Not Yet Ruled On In The District Court

51. This Court's summary affirmance focused solely on whether the district court abused its discretion in dismissing under Rule 41(b). It did not—and ostensibly could not—address Appellants' forthcoming motion for reconsideration arguments to be refiled in the district court, which will include arguments and documents showing excusable neglect for missing deadlines and showcase the legal error of the district court's failure to consider lesser sanctions (Benitez-Garcia v. Gonzalez-Vega, 468 F.3d 1, 5 (1st Cir. 2006)).

52. It should be noted that appellants spoke to the clerk/case manager of this Court about this issue and were informed that because the district court's order staying the motion for reconsideration was issued after the notice of appeal, the district court did not include it in the official transmittal of the record to the first circuit court. Thus, the district court's September 26, 2023 order staying reconsideration until after appeal is not technically part of the record of the appeal as the clerk did not transmit it to this court. However, it is not clear whether the court reviewed or intended to include appellants' motion for reconsideration that was filed in the district court on September 5, 2023, but which motion has been stayed by the district court, in its basis for the September 23, 2024 judgment. If this court did include it, then that would result in a procedural irregularity, where a motion that was not ruled on by the district court and was stayed by the district court, was used to adjudicate an appeal without allowing briefing.

## G. Due Process Requires Avoiding Procedural Traps

53. The Fifth Amendment prohibits "sandbagging" litigants with hidden waiver risks. See Mullane v. Cent. Hanover Bank & Tr. Co., 339 U.S. 306, 313 (1950) (due process requires notice and opportunity to be heard). Jones v. Barnes, 463 U.S. 745, 751 (1983) further provides that pro se litigants cannot be held to "the same high standards as trained counsel". Also, Castro v. United States, 540 U.S. 375, 382 (2003) similarly provides that Courts must liberally construe pro se filings to avoid "inadvertent forfeiture."[5]

54. Forcing Appellants to guess whether to brief merits issues in a rehearing petition or risk waiver or to avail the use of the district court's invitation to file reconsideration after appeal—violates these principles.

55. Appellants ask the Court to really take time to hear and listen to the core heart of what appellants are trying to say and grant liberal construction to this pleading.

## VI. PROCEDURAL CONUNDRUM
### A. Procedural Conundrum

56. The pending motion for reconsideration in the district court and the current posture of these appellate proceedings are creating a unique procedural conundrum that complicates how to proceed with the petition for rehearing due on April 11, 2025.

57. Appellants previously filed a motion for reconsideration in the district court. This motion was significant because it was the first opportunity to present reasons for missing a deadline that led to the dismissal of the underlying case in the district court. The district court dismissed the case without warning, while a self-imposed deadline to amend the complaint was pending. At the time of dismissal, the district court was unaware of any reasons for missing the deadline or whether excusable neglect existed. Unfortunately, after appellants filed a notice of appeal to preserve their appellate rights, the district court stayed its consideration of the motion for reconsideration rather than ruling on it. As a result, this motion remains unresolved.

58. Appellants recently filed a motion with the First Circuit requesting clarification on whether the district court could be permitted to rule on the motion for reconsideration before proceeding further with appellate matters. It was denied.

59. This situation is particularly challenging. The First Circuit adjudicated this case on its merits following a show cause order but did so without providing appellant an opportunity to submit a comprehensive brief. Now, as appellants prepare their petition for rehearing, they are uncertain whether to include arguments on the underlying merits of their case or focus solely on procedural issues—namely, that appellants were not allowed to fully brief their case before judgment was rendered.

60. If appellants include arguments on the merits in their petition for rehearing, they may overlap with those raised in the pending motion for reconsideration in the district court. This raises concerns about whether presenting these arguments at this stage could result in forfeiting appellant's ability to pursue them in district court later. On the other hand, if appellants focus only on procedural issues in their petition and exclude arguments on the merits, they risk being told later that they waived those arguments by not including them when given this opportunity.

61. This dilemma has left appellants feeling as though they are navigating a procedural minefield reminiscent of "Indiana Jones Temple of Doom" (i.e., this is a reference to the iconic film featuring Harrison Ford). As a non-attorney litigant, appellants are deeply concerned about making an inadvertent misstep that could have serious consequences for their case.

---

[5] The Supreme Court has recognized the need for additional consideration when dealing with pro se litigants. In Erickson v. Pardus, 551 U.S. 89, 94 (2007), the Court held that pro se complaints must be liberally construed and "held to less stringent standards than formal pleadings drafted by lawyers". The Supreme Court also has recognized that pro se pleadings should be held "to less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520 (1972). The issues that need to be presented for rehearing are complex and warrant careful consideration, particularly for a pro se litigant. In Tower Ventures, Inc. v. City of Westfield, 296 F.3d 43, 47 (1st Cir. 2002), this Court emphasized the importance of providing litigants with a fair opportunity to present their case. Furthermore, in Castro v. United States, 540 U.S. 375, 381-82 (2003), the Supreme Court recognized the obligation of courts to ensure that pro se litigants are given a fair opportunity to present their arguments.

## B. Unadjudicated Motion for Reconsideration in the District Court

62. On September 26, 2023, Appellants filed a Motion for Reconsideration in the district court to address excusable neglect and factual circumstances underlying the dismissal of the case—arguments never previously presented to the district court.

63. The district court stayed this motion pending resolution of the appeal, leaving critical issues unresolved but signaling an openness or inclination of the district court to reconsider/reverse its dismissal decision.

64. This has resulted in creating ambiguity about whether arguments raised in the Motion for Reconsideration would be deemed forfeited if included in the Petition for Rehearing.

## C. Risk of Waiver or Forfeiture and Irreconcilable Procedural Conflict

65. Appellant faces a procedural Catch-22:
    a. If the Petition for Rehearing incorporates arguments from the stayed Motion for Reconsideration, Appellant risks forfeiting the right to pursue those arguments in the district court.
    b. Conversely, omitting these arguments from the Petition for Rehearing could result in waiver under the "raise-or-waive" doctrine, as this Court's judgment did not address the merits of the underlying claims.

66. It can also be said that Appellants face a Hobson's choice:
    c. Option 1: File a rehearing petition in this court addressing the merits issues that are not yet ruled on by the district court but are contained in the pending stayed motion for reconsideration filed in the district court. This could risk waiver of rights in the district court and potentially could prejudice Appellants' ability to refile reconsideration motion in the district court.
    d. Option 2: Omit merits arguments from rehearing petition which could risk forfeiture in this court in terms of presenting full arguments in this appeal.

67. The appellants are genuinely concerned that this unfair situation will prejudice them no matter what they do.

## D. Need for Clarification from the District Court

68. Therefore, allowing the district court to rule on the pending motion for reconsideration before Appellants file a petition for rehearing in this court, promotes judicial economy. If the district court reverses the dismissal, then further appeal would be become moot, eliminating the need for filing a petition for rehearing and the need to brief the case on the merits in this court. It would also rectify the situation of the appellant being deprived of an opportunity to brief the appeal before this court ruled on the merits of the case. On the other hand, if the district court denies reconsideration, then the appeal can be consolidated with all of the relevant pending issues being brought into one matter to be fully resolved by this court.

69. This affords proper due process and procedural fairness.

70. NB: The court should not take the position that there is nothing that the appellants could have said in a brief that could change its mind. This court does not know of all of the arguments and facts that the appellants would have brought forth in an appellate brief.

## VII. ANALYSIS OF LEGAL AND PROCEDURAL CONTEXT
## A. Interplay Between District Court and Appellate Proceedings

71. The stayed Motion for Reconsideration in the district court is not merely a parallel proceeding but a jurisdictional bridge between the two courts. Under 28 U.S.C. § 2106, this Court retains authority to remand cases to the district court for further proceedings, particularly where unresolved motions may impact the appellate record.

72. NB: The district court technically denied the motion for reconsideration as moot because appellants filed a notice of appeal before the court ruled on it; but the denial was not on the merits of the motion. The order explicitly states that the motion for reconsideration was denied without prejudice to refiling after the appeal is resolved. The district court stayed the motion for reconsideration until after appeal is resolved. This situation has set up a kind of Kafkaesque procedural trap as will be further elucidated below

## B. Avoiding Waiver of Appellate Rights

73. Appellant's concern about waiver is grounded in Federal Rule of Appellate Procedure 28(a)(5), which requires appellants to articulate contentions and the reasons for them, with citations to authorities and parts of the record.

74. Because the district court dismissed the case without permitting briefing on the merits, Appellant has never had an opportunity to fully develop the factual and legal basis for the claims. A rehearing petition that omits these arguments risks deeming them waived in subsequent proceedings, while one that includes them risks precluding their consideration by the district court.

75. The Court may not be aware of all issues appellants intend to appeal, as there are decisions beyond the dismissal itself that appellants wish to challenge, which we never had the opportunity to articulate in a brief.

## VIII. APPELLANTS NEED A PROPER OPPORTUNITY TO FULLY AND PROPERLY BRIEF THE APPEAL ON THE MERITS

76. Appellants are seeking to obtain a vacatur of this court affirmance of judgment. The appellants herein focus primarily on the procedural errors pertaining to the Court's premature issuance of judgment without briefing. This petition for rehearing establishes the legal and/or factual errors whereby the court overlooked or misapprehended key points of law or fact in undertaking a premature final judgment without briefing, and also thereby establishing the exceptional importance of the above issues that warrant further review and reversal and by ensuring uniformity of decisions whereby the En banc panel decision does not conflict with existing precedent.

77. Appellants thereafter hope to submit a full and complete brief including:
    a) Why the underlying case should not have been dismissed by the district court.
    b) Why, even if the case were to be dismissed, it should not have been dismissed with prejudice.

78. The appellants need a proper opportunity to do that. A petition for rehearing does not properly allow for that.

## IX. THE APPELLANTS WERE NOT ALLOWED ORAL ARGUMENT OR TO REQUEST ORAL ARGUMENT BECAUSE THE COURT PREMATURELY AFFIRMED THE CASE ON THE MERITS AT THE SHOW CAUSE FOR TIMELINESS STAGE WITHOUT A FINDING OF UNTIMELINESS

79. Oral arguments are a critical component of the appellate process in federal courts, including the First Circuit Court of Appeals. According to Rule 34 of the Federal Rules of Appellate Procedure, which applies to all federal circuit courts including the First Circuit, oral argument should be allowed in every case unless specific exceptions apply. This establishes a presumptive right to oral argument in appellate cases, including those in the First Circuit Court of Appeals. This rule creates a baseline expectation that parties will have the opportunity to present their case orally before the court renders a decision on the merits of an appeal. The presumption of allowing oral arguments can be overcome only when a panel of three judges who have examined the briefs and record unanimously agrees that oral argument is unnecessary for any of the following specific reasons:
    a) The appeal is frivolous
    b) The dispositive issue or issues have been authoritatively decided
    c) The facts and legal arguments are adequately presented in the briefs and record, and the decisional process would not be significantly aided by oral argument.

80. This means that in the First Circuit, as in all federal appellate courts, oral arguments should be granted unless these specific conditions are met.

81. In this case, the panel of three judges could not have made a determination that oral argument was not necessary, based on the briefs, because they did not review the briefs as none were submitted or allowed to be submitted.

82. Moreover, as noted previously, the panel of three judges could not have made a determination that the appeal was frivolous because the district court found preliminary merit to the underlying claims and because the district court has shown openness or inclination to reverse the dismissal.

83. Oral arguments serve several critical functions in the appellate process including allowing parties to:
    e. Emphasize and clarify the arguments presented in their briefs
    f. Answer specific questions from the judicial panel
    g. Address points that may have been left unresolved in the written submissions
    h. Respond to concerns the judges may have about the case.
84. If the Court was going to not allow oral argument, as is otherwise afforded in other cases, then the Court should especially ensure that appellants have a proper opportunity to submit written briefs which may be the only opportunity to advocate their position. It is a double whammy in this instance where the appellants were not provided any opportunity to provide written brief AND oral argument, and where the appeal was not deemed frivolous on its face.
85. To be clear, the appellants do hereby request oral argument after briefing, in order to have an opportunity to advocate orally for their position before the court makes its decision on the merits.
86. Note: the appellants also do hereby request oral argument on this petition for rehearing. Oral argument would assist the Court in fully understanding the complex legal and factual issues presented in this petition and the Court would benefit from further clarification and emphasis through oral advocacy before the Court. Oral argument would allow counsel to directly address any questions or concerns of the Court. This is especially necessary given the pro se status of the appellants who are not trained in law or legal writing and may need an opportunity to orally explain their arguments to the court to ensure that they can be meaningfully and properly heard. This is also necessary given the ADA issues affecting the appellants as articulated in previously submitted ADA request (Note: Appellants cannot go into further detail to explain this point without violating confidentiality).

---

## SECTION II: SUBSTANTIVE GROUNDS FOR REHEARING

---

87. This section of the petition for rehearing addresses certain substantive grounds for rehearing.

## X. SUBSTANTIVE GROUNDS FOR REHEARING
### A) Substantive Grounds for Rehearing

88. This Court should grant rehearing because it has overlooked or misapprehended several key points of law and fact:
    a) The Court overlooked the district court's failure to consider lesser sanctions before dismissing the case with prejudice.
    b) The Court misapplied the abuse of discretion standard in reviewing the district court's dismissal with prejudice under Rule 41(b).
    c) The Court misinterpreted the district court's June 9, 2023 order granting an extension.

### B. The Court Overlooked the Failure to Consider Lesser Sanctions

89. This Court has consistently held that dismissal with prejudice is "a harsh sanction" that should be employed only after consideration of lesser sanctions. The district court's order contains no indication that it considered any lesser sanctions before dismissing the case with prejudice. This Court overlooked this critical omission in affirming the dismissal. In Benitez-Garcia v. Gonzalez-Vega, 468 F.3d 1, 5 (1st Cir. 2006), this Court reversed a Rule 41(b) dismissal where the district court failed to consider lesser sanctions, explaining that "the judge should consider the broad panoply of lesser sanctions available to it." By affirming without addressing this issue, the Court has departed from its own precedent.

90. Moreover, the failure to timely file an amended complaint (which was based on a self-requested deadline to amend) should ordinarily result in adjudicating the original complaint, thus forfeiting the right to amend the complaint, not the dismissal of the entire case and certainly not with prejudice, which was overly harsh, unfair, and disproportionate to the failure. There was no warning that there could be dismissal with prejudice for failing to amend the complaint which is a discretionary thing (i.e., whether a plaintiff amends a complaint or stands on the original complaint is left to the discretion of the plaintiff and is not required

as a matter of law especially where the amendment of the complaint was not ordered by the court after a review on the merits or after a motion to dismiss was ruled on, but was simply allowed by request of the plaintiff to add additional facts/events that occurred since the filing of the original complaint). This is especially so where the district court already found possible merit to the original complaint in its prior ruling on a motion for temporary restraining order. How could the district court reasonably and fairly dismiss with prejudice the original complaint for not filing a self-requested amendment to the complaint? Again, this is an extreme and unprecedented sanction. This Court evidently failed to consider these facts or factors, having not benefited from reading the appellants' briefing because such briefing was not allowed to be submitted.

### C. The Court Misapplied the Abuse of Discretion Standard

91. In affirming the district court's dismissal under Rule 41(b), the Court summarily affirmed without any analysis of whether the district court's decision was made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis. Cody v. Manson, 409 F.3d 1, 3 (1st Cir. 2005). Proper application of the abuse of discretion standard requires a careful review of the district court's reasoning and the circumstances of the case. See Malot v. Dorado Beach Cottages Assocs., 478 F.3d 40, 44 (1st Cir. 2007). The Court's summary affirmance without such analysis constitutes error, especially without allowing briefing by the appellants.

92. This Court also cited the abuse of discretion standard from Vivaldi Servicios De Seguridad, Inc. v. Maiso Grp., Corp., 93 F.4th 27, 30-31 (1st Cir. 2024). However, the Court failed to actually apply that standard, instead summarily affirming without any analysis of whether the district court's decision was "made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis." Cody v. Manson, 409 F.3d 1, 3 (1st Cir. 2005).

93. There are other items that the appellants need to address in their briefing, without which they will be deprived of the proper and meaningful opportunity to be heard.

### D. The Court Misinterpreted the District Court's Extension Order

94. The Court's judgment invokes an interpretation of the district court's order that overlooks the ambiguity in the district court's order (i.e., there was no specific deadline ordered by the court, etc., among other things) and its attendant impact on the appellants' understanding of how to proceed in the underlying case. This would have been addressed in the appellants' briefing if they had been allowed to submit their brief. By engaging in this one-sided process, the Court has only considered an incomplete picture of what transpired in the district court and failed to allow the appellants to provide their briefing to complete the picture.

95. The Court's judgment states that "even construing the district court's June 9 order as extending the deadline to 45 days from entry -- that is, until July 24, 2023 -- appellants missed the deadline to file an amended complaint." This interpretation overlooks the ambiguity in the district court's order.

96. The district court's June 9 order simply stated that the motion was "granted" without specifying a new deadline. [6]

97. In order to properly address and expound upon the above, the appellants need to properly submit their full briefing on the merits of the appeal.

98. NB: It is the Appellant's reading of judicial history that the days of when courts engaged in draconian methods, blindsided parties with 'gotchas', or adopted "star chamber" or "kangaroo" measures, are things belonging to the dustbins of history. Appellants further assume that what occurred here was not likely to be the result of intentional mal-intent but ostensibly rather a thing of inadvertence, as appellants have no good reason to believe that this Court would purposefully seek to blindside appellants or intentionally strip them of their due process rights to be meaningfully heard, or would prejudge the case as being without

---

[6] These preview points highlight some of the arguments about the merits of the appeal that the appellants were not able to present due to the procedural issues raised herein. This supports the need for a proper opportunity to address these and other issues in full briefing, which the appellants were not allowed to submit before the court's judgment. This underscores the main argument herein that the appellants were deprived of the chance to properly brief the merits of their appeal before the court made its decision. This brief preview is presented in the context of explaining why the appellant needs an opportunity to file a brief on the merits. It does not, nor is it intended to, constitute a comprehensive argument on the merits.

merit simply based on appellants' pro se status as some kind of suspect or disfavored status. Presumably, the Court would seriously seek to avoid overly harsh treatment of African-American pro se plaintiffs with important civil rights claims, and who have a meritorious case, especially where constitutional rights (i.e., right to public access, first amendment, fourteenth amendment), civil rights (disability/ADA issues, etc.) or abuse are involved. Ultimately, Appellant believes that the Court should be a place of refuge for those who are the most vulnerable in society and imagines that this Honorable Court would agree with that sentiment.

## XI. PLAIN ERROR OF THE COURT

99. Appellants believe the below constitutes plain blatant error.

### i. Analysis of September 23, 2024 Order of Dismissal:

100. The September 23, 2024 order stated:

> Pro se plaintiffs-appellants Natalie Anderson and Andre C. Bisasor filed a notice of appeal designating the district court's order of dismissal with prejudice, which the district court entered on August 3, 2023, following appellants' failure to file an amended complaint by the deadline set in prior orders. See Fed. R. Civ. P. 41(b). Prior to dismissal, appellants sought what they called a "final request for an extension of time to file an amended complaint," D.Ct. Dkt. 11 at 1, and the district court granted that request, stating, "Based on the representations of the plaintiff that there shall be no further requests for an extension of time the motion is granted," Endorsed Order, entered on district court docket June 9, 2023. With their extension motion, appellants expressly had requested an extension "of 45 more days . . . until June 30, 2023" to file an amended complaint. D.Ct. Dkt. 11 at 1. With the above-quoted ruling on the motion, the district court did not set a specific updated deadline; however, even construing the district court's June 9 order as extending the deadline to 45 days from entry -- that is, until July 24, 2023 -- appellants missed the deadline to file an amended complaint. Accordingly, on August 3, 2023, 55 days after the district court had granted a 45-day extension, the district court entered its Rule 41(b) order of dismissal with prejudice. D.Ct. Dkt. 12. After the appeal was opened, this court entered an order to show cause flagging timeliness concerns. See generally Fed. R. App. P. 4(a). Appellants have responded.
>
> We assume, without deciding, that the appeal is properly before the court. See Aponte–Rosario v. Acevedo–Vilá, 617 F.3d 1, 6 (1st Cir. 2010) (discussing bypass of non-Article III issues in favor of affirmance on the merits). After careful review of the record and of appellants' submissions thus far, we discern no abuse of discretion and affirm the district court's dismissal of the underlying action, substantially for the reasons set forth by the district court in relevant rulings. See Local Rule 27.0(c) (court may dispose of appeal at any time if "no substantial question" is presented); Vivaldi Servicios De Seguridad, Inc. v. Maiso Grp., Corp., 93 F.4th 27, 30-31 (1st Cir. 2024) (standard of review and general principles re dismissals under Fed. R. Civ. P. 41(b)); Tower Ventures, Inc. v. City of Westfield, 296 F.3d 43, 47 (1st Cir. 2002) ("When a litigant seeks an extension of time and proposes a compliance date, the court is entitled to expect that the litigant will meet its selfimposed deadline."). All remaining pending motions, to the extent not mooted by the foregoing, are denied; this includes the pending motion to intervene. Affirmed.

101. There has been no serious delay. On 5/12/23, the plaintiffs' Motion to Extend Time to File Amended Complaint, seeking extension until 6/30/23. NB: Prior to that, the plaintiffs only sought an extension a couple of times, including due to plaintiff Bisasor undergoing major surgery.

102. On 6/9/23, the court granted plaintiffs' Motion to Extend Time Amended Complaint, stating: "Based on the representations of the plaintiff that there shall be no further requests for an extension of time the motion is granted. So Ordered by Magistrate Judge Andrea K. Johnstone.". Therefore, the extension of time expired on 6/30/23. On 8/3/23, the court ordered a dismissal of the case which was entered on the docket. Hence, only about one month of delay occurred before dismissal occurred.

103. It should be noted that, in the Pomoles case, a four-month delay "did not alone constitute misconduct sufficiently extreme to justify dismissal with prejudice." 342 F.3d at 49.

104. The plaintiffs' delay here is not a case of extreme delay warranting dismissal. Dismissal with prejudice for failure to prosecute is appropriate in the face of "extremely protracted inaction (measured in years), disobedience of court orders, ignorance of warnings, contumacious conduct, or some other aggravating circumstance." Cosme Nieves v. Deshler, 826 F.2d 1, 2 (1st Cir.1987); see 9 Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 2369 (2d ed.1995).

105.     The one-month delay by plaintiffs here is hardly the kind of "extremely protracted inaction ('measured in years)," Cosme Nieves, 826 F.2d at 2 (emphasis added), that ordinarily accompanies dismissals for failure to prosecute. See Pomales v. Celulares Telefónica, Inc., 342 F.3d 44 (2003).

106.     The first circuit has stated that: "We tend to reserve dismissal with prejudice for delays measured in years, see Cosme Nieves v. Deshler, 826 F.2d 1, 2 (1st Cir.1987) (collecting cases), while reversing dismissals for conduct resulting in delays of merely a few months. Pomales v. Celulares Telefónica, Inc., 342 F.3d 44, 48 (1st Cir.2003); see also Benítez-García, 468 F.3d at 5."

107.     Moreover, only just over a week passed after dismissal before the plaintiffs reached out to the clerk seeking clarification on the reason for dismissal and for reversing dismissal, and only 2 weeks passed before plaintiffs sought relief from the dismissal via a filed motion. The plaintiffs thus reacted quickly and diligently. See Ortiz-Anglada, 183 F.3d at 67 (holding dismissal with prejudice improper and emphasizing that the plaintiff, who had no reason to suspect her case was at risk, "responded promptly to the unexpected dismissal with a motion to reconsider it"); Cosme Nieves, 826 F.2d at 2 (holding dismissal with prejudice improper and noting that the plaintiffs "responded immediately to the only warning they received — the sua sponte dismissal — with a motion to the court").

### ii. Rule 27 was not followed:

108.     Local Rule 27.0. Motions
    (a) Assent. Motions will not necessarily be allowed even though assented to.
    (c) Summary Disposition. At any time, on such notice as the court may order, on motion of appellee or sua sponte, the court may dismiss the appeal or other request for relief or affirm and enforce the judgment or order below if the court lacks jurisdiction, or **if it shall clearly appear that no substantial question is presented. In case of obvious error the court may, similarly, reverse. Motions for such relief should be promptly filed when the occasion appears.**

109.     The word "clearly" indicates that there is no dispute or chance of a substantial question being presented. But yet the word "presented" implies briefing of some kind. The appeal was not presented in the response to the show cause order. The appeal was not presented in the notice of appeal filed in the district court. The appeal can only be "presented" in briefing. There has been no presenting of any merits question by appellants to this court. From where has the court taken the presentation of the merits questions? The court has presumed to assume and insert its assumptions of what the appellants intend to present. This is not right. It also implies a paternalism where the court appears to have taken the role of presenting to itself what it thinks the appellants merit arguments would be. This again is not right.

110.     Here, the rules indicate that if there is obvious error, the court may reverse. Yet, this court would likely not reverse without allowing briefing of the defendants in a case where the defendants prevailed. The rule further states that a motion for such relief should be promptly filed when the occasion appears. Th context suggests that summary disposition is customarily done upon motion by the opposing party. The rule also states that on such notice as the court may dismiss the appeal or affirm the judgment… Here, there is a requirement of some kind of notice by the court. No such notice was provided by the court. We had no idea that the court could bypass the briefing. If the court was going to affirm without briefing, then why did the court ask for show cause response on timeliness? At what point is it unfair to sua sponte affirm judgment without briefing or notice? What if the appellant filed a brief in a case where defendants appeared as appellees, could the court affirm or reverse judgment before the defendants filed their opposing brief? The sua sponte provision here does not mean that the court can just circumvent due process of allowing the parties to be heard. We have not been heard. It is thus unfair.

111.     The court evidently relies on the Tower Ventures case (citing "When a litigant seeks an extension of time and proposes a compliance date, the court is entitled to expect that the litigant will meet its selfimposed deadline") but this does not account for the district court's ignoring failure to consider lesser sanctions. It does not eliminate the allowance for excusable neglect which has been presented in a motion to reconsider but which has not been ruled on as yet by the district court as it has been stayed pending appeal. Moreover, the missed deadline was not a court-ordered deadline if it is a self-imposed deadline. We had not missed

any prior deadlines. This was the first and only deadline that we missed. There should have been some warning of dismissal, some notice that dismissal for missing the deadline was possible. The district court thus deprived appellants of due process and of notice. This court is also depriving appellants of due process and of notice in appealing a deprivation of due process and notice. This is a double denial of due process. This should not be. It feels as though we as African American pro se litigants are being shut out of fair participation and access to the courts and the legal system. We ask for a chance to fully and properly present our appeal on the merits. We ask the court to err on the side of caution, restraint and a deference to due process rights be fully allowed.

112.    Moreover, the failure to set a specific deadline allows for room for a substantial question to be presented.

### iii. Further Analysis of March 24, 2025 Order:

113.    The court's 3-24-25 order stated:

> With that judgment, this court summarily affirmed "the district court's dismissal of the underlying action, substantially for the reasons set forth by the district court in relevant rulings"; the court cited this court's Local Rule 27.0(c) (court may dispose of appeal at any time if "no substantial question" is presented) and relevant precedent, including Tower Ventures, Inc. v. City of Westfield, 296 F.3d 43, 47 (1st Cir. 2002) ("When a litigant seeks an extension of time and proposes a compliance date, the court is entitled to expect that the litigant will meet its self-imposed deadline."). Plaintiffs-appellants' motion for clarification is denied. No clarification is necessary. The court summarily affirmed the ruling of the district court based on the conclusion that that ruling comports with relevant decisions of the court.

114.    It should be noted that the district court did not "provide reasons in relevant rulings". The district court issued a one-sentence order of dismissal, without any reasons or explanation of those reasons. The district court did not explain its decision or show why the appellants warranted a harsh sanction of dismissal with prejudice. Even if the district court could justify dismissal without prejudice, it did not and could not justify dismissal with prejudice.

115.    Furthermore, the first circuit court judgment only addressed dismissal. It did not address the issue of the propriety of dismissal with prejudice.

116.    The first circuit court judgment does not comport with relevant rulings of this court. This is an unfair justification of the decision, especially without briefing.

### iv. Other Arguments

117.    This Court erred further because it failed to consider that the appellants are allowed to stand on their original complaint if they so choose to. There is no requirement to amend the complaint. Thus, if the appellants requested to amend the complaint and failed to meet the self-imposed deadline to amend the complaint, then the appropriate sanction was forfeiture of the opportunity to amend the complaint. Moreover, the appellants have the right to amend the complaint 21 days after service of process. The district court did not set a deadline to serve process on the defendants and did not provide the summons needed to serve process on the defendants. The district court thus erred in doing so but instead focusing on using one missed deadline of a self-requested amendment of the complaint as a basis for dismissal.

118.    The district court already ruled that the case has potential merit in its order on the request for temporary restraining order and for injunctive relief in July 2022. This shows that the case has merit and should not be dismissed on procedural technical grounds. This shows that this court should allow this case to be heard via briefing because it is a meritorious case.

### v. The Court Failed To Inform Appellants that The Show Cause Order for Timeliness Would be Converted Into A Review On The Merits.

119.    The Court failed to inform Appellants that the show cause order for timeliness would or could be converted into a review on the merits. This deprived appellants of the opportunity to address the merits.

120.    Appellants were effectively misled into thinking that they were only required to address timeliness.

121.    We ask the court to look on it from the perspective of a pro se litigant. The court may look on it only from its vantage point, that it thinks there is no real controversy here. But from our perspective, the court does not know all of what we would say in our briefing. The court might think that there is nothing that we

could say on the merits that would change its mind. If so, then arguably that meets the definition of prejudging a case and denying due process. Justice is about process/procedure as well as about substance. A denial of process justice is still a denial of justice and fairness. Its like an umpire of a sport game calling the match before the losing party had an opportunity to fully play the game, even if they are behind in scores. If the umpire said "you only have 5 minutes left, there is no way you can catch up to prevail, so I am going to end the game 5 minutes early", that would clearly be unfair. It is too much of a dangerous precedent to allow these kinds of prejudging decisions to take place. Let the game play out properly and fully. That is what we are asking. Please allow us to play out the game fully and properly by allowing us to file our briefing. Also, in the alternative, allow us to obtain reconsideration by the district court with a chance to refile after refiled reconsideration.

122.     The court essentially, and perhaps inadvertently, tricked the appellants by telling us that we needed to address timeliness, then the court said forget about timeliness as we will deal with the entire case on the merits without any briefing or argument based on submissions thus far on timeliness.

123.    See example of Castro v. United States, 540 U.S. 375 (2003) where the US Supreme Court stated:

> A federal court cannot recharacterize a pro se litigant's motion as a first §2255 motion unless it first informs the litigant of its intent to recharacterize, warns the litigant that this recharacterization means that any subsequent §2255 motion will be subject to the restrictions on "second or successive" motions, and provides the litigant an opportunity to withdraw the motion or to amend it so that it contains all the §2255 claims he believes he has. If these warnings are not given, the motion cannot be considered to have become a §2255 motion for purposes of applying to later motions the law's "second or successive" restrictions. Nine Circuits have placed such limits on recharacterization, and no one here contests the lawfulness of this judicially created requirement. Pp. 5–7.

> Because the District Court failed to give the prescribed warnings, Castro's 1994 motion cannot be considered a first §2255 motion and his 1997 motion cannot be considered a second or successive one. The Government argues that Castro's failure to appeal the 1994 recharacterization makes the recharacterization valid as a matter of "law of the case." And, according to the Government, since the 1994 recharacterization is valid, the 1997 §2255 motion is Castro's second, not his first. This Court disagrees. The point of a warning is to help the pro se litigant understand not only (1) whether he should withdraw or amend his motion, but also (2) whether he should contest the recharacterization, say, on appeal. The lack of warning prevents his making an informed judgment as to both. The failure to appeal simply underscores the practical importance of providing the warning. Hence, an unwarned recharacterization cannot count as a §2255 motion for purposes of the "second or successive" provision whether or not the unwarned pro se litigant takes an appeal. Even assuming that the law of the case doctrine applies here, the doctrine simply expresses common judicial practice; it does not limit the courts' power. Pp. 7–9. 290 F. 3d 1270, vacated and remanded.

124.    In the Castro case, the district court recharacterized a pro se pleading without notice, and then held the recharacterized pleading against the pro se party. Similarly, this court essentially recharacterized our response to the show cause order on timeliness as effectively a submission on the merits and held it against us. This is not justice. We have a meritorious civil rights case of important substance and important rights hanging in the balance.

125.    The appellants are confused regarding the court's judgment, which seems premature given that there was no briefing ordered, allowed or rendered in this appeal; only a show cause order for timeliness was issued and this and this alone was addressed in the appellant's filings. The appellant is unclear as to whether this was an error or oversight. Upon contacting the clerk staff, appellant was informed of the opportunity to file a petition for rehearing. Appellant inquired as to whether the court may sua sponte correct the potential oversight. The clerk staff stated that the situation does seem irregular on its face and implicitly confirmed that it is customary for the court to allow briefing before rendering judgment if the matter was otherwise not dismissed by this court for timeliness or some other threshold/jurisdiction reason, which did not occur here.

### vi. Further Points

126.    The court did not address the key merits of the case:

127.    In the notice of appeal, we indicated that we wanted to ask the first circuit to allow the district court to rule on the motion for reconsideration.

128.     Appellants are frustrated with the court system. It seems like procedural traps are lurking at every corner. We are losing faith in the system. People in our community are losing faith. They do not trust the system. The purpose of the law is to do justice.

129.     We have a meritorious case. Judge Elliott stated as much. We should have an opportunity to have our day in court.

130.     We had medical disabilities that impeded the timely filing of an amended complaint. We mentioned this in the motion for reconsideration. But we did not get a chance to go into detail as those issues are confidential. A motion for reconsideration to the district court would include further on the medical disabilities that go towards establishing excusable neglect.

131.     Either way, dismissal with prejudice is too harsh.

132.     We realize that this is a judicial-politically sensitive case as it involves judges in the state court. It is our understanding that judges do not like to deal with cases involving other judges. This evidently is an unspoken reality of the humanness of judges and the court system. Yet, even so, it should be noted that the underlying case is also about claims in the context of a rules committee hearing and in the context of ADA accommodations and access to public records.

133.     It should be note that we spoke to an attorney about this case who told us that the court is comprised of humans. Humans have biases and predilections. The court may have personal reasons for not wanting to hear this case regardless of the merits. We hope this is not true.

134.     The bottom line is that Judge Elliott made an error. The error was likely due to a knee-jerk reaction to a missed deadline where she did not know the reason for the missed deadline. The order inviting refiling of the motion for reconsideration signals that Judge Eliott may be inclined to grant reconsideration.

135.     This court's use of the Towers case is not applicable for purposes of finding extreme conduct as an exception to the prohibition of dismissal under the circumstances of this case. Other first circuit cases are more applicable like the recent Vivaldi case with decision issued in February 2024.

136.     NB: The current Trump administration is setting examples of the damage done when due process is eliminated and when matters are prejudged as a foregone conclusion without hearing the merits. The deportation of a man to El Salvador prison without allowing a hearing is the most glaring example of this. We presume this court finds such approach unconscionable, as a fourth circuit federal judge has declared. But we believe that there is a thin line of difference in principle between the approach of the current Trump administration and the deprivation of due process and the opportunity to be heard on the merits being done to us in this appeal.

137.     The court states there is no substantial controversy here. But this is not correct. The failure to review or consider lesser sanctions is a substantial issue.

138.     Judge Elliott did not rule on the motion to reconsider. Technically it is not part of the record because it was not brought to her attention until after the dismissal.

139.     If we address the merits of the case, we would need to address the issues in the motion for reconsideration. But those were not reviewed by the judge Elliott.

140.     If this court denies the petition for rehearing, and then we refile the motion for reconsideration as indicated by Judge Elliott's order, then we would want to preserve the right to appeal any decision on the motion to reconsider but if we deal with the merits now in the petition for rehearing, it creates a situation where the merits would be reviewed by the first circuit before judge Elliott would get to review it...that would technically prejudice us, because if judge Elliott were inclined to reverse the dismissal, then she could be impeded by the first circuit's order on the petition for rehearing. It seems that that judge Elliott should have decided the motion to reconsider first instead of staying the case.

141.     Here is also why it was wrong for this court to affirm the dismissal. We would be appealing not only the judgment but also the order staying the case, also the failure to issue summons, or the indecision on the motion to reconsider....this court would not know all our arguments because there was no brief. Technically, even if this court decided that there was no abuse of discretion in the dismissal, there could be error on other aspects of the district court's ruling or failure to rule on certain items or regarding certain procedural issues that affected the dismissal or that led up to the dismissal. But this court cannot know exactly what is before this court because no brief was allowed.

## XII. APPELLANTS INTENDED TO APPEAL INTERLOCUTORY ORDERS OR ACTIONS PRIOR TO PROCEDURAL DISMISSAL

142.    In the First Circuit, when a federal district court dismisses a case for procedural reasons (e.g., failing to amend a complaint by a deadline), the dismissal constitutes a final appealable judgment under 28 U.S.C. § 1291. This allows an appeal not only of the dismissal itself but also of prior interlocutory orders issued before the final judgment.

143.    Under 28 U.S.C. § 1291, appeals generally lie only from "final decisions" of district courts. A dismissal for failure to amend a complaint is a final decision because it "ends the litigation on the merits".

144.    Interlocutory orders (e.g., prior motions, procedural rulings) merge into the final judgment and can be challenged on appeal. This includes orders pertaining to motions to amend the complaint or orders setting deadlines or imposing sanctions or orders denying injunctive relief.

145.    Federal Rules of Appellate Procedure Rule 4(a)(1) allows appeals within 30 days of a final judgment, and Rule 3(c)(1) permits challenges to prior orders through the notice of appeal designating the final judgment.

146.    The First Circuit follows the merger principle, which holds that interlocutory orders merge into the final judgment and become reviewable upon appeal of that judgment.

147.    Courts have consistently held that "designation of the final judgment confers appellate jurisdiction over prior interlocutory orders that merge into the final judgment".

148.    Most prior orders cannot be appealed piecemeal unless they fall under exceptions like 28 U.S.C. § 1292 (e.g., injunctions) or involve "collateral orders".

### A. The Panel Overlooked Critical Interlocutory Orders Merged into the Final Judgment

149.    The Court's September 23, 2024 Judgment affirmed the district court's dismissal under Rule 41(b) for failure to meet the deadline to amend the complaint but failed to address prior interlocutory orders that preceded the procedural dismissal, including:

   a)  July 21, 2022 Order denying immediate injunctive relief and deferring ruling until defendants responded.
   b)  The district court's failure to issue summons or set deadlines for service of process, which delayed defendants' responses and created procedural hurdles.

150.    Under the merger doctrine, these orders became reviewable upon appeal of the final judgment (Commonwealth School, Inc. v. Commonwealth Academy Holdings LLC, 996 F.3d 1, 7 (1st Cir. 2021)).

151.    The Panel's failure to adjudicate these issues or to allow these issues to be presented or briefed, constitutes a "manifest error of law" under FRAP 40(a)(2).

### B. The Dismissal Was Procedural, Not a Pure "Failure to Prosecute"

152.    The district court's dismissal order cited both "failure to comply with court orders" (procedural) and "failure to prosecute." However, the dismissal explicitly stemmed from missing the self-imposed deadline to amend the complaint (July 24, 2023), a procedural defect.

153.    The First Circuit's precedent in Tower Ventures, Inc. v. City of Westfield (296 F.3d 43, 47 (1st Cir. 2002)) emphasizes that courts may enforce self-imposed deadlines, but this does not negate the requirement to review prior orders that created the procedural framework leading to dismissal. The Panel's summary affirmance without addressing these issues contravenes the merger doctrine's applicability to procedural dismissals (In re D.O., 2020 WL 4596749 (1st Cir.)).

### C. Denial of Opportunity to Brief Critical Issues

154.    The Court disposed of the appeal under Local Rule 27.0(c) without permitting Appellants to file a merits brief. This deprived Appellants of the chance to:

a) Argue how the July 21, 2022 Order and summons deficiencies directly caused delays that led to dismissal.

b) Cite binding precedent supporting review of merged orders (United States v. Joseph, 42 F.4th 21, 25 (1st Cir. 2022)).

155.    Summary disposition was improper given the complex procedural history and unresolved questions about the district court's compliance with Federal Rule of Civil Procedure 4(m) (service deadlines).

### E. Due Process Requires Adjudication of Merged Issues

156.    Courts must review orders that "bear a significant relation to the judgment." (T-Mobile Ne. LLC v. Town of Barnstable (969 F.3d 33, 39 (1st Cir. 2020))).

157.    The Panel's Judgment overlooked critical, appealable issues and denied Appellants a meaningful opportunity to be heard. Rehearing is necessary to correct these errors and ensure compliance with due process and First Circuit precedent.

---

## SECTION III. CONCLUSION

---

## XIII. CONCLUSION

158.    It should be noted that this is not appellants' brief as appellants still hope to be able to file their full and proper briefing at some point later if the court allows. Appellants hereby preserve and reserve their right to file a brief with all arguments including those not presented herein.

159.    Appellant Anderson hereby incorporates by reference the motions for clarification and motion to allow district court to rule on pending motion for reconsideration, that were recently filed in this court, as well as the motion for reconsideration filed in the district court on 9-26-23 (See **Exhibit A**) as well as Appellant Bisasor's separately filed petition for rehearing, which is intended to compliment this filing and vice versa.

## XIII. PRAYER FOR RELIEF

160.    Appellants request that the Court grant a pro se liberal construction to this pleading and construe these words in their favor. Appellants request that the Court vacate its judgment and establish a briefing schedule in accordance with the Federal Rules of Appellate Procedure.

161.    Appellants respectfully request:

a) Panel rehearing to address overlooked interlocutory orders, procedural errors and substantive issues.

b) Opportunity to file a merits brief on all issues including the merged issues.

c) Rehearing en banc if the Panel declines to revisits its decision, as this case raises issues of exceptional importance regarding the scope of merger doctrine in procedural dismissals and due process rights to brief appeal issues as well as given the conflict with prior First Circuit precedent and the need to maintain uniformity of decision by the Court.

162.    Appellants ask the Court to really take time to hear and listen to the core heart of what appellants are trying to say and to not be harsh with the appellants but to step back and consider what the fair outcome should be in the interests of justice.

163.    For the foregoing reasons, Appellants respectfully request that the Court grant this petition for rehearing, vacate its September 23, 2024 judgment, and order full briefing on the merits of this appeal or otherwise remand the case back to the district court for ruling on the stayed motion for reconsideration or, in the alternative, reverse the judgment of dismissal of the district court.

Respectfully submitted,
/s/ Natalie Anderson
Natalie Anderson

Original date: Friday, April 11, 2025 | Refiled date: Tuesday, April 15, 2025

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed/served the foregoing using the appellate CM/ECF system.

/s/ Natalie Anderson
Natalie Anderson

# EXHIBIT A

UNITED STATES DISTRICT COURT-DISTRICT OF NEW HAMPSHIRE

CIVIL ACTION NO: 1:22-cv-00264-SE

NATALIE ANDERSON, et. al., Plaintiffs,

V.

PATRICK DONOVAN et. al., Defendants

**MOTION FOR RECONSIDERATION OF THE COURT'S 8-3-23 DISMISSAL WITH PREJUDICE FOR FAILURE TO PROSECUTE**
**AND**
**INCORPORATED MEMORANDUM WITH AFFIDAVIT**

1. The plaintiffs hereby move for vacatur or reconsideration of the court's 8/3/23 dismissal with prejudice for failure to prosecute. NB: The plaintiffs also does hereby saith and depose that he following averments are true and correct to the best of our belief, knowledge and understanding.

2. Grounds for reconsideration are delineated, as follows.

## I.  FACTS

3. On 7/19/22, the plaintiffs filed the complaint in this court.

4. On 7/20/22, the plaintiffs filed a Motion for Immediate Injunctive Relief and Preliminary Injunction, with a supplement for TRO.

5. After recusal of another judge, on 7/2/22, the case was reassigned to Judge Samantha D. Elliott.

6. On 7/20/22, the plaintiff filed a Motion to Participate in Electronic Filing.

7. On 7/21/22, the court denied the Motion for Immediate Injunctive Relief "to the extent it requests a temporary restraining order. The court will rule on the portion of the motion that requests a preliminary injunction after the defendants have had an opportunity to respond. So Ordered by Judge Samantha D. Elliott."

8. On 7/27/22, the court denied Motion for to Participate in Electronic Filing, stating that: "Denied. The motion is signed by only plaintiff Bisasor, not plaintiff Anderson. Under Local Rule 83.6(b), a pro se party must represent himself or herself and "may not authorize another person who is not a member of the bar of this court to appear on his or her behalf. That includes a spouse or relative and any other party on the same side who is not represented by an attorney." So Ordered by Judge Samantha D. Elliott."

9. On 11/10/22, the court issued a show cause order with instructions to file a status report by a certain date of 12/9/22.

10. On 12/9/22, the plaintiffs filed a status report. See **Exhibit 1.**

11. On 12/9/22, the plaintiffs filed another Motion to Participate in Electronic Filing.

12. On 12/12/22, the court granted the second Motion for to Participate in Electronic Filing.

13. On 12/12/2022, the court stated the following regarding the Status Report: "As requested in the plaintiffs' filing, they may file an amended complaint on or before January 11, 2023. So Ordered by Judge Samantha D. Elliott."

14. On 1/9/23, the plaintiffs filed a Motion to Extend Time to File Amended Complaint, which was based on the plaintiff Bisasor undergoing major surgery which would result in the plaintiff Bisasor needing several months for recovery. See **Exhibit 2.**

15. On 1/11/23, the court granted the Motion to Extend Time to File Amended Complaint.

16. On 3/31/23, the plaintiffs filed a second Motion to Extend Time to File Amended Complaint, (due to certain complications regarding plaintiff's post-surgery medical situation).

17. On 4/3/23, the court granted the second Motion to Extend Time to File Amended Complaint.

18. On 5/12/23, the plaintiffs filed a Third Motion to Extend Time to File Amended Complaint (seeking extension until 7/31/23 as a result of information needed pursuant to or from a June 2, 2023 public hearing of the rules committee). See **Exhibit 3.**

19. On 6/9/23, the court granted Motion to Extend Time Amended Complaint, stating: "Based on the representations of the plaintiff that there shall be no further requests for an extension of time the motion is granted. So Ordered by Magistrate Judge Andrea K. Johnstone."

20. On 8/3/23, the court ordered a dismissal of the case which was entered on the docket.

## II.  FURTHER IMPORTANT FACTS

21. On 6/9/23, when the court granted the plaintiffs' request to extend time to amend the complaint, the court simply allowed the request. The plaintiffs did not understand this to be a court order that could be violated in the true sense of the word.

22. Similarly, it was the plaintiffs' request to amend complaint. The court did not on its own ask or instruct the plaintiffs to amend the complaint. This was a voluntary request to amend the complaint. Therefore, by allowing the plaintiffs' request to amend the complaint, the court did not issue an order in the true sense of the word. The court simply facilitated the plaintiffs' request. Therefore, the plaintiff did not understand that there was a court order that could be violated in any real sense. To the extent the court treated the delay in filing an amended complaint, as a violation of a court order, the plaintiffs apologize if they misunderstood this issue. However, the plaintiffs have not violated any other court order, assuming that this is counted as such.

23. Additionally, the delay in filing an amended complaint was largely due to the fact that the defendants sought an extension of time to respond to the plaintiffs' request for information needed from the public rules committee hearing that took place on June 3, 2023. See **Exhibit 4.**  The extension sought was 30 days from June 26, 2023. However, the defendants did not provide a response until August 7, 2023. See **Exhibit 5**. This was after the July 31, 2023 timeline for plaintiffs to file amended complaint. It was also after this court dismissed the case.

24. There were also other impediments to my having access to participate in the June 2, 2023 rules committee public hearing, resulting in my having to wait to obtain a tape recording from the defendants of the hearing. See also **Exhibit 6**. This information was critical to the amending of the complaint, without which the plaintiffs were impeded from completing the amended complaint.

25. The plaintiffs have also been seeking legal advice but it has been hard to find counsel in NH because of the conflicts relating to this matter.

26. The plaintiffs have also been befuddled and impeded by certain health challenges as will be further referenced below.

27. Because there was no warning that preceded dismissal, the plaintiffs were surprised by the dismissal of the case.

28. Similarly, the plaintiffs had reached out to the clerk but he was essentially non-responsive, in the time period after the filing of the last motion and up to prior to dismissal.

## III. ARGUMENT

29. The plaintiffs have generally pursued this case demonstrating intent to prosecute. The docket shows about 12 entries prior to dismissal. The plaintiffs have also been diligently seeking procedural clarification from the clerk or the court. There is ample evidence that the plaintiffs did not abandon the case.

30. The plaintiffs have not engaged in egregious or extreme conduct. Dismissal "should be employed only when a plaintiffs misconduct is particularly egregious or extreme," id. at 107 (citing Estate of Solis-Rivera v. United States, 993 F.2d 1, 2 (1st Cir.1993)).

31. The plaintiff's behavior was not intentional, egregious, or repetitive. Dismissal with prejudice is too harsh given the circumstances. Keane v. HSBC Bank USA, 874 F.3d 763 (2017).

32. The plaintiffs did not violate a court order. Similarly, even assuming arguendo that it could be said that the plaintiffs violated one court order (of 6/9/23), still there is no pattern of the plaintiffs repeatedly flouting court orders. Cf. e.g., Crossman v. Raytheon Long Term Disability Plan, 316 F.3d 36, 39 & n. 2 (1st Cir.2002) (noting the importance generally of finding a pattern or series of disobedience and reversing an order of dismissal where all of the alleged infractions stemmed from noncompliance with a single order).

33. Also, there has been no serious delay. On 5/12/23, the plaintiffs' Motion to Extend Time to File Amended Complaint, seeking extension until 7/31/23[1]. On 6/9/23, the court granted plaintiffs' Motion to Extend Time Amended Complaint, stating: "Based on the representations of the plaintiff that there shall be no further requests for an extension of time the motion is granted. So Ordered by Magistrate Judge Andrea K.

---

[1] NB: Prior to that, the plaintiffs only sought an extension a couple of times, including due to plaintiff Bisasor undergoing major surgery.

Johnstone.". Therefore, the extension of time expired on 7/31/23. On 8/3/23, the court ordered a dismissal of the case which was entered on the docket. Hence, only about one month of delay occurred before dismissal occurred.

34. It should be noted that, in the Pomoles case, a four-month delay "did not alone constitute misconduct sufficiently extreme to justify dismissal with prejudice." 342 F.3d at 49.

35. The plaintiffs' delay here is not a case of extreme delay warranting dismissal. Dismissal with prejudice for failure to prosecute is appropriate in the face of "extremely protracted inaction (measured in years), disobedience of court orders, ignorance of warnings, contumacious conduct, or some other aggravating circumstance." Cosme Nieves v. Deshler, 826 F.2d 1, 2 (1st Cir.1987); see 9 Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 2369 (2d ed.1995).

36. The one-month delay by plaintiffs here is hardly the kind of "extremely protracted inaction ('measured in years)," Cosme Nieves, 826 F.2d at 2 (emphasis added), that ordinarily accompanies dismissals for failure to prosecute. See Pomales v. Celulares Telefónica, Inc., 342 F.3d 44 (2003).

37. The first circuit has stated that: "We tend to reserve dismissal with prejudice for delays measured in years, see Cosme Nieves v. Deshler, 826 F.2d 1, 2 (1st Cir.1987) (collecting cases), while reversing dismissals for conduct resulting in delays of merely a few months. Pomales v. Celulares Telefónica, Inc., 342 F.3d 44, 48 (1st Cir.2003); see also Benítez-García, 468 F.3d at 5."

38. Moreover, only just over a week passed after dismissal before the plaintiffs reached out to the clerk seeking clarification on the reason for dismissal and for reversing dismissal, and only 2 weeks passed before plaintiffs sought relief from the dismissal via a filed motion.  The plaintiffs thus reacted quickly and diligently. See Ortiz-Anglada, 183 F.3d at 67 (holding dismissal with prejudice improper and emphasizing that the plaintiff, who had no reason to suspect her case was at risk, "responded promptly to the unexpected dismissal with a motion to reconsider it"); Cosme Nieves, 826 F.2d at 2 (holding dismissal with prejudice improper and noting that the plaintiffs "responded immediately to the only warning they received — the sua sponte dismissal — with a motion to the court").

39. Additionally, the plaintiffs did not know that a dismissal was possible, nor that it could be with prejudice. The court gave no warning of a dismissal, especially one with prejudice. This court gave no notice that failure to file amended complaint would result in dismissal with prejudice. Dismissal with prejudice is far too much to ask under these circumstances. See Torres-Vargas v. Pereira, 431 F.3d 389, 393 (1st Cir.2005) ("Where, as here, the court appropriately forewarns a plaintiff of the consequences of future noncompliance with an unambiguous order, the court need not exhaust less toxic sanctions before dismissing a case with prejudice.").

40. Dismissal with prejudice is also too harsh in light of the isolated nature of the conduct at issue, which is not sufficiently egregious to warrant the "death knell" of a lawsuit, see Aoude v. Mobil Oil Corp., 892 F.2d 1115, 1118 (1st Cir.1989)."[dismissal with prejudice 'is a harsh sanction,'" Benjamin v. Aroostook Medical Ctr., Inc., 57 F.3d 101, 107 (1st Cir.1995) (quoting Richman v. General Motors Corp., 437 F.2d 196, 199 (1st Cir.1971)), "which runs counter to [this Circuit's] 'strong policy favoring the disposition of cases on the merits,'" id. (quoting Zavala Santiago v. Gonzalez Rivera, 553 F.2d 710, 712 (1st Cir.1977)).

41. Dismissal with prejudice is an extraordinary action which is too drastic in this instance. The sanction of dismissal with prejudice for want of prosecution is a unique and awesome one, foreclosing forever the plaintiffs opportunity to obtain judicial redress. See Ortiz-Anglada v. Ortiz-Perez, 183 F.3d 65, 67 (1st Cir.1999) (describing dismissal with prejudice for failure to prosecute as "drastic"); Velazquez-Rivera v. Sea-Land Serv., Inc., 920 F.2d 1072, 1075-76 (1st Cir.1990) ("the most severe sanction"); Richman v. Gen. Motors Corp., 437 F.2d 196, 199 (1st Cir.1971) ("a harsh sanction"). Disposition on the merits is favored. Ortiz-Ang-lada, 183 F.3d at 66. "Dismissal with prejudice for want of prosecution is a unique and awesome [sanction]" to which courts should not resort lightly. Pomales v. Celulares Telefónica, Inc., 342 F.3d 44, 48 (1st Cir. 2003) (collecting cases)…and is appropriate "in the face of extremely protracted inaction (measured in years), disobedience of court orders, ignorance of warnings, contumacious conduct, or -some other aggravating circumstance." Id. Dismissal for failure to prosecute is usually not appropriate for garden-variety, isolated instances of negligence.

42. A dismissal sanction should be reserved for cases of "extremely protracted inaction (measured in years), disobedience of court orders, ignorance of warnings, contumacious conduct, or some other aggravating circumstance." Cosme Nieves v. Deshler, 826 F.2d 1, 2 (1st Cir.1987).

43. See also Pomoles v. Celulares Telefonica, Inc., 342 F.3d 44, 48-49 (1st Cir.2003) (reversing a dismissal with prejudice for lack of prosecution); Ortiz-Anglada v. Ortiz-Perez, 183 F.3d 65, 66-67 (1st Cir.1999) (same).

44. Where dismissal with prejudice is involved, it has long been rule in the first circuit that a case should not be dismissed with prejudice except "when a plaintiffs misconduct is particularly egregious or extreme." Benjamin v. Aroostook Med. Ctr., Inc., 57 F.3d 101, 107 (1st Cir.1995); see also Tower Ventures, 296 F.3d at 46 (explaining that not "every breach of a scheduling order warrants" dismissal with prejudice, and noting that we will not "rubber-stamp the use of dismissal as a sanction"). In addition, "fairness requires that some limits be placed on [the] use" of a sanction of this severity. Velazquez-Rivera v. Sea-Land Serv., Inc., 920 F.2d 1072, 1075-76 (1st Cir.1990). These fairness concerns encompass both the law's preference that cases be disposed of on the merits, see Pomoles, 342 F.3d at 48, and procedural aspects such as notice and an opportunity to be heard, see Ortiz-Anglada, 183 F.3d at 67.

45. Hence, dismissal with prejudice is not appropriate in this case. Several considerations underlie this argument: (1) Plaintiffs have generally prosecuted their claims except for the one month delay prior to dismissal; (2) the district court did not give plaintiffs' fair warning of its inclination to employ so severe a sanction; and (3) the one-month delay caused did not alone constitute misconduct sufficiently extreme to justify dismissal with prejudice.

46. Similarly, the plaintiffs had little reason to believe they were facing imminent dismissal of their complaint. As laypersons, the plaintiffs did not have appreciate the risk inherent in delay. See, e.g., Cintron-Lorenzo v. Departamento de Asuntos del Consumidor, 312 F.3d 522, 526 (1st Cir.2002) (protracted noncompliance with court orders, "in the teeth of explicit warnings," justified dismissal with prejudice); Chamorro, 304 F.3d at 4-5 (dismissal justified where the plaintiff, despite being "suitably forewarned," nevertheless disobeyed a court order). In the absence of any such warning, Plaintiffs' conduct was not sufficiently "extreme" to justify dismissal with prejudice. See Velazquez-Rivera, 920 F.2d at 1078 (emphasizing the lack of fair warning to the plaintiff in reversing district court's dismissal for failure to prosecute).

47. The plaintiffs brought this action in good faith to defend or vindicate their rights. The case should be heard on the merits. This court found that there may be merit to the plaintiff's case subject to further information and response by defendants. A potentially meritorious case should be resolved on the merits. The law also manifests a strong preference that cases be resolved on their merits. See Ortiz-Anglada v. Ortiz-Perez, 183 F.3d 65, 66 (1st Cir. 1999) ("[Disposition on the merits is favored.... "). There is strong preference in this circuit for adjudicating disputes on the merits, which counsels against sua sponte dismissals where there has never been any consideration of the merits.

48. The plaintiffs have further things to add to the case so that they can file one suit bringing all issues before the court rather than piecemeal in various cases. This will redound to judicial economy.

49. The plaintiffs have every intention of pursuing this case and have good reasons for having to need more time to file an amended complaint (including but not limited to the fact the defendants have acted to impede plaintiffs' ability to file an amended complaint and also have even requested a wait over 30 days to receive information from them needed for the amended complaint and which they knew we were intending to file amended complaint, among other things, etc.).

50. Thus, the plaintiffs asks the court to undo or reconsider the dismissal.

51. Additional valid grounds for reconsideration and vacatur of dismissal also includes the impact of other personal and medical issues. Plaintiff Bisasor, who is critical to the prosecution of this case, has experienced significant health challenges, which has hampered their ability to amend the complaint. Plaintiff Bisasor has had about 4 hospital procedures and over 20 medical appointments over the time since May 12, 2023, due to significant medical issues. For example, recently plaintiff Bisasor had a medical procedure that required admission to a hospital for which plaintiff Anderson also has been required to be at the hospital with him until he was ready to be discharged, as required by hospital policy as his sole caretaker and given that he would be disoriented from the procedure. NB: The plaintiffs can provide medical documentation to the court if necessary but it would need to be sealed because of privacy concerns.

52. Moreover, there is no prejudice to the defendants, who have not yet entered an appearance in this case, as it is still relatively early procedurally-speaking. Similarly, this court has not expended a significant amount of time on this case due to the procedural posture of the case.

## IV. CONCLUSION

53. The plaintiffs ask for consideration to be given to the fact that we are pro se parties.

54. The plaintiffs ask the court to grant a pro se liberal construction to our pleading.

55. The plaintiffs ask that this request be granted, or any relief deemed just and proper.

56. WHEREFORE, the plaintiffs respectfully request that this Court:

    a.  allow the motion for reconsideration;

    b.  allow a pro se liberal construction of this pleading;

    c.  grant the other relief requested in the plaintiff's pleadings;

    d.  or grant such further relief as is reasonable, right, just, fair, equitable and proper.

**Signed under the pains and penalties of perjury.**

Respectfully submitted,

s/ Natalie Anderson

Natalie Anderson

679 Washington Street, Suite # 8-206

Attleboro, MA 02703

Email: liberty_6@msn.com

Respectfully submitted,

s/ Andre Bisasor

Andre Bisasor

679 Washington Street, Suite # 8-206

Attleboro, MA 02703

Email: quickquantum@aol.com

Dated: 9-5-23

# EXHIBIT 1

UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

CIVIL ACTION NO: 1:22-cv-00264-SE

NATALIE ANDERSON, et. al.
Plaintiffs,

V.

PATRICK DONOVAN et. al.
Defendants

## **MOTION FOR EXTENSION OF TIME PURSUANT TO THE COURT'S 12-12-22 ORDER**

1. The court issued an order on 12/12/22 stating that the plaintiffs may file an amended complaint on or before January 11, 2023.
2. However, due to certain developments, the plaintiffs need an extension of time to file an amended complaint until April 1, 2023.
3. The grounds are as follows.
4. First, in their 12-9-22 status report, the plaintiffs had indicated a need to obtain legal assistance regarding the amendment of the complaint. However, due to the intervening holidays, this has been impeded. NB: In our endeavor to be conservative, we asked only for 30 days. In hindsight, the plaintiffs should have requested more time upfront.
5. Second, due to developments with his health situation, plaintiff Bisasor has several important medical appointments and procedures during the month of January and February relating to the need to address serious medical issues[1]. Consequently, his ability to fully and properly prosecute this case will be impeded, over the next 3 months.[2]
6. Plaintiff Bisasor anticipates completion of procedures, treatment and recovery by late March.
7. The plaintiffs ask for an extension of the time to file an amended complaint until April 1, 2023.
8. This will allow time for Plaintiff Bisasor to address his medical issues and be in better health. It will also allow adequate time to obtain proper legal assistance or representation regarding the substantial and complex matters involved in this case.
9. The plaintiffs ask that this request be granted, or any relief deemed just and proper.

Respectfully submitted,

/s/ Andre Bisasor
Andre Bisasor
679 Washington Street, Suite # 8-206
Attleboro, MA 02703
T: 781-492-5675
Email: quickquantum@aol.com

/s/ Natalie Anderson
Natalie Anderson
679 Washington Street, Suite # 8-206
Attleboro, MA 02703
T: 617-710-7093
Email: liberty_6@msn.com

Dated: 1-9-23

---

[1] If the court would like to see medical documentation, plaintiff Bisasor could provide such to the court. However, the plaintiffs ask for the impoundment/sealing of this information to be allowed because of the further private medical information that would be included.

[2] NB: Plaintiff Anderson will also be his main caretaker during this period.

# Exhibit 2

UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

CIVIL ACTION NO: 1:22-cv-00264-SE

NATALIE ANDERSON, et. al.
Plaintiffs,

V.

PATRICK DONOVAN et. al.
Defendants

## FINAL MOTION FOR EXTENSION OF TIME TO FILE AMENDED COMPLAINT

1. The plaintiffs requested until April 1, 2023 to file an amended complaint, which was allowed by the court.

2. However, due to certain developments/complications with the plaintiff's post-surgery medical situation, the plaintiffs need a final extension of time of 45 more days to file an amended complaint until May 15, 2023.

3. The grounds are as follows.

4. As mentioned previously, Plaintiff Bisasor (who is critical to the prosecution of this case) had several important medical appointments and procedures to address serious medical issues[1], including required recovery and healing time, and thus, consequently, his ability to fully and properly prosecute this case would be impeded.

5. However, due to certain complications regarding his post-surgery medical situation, Plaintiff Bisasor was not able to resume prosecution of this case[2] in a manner timely enough to meet the previously requested timeline of April 1, 2023. Hence, in light of the above and with the additional several medical appointments, testing and hospital visits scheduled post-surgery and with all of backlog of the issues built up since the previous motion, the plaintiffs underestimated the total time needed to meet the deadline of filing the amended complaint and now requests a final extension of 45 more days.

6. The plaintiffs do not intend to ask for another extension of time to file the amended complaint, if this motion is granted.

7. The plaintiffs ask that this request be granted, or any relief deemed just and proper.

Respectfully submitted,

/s/ Andre Bisasor
Andre Bisasor
679 Washington Street, Suite # 8-206
Attleboro, MA 02703
T: 781-492-5675
Email: quickquantum@aol.com

/s/ Natalie Anderson
Natalie Anderson
679 Washington Street, Suite # 8-206
Attleboro, MA 02703
T: 617-710-7093
Email: liberty_6@msn.com

Dated: 3-29-23

---

[1] If necessary, medical documentation for plaintiff Bisasor could be provided to the court (subject to allowance of the impoundment/sealing of this information because of the private medical information that would be included). NB. Plaintiff Anderson is the sole caretaker for Plaintiff Bisasor during this time.

[2] Similarly, due to the attendant medical complications mentioned, the plaintiffs have also been stymied in obtaining proper legal assistance or representation regarding the substantial and complex matters involved in this case.

# Exhibit 3

UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

CIVIL ACTION NO: 1:22-cv-00264-SE

NATALIE ANDERSON, et. al.
Plaintiffs,

V.

PATRICK DONOVAN et. al.
Defendants

## MOTION FOR EXTENSION OF TIME TO FILE AMENDED COMPLAINT

1. The plaintiffs requested until May 15, 2023, to file an amended complaint due to certain issues related to Plaintiff Bisasor's medical situation, which was allowed by the court.

2. However, due to certain developments with the defendants, the plaintiffs need a final extension of time of 45 more days to file an amended complaint until June 30, 2023.

3. The grounds are as follows.

4. There are new developments with the defendants. This includes a public hearing of the NH advisory rules committee (which is also a defendant in this case) that has been scheduled for June 2, 2023 (to be presided over also by Defendant Patrick Donovan), where some of the matters that are related to the complaint are on the agenda to be discussed directly. The plaintiffs may also be allowed to speak at that public hearing. See attached **Exhibit 1**.

5. Depending on the outcome of that public hearing, certain facts to be articulated in any to be amended complaint may be impacted.

6. The plaintiffs believe it is in the interest of judicial economy to wait until this public hearing before filing an amended complaint. Certain claims or the presentation of certain claims may be affected by this public hearing and its aftermath.

7. Similarly, without first being able to attend this public hearing and then to address the facts that flow therefrom, the plaintiffs believe their ability to effectively amend the complaint, and to properly prosecute this case, would be impeded.

8. The plaintiffs need the extra time to allow for the public hearing to occur, and to know the outcome thereof, and to process the implication thereof, including with the assistance of any legal counsel that plaintiffs may be able to seek or obtain.

9. This will be the final request for an extension of time to file an amended complaint, if this motion is granted.

10. The plaintiffs ask that this request be granted, or any relief deemed just and proper.

Respectfully submitted,

/s/ Andre Bisasor
Andre Bisasor
679 Washington Street, Suite # 8-206
Attleboro, MA 02703
T: 781-492-5675
Email: quickquantum@aol.com

/s/ Natalie Anderson
Natalie Anderson
679 Washington Street, Suite # 8-206
Attleboro, MA 02703
T: 617-710-7093
Email: liberty_6@msn.com

Dated: 5-12-23

# Exhibit 1

**NEW HAMPSHIRE SUPREME COURT ADVISORY COMMITTEE ON RULES**

<u>**PUBLIC HEARING NOTICE**</u>

The New Hampshire Supreme Court Advisory Committee on Rules will hold a PUBLIC HEARING at **12:30 p.m. on Friday, June 2, 2023** at the Supreme Court Building on Charles Doe Drive in Concord, to receive the views of any member of the public, the bench, or the bar as the Committee considers whether to recommend that the Supreme Court adopt proposed amendments to several court rules.

Written comments on any of the proposed amendments must be submitted to the secretary of the Committee no later than **May 16, 2023**. Comments may be emailed to the Committee on or before **May 16, 2023** at:

<u>rulescomment@courts.state.nh.us</u>

Comments may also be mailed or delivered to the Committee at the following address by **May 16, 2023**:

N.H. Supreme Court
Advisory Committee on Rules
1 Charles Doe Drive
Concord, NH 03301

Any suggestions for rule amendments other than those set forth below may be submitted in writing to the secretary of the Committee for consideration by the Committee in the future.

**ANY PERSON WHO WISHES TO ATTEND THE JUNE 2, 2023 PUBLIC HEARING REMOTELY SHOULD NOTIFY THE CLERK OF COURT AS FAR IN ADVANCE AS POSSIBLE SO THAT THE REQUIRED EQUIPMENT CAN BE AVAILABLE.**

# Exhibit 4

# Re: June 16, 2023 request to the Supreme Court Advisory Committee on Rules

From:   GeneralCounsel (generalcounsel@courts.state.nh.us)

To:     quickquantum@aol.com

Date:   Monday, June 26, 2023 at 01:39 PM EDT

Good afternoon Mr. Bisasor,

I am writing to you on behalf of the Supreme Court Advisory Committee on Rules.  The purpose of this e-mail is to acknowledge receipt of your requests to the Advisory Committee that you e-mailed on June 16, 2023.

Due to the number and nature of the requests in the email, the Advisory Committee requires additional time to provide a response.  The Advisory Committee expects to be able to provide you a response within 30 additional business days.

Sincerely,
Dianne Martin
Director and Interim General Counsel
New Hampshire Judicial Branch

# Exhibit 5

# Response to your 6/16/23 Records Request

From: Erin Creegan (ecreegan@courts.state.nh.us)

To:  quickquantum@aol.com

Date:  Monday, August 7, 2023 at 01:10 PM EDT

Good afternoon Mr. Bisasor,

Please see the attached response to your 6/16/23 request for records from the New Hampshire Supreme Court Advisory Committee on Rules.

Best,
Erin Creegan



Aug 2023 letter to Mr Bisasor.pdf
95kB

# Exhibit 6

# Fwd: Request for Copy of Recording

From:  GeneralCounsel (generalcounsel@courts.state.nh.us)

To:    quickquantum@aol.com

Cc:    TGudas@courts.state.nh.us

Date:  Tuesday, June 13, 2023 at 10:20 AM EDT

Good morning, Mr. Bisasor,

The fee for a copy of a recording of a court proceeding is $25.00, as set by the Supreme Court's order of January 25, 2013, pursuant to the provision that is now Supreme Court Rule 59(4)(b).  This is the standard fee in the judicial branch.  See, for example, Superior Court Rule 201, Probate Division Rule 169, and Family Division Rule 1.3. Although Mary Ann Dempsey may have provided you a copy of a previous recording without charge, the standard fee remains $25.00.

The $5.00 quoted to you for the recording of the June 2, 2023 public hearing of the Advisory Committee on Rules represents the approximate cost to the judicial branch of the flash drive itself.  The reduced fee ($5.00 instead of the standard $25.00) reflected the technical difficulties that you claim to have encountered during the first several minutes of the public hearing.  To move this along, the recording will be provided, on this occasion, without charge on a flash drive, which will be mailed today to the address that you have provided.  In the future, please note the standard rate of $25.00.

As previously stated, there is no recording of the March 10, 2023 meeting.

The remaining statements, characterizations, and demands in your email do not warrant a response.

Thanks very much,
Dianne Martin, Esq.
Interim General Counsel

From: Andre Bisasor <quickquantum@aol.com>
Sent: Saturday, June 10, 2023 7:45 AM
To: GeneralCounsel <GeneralCounsel@courts.state.nh.us>; Timothy Gudas
<TGudas@courts.state.nh.us>
Subject: Re: Request for Copy of Recording

EXTERNAL EMAIL WARNING! This email originated outside of the New Hampshire Judicial Branch network. Do not click on links or open attachments unless you recognize the sender and are expecting the email. Mouse over links to confirm the target before you click. Do not enter your username and password on sites that you have reached through an email link. Forward suspicious and unexpected messages to 'suspicious@courts.state.nh.us'.

Dear Tim and Diane,

Also, please note further the following regarding my request for copy of the recording of the rules committee hearing:

1) Because I obtained remote access to the hearing based on a disability request for reasonable accommodation, I am also asking for a waiver of cost of the recording as part of my disability request for reasonable accommodation.