UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT
Case No. 23-1765 | Anderson et. al v. Donovan et. al.

## APPELLANT ANDRE BISASOR'S PETITION FOR PANEL REHEARING AND IN THE ALTERNATIVE EN BANC REHEARING

1. Pursuant to Federal Rule of Appellate Procedure 40, Appellant Andre Bisasor respectfully petitions this Court for panel rehearing or in the alternative en banc rehearing[1], of its September 23, 2024 judgment affirming the district court's dismissal of their case. Grounds are as follows.[2]

---

## SECTION I: FURTHER SUBSTANTIVE GROUNDS FOR REHEARING

---

2. This section of the petition for rehearing further addresses certain substantive grounds for rehearing, complimenting, or supplementing the similar section in Appellant Anderson's petition for hearing.

### I. FURTHER SUBSTANTIVE GROUNDS FOR REHEARING

3. This Court should grant rehearing because it has overlooked or misapprehended several key points of law and fact including but not limited to the following:
   a. The Court overlooked the district court's failure to consider lesser sanctions before dismissing with prejudice.
   b. The Court misapplied the abuse of discretion standard in reviewing the district court's dismissal with prejudice under Rule 41(b).
   c. The Court misinterpreted the district court's June 9, 2023 order granting an extension.
   d. Other items that will be further outlined below.

### II. ANALYSIS OF THE PROCEDURAL FACTS PERTAINING TO THE DEADLINES AND COURT ORDERS OF APPELLANTS' CASE IN THE DISTRICT COURT

4. This section provides analysis of the procedural facts pertaining to the deadlines and court orders of this case in the district court.
5. NB: In particular, this analysis is intended to show, among other things, that the plaintiffs did not violate court orders or miss deadlines prior to the one set forth by the June 9, 2023 order (which was the one and only deadline missed by the plaintiffs).
6. The procedural facts and attendant analysis are as follows:
7. On July 19, 2022, the original complaint was filed.
   a. It should be noted that there was no deadline or court order implicated here by this docket entry by the clerk or court, whereby it could be said that the plaintiffs violated a court order or missed any deadline.
8. On July 19, 2022, the case was assigned to Judge Joseph N. Laplante with case designation as: 1:22-cv-264-JL.
   a. Similarly, there was no deadline or court order implicated here by this docket entry by the clerk or court, whereby it could be said that the plaintiffs violated a court order or missed any deadline.
9. On July 20, 2022, a notice of electronic case filing designation was entered by clerk.
   a. Similarly, there was no deadline or court order implicated here by this docket entry by the clerk or court, whereby it could be said that the plaintiffs violated a court order or missed any deadline.
10. On July 20, 2022, an order of recusal of Judge Joseph N. Laplante entered.

---

[1] En banc rehearing may be appropriate here because appellants believe that the panel decision conflicts with prior First Circuit precedent including but not limited to the Vivaldi case, as further explained below, and is also a case that involves a question of critical importance.

[2] This petition for rehearing by Appellant Bisasor is filed separately from Appellant Anderson's petition for rehearing but is intended be joined/read with her petition. It is appellants' understanding that each appellant is entitled to file their own petition for rehearing. As explained in the footnote on page 1 of Appellant Anderson's petition, due to technical problems encountered with efiling on Friday night of 4-11-25 and on Monday 4-14-25, the petition is being filed today. See also other filings accompanying this petition including motion to exceed word limit, motion for relief from technical failure and to allow late filing, and motion to seal confidential ADA request. Note: Appellants are also referred to as "plaintiffs" in the petition.

    a. Similarly, there was no deadline or court order implicated here by this docket entry by the clerk or court, whereby it could be said that the plaintiffs violated a court order or missed any deadline.

11. On July 20, 2022, plaintiffs filed a Motion for Immediate Injunctive Relief and Preliminary Injunction.

    a. Similarly, there was no deadline or court order implicated here by this docket entry by the clerk or court, whereby it could be said that the plaintiffs violated a court order or missed any deadline.

12. On July 20, 2022, plaintiffs filed a supplement to motion for injunctive relief/TRO.

    a. Similarly, there was no deadline or court order implicated here by this docket entry by the clerk or court, whereby it could be said that the plaintiffs violated a court order or missed any deadline.

13. On July 20, 2022, the case was reassigned to Judge Samantha D. Elliott with new case designation as: 1:22-cv-264-SE.

    a. Similarly, there was no deadline or court order implicated here by this docket entry by the clerk or court, whereby it could be said that the plaintiffs violated a court order or missed any deadline.

14. On July 20, 2022, plaintiffs filed a Motion to Participate in Electronic Filing.

    a. Similarly, there was no deadline or court order implicated here by this docket entry by the clerk or court, whereby it could be said that the plaintiffs violated a court order or missed any deadline.

15. On July 21, 2022, Judge Samantha Elliott issued an order denying the Motion for Immediate Injunctive Relief to the extent it requests a temporary restraining order, and stating that the court will rule on the portion of the motion that requests a preliminary injunction after the defendants have had an opportunity to respond. See **Exhibit 1**.

16. On July 27, 2022, the district court issued an order denying the Motion to Participate in Electronic Filing due to a missing signature.

    a. It should be noted here that there was no deadline or court order implicated here by this docket entry by the clerk or court, whereby it could be said that the plaintiffs violated a court order or missed any deadline.

17. On November 10, 2022, the district court entered an order stating: "*Text of Order: On or before December 9, 2022, the plaintiffs shall show cause why the court should not conclude that they have abandoned their claims against the defendants. If they fail to file a status report, the court will dismiss their claims without prejudice for lack of prosecution pursuant to Rule 41(b). So Ordered by Judge Samantha D. Elliott.(vln).*"

    a. The district court erred in issuing this show cause order because the district court did not provide the summons to serve the defendants. The lack of progress in the case was due to the district court's own inaction and fault. This was error. The district court provided no order or instructions on how to move the case forward except that it would wait until the defendants responded to the plaintiffs' motion for injunctive relief. That action was something the defendants were supposed to do, not the plaintiffs. The plaintiffs were stuck and could not do anything because of the district court's July 21, 2022 order on injunctive relief that stated it would await the response of the defendants.

    b. Here, the district court failed to provide summons or issue a service of process deadline after its order on injunctive relief/TRO. NB: Appellants intend to appeal this order as part of this appeal, which would have been explained in their brief if the court had allowed briefing.

    c. It should be noted that the district court informed the plaintiffs that if they failed to file a status report, the case would be dismissed without prejudice for lack of prosecution. This was for failing to file a status report on the progress of the case. This was not for failing to meet a deadline or failing to comply with a court order.

    d. It should be noted also that dismissal with prejudice here would not be appropriate for failing to file a status report by the deadline. This underscores why dismissal with prejudice for failing to file an amended complaint by the deadline would likewise be inappropriate. There was no difference between the two deadlines except that the status report was necessary to move the case forward whereas the amended complaint was not necessary bur discretionary because the case could move forward on the original complaint.

    e. Thus, even here, it should still be noted that there was no deadline or court order implicated here by this order, whereby it could be said that the plaintiffs violated a court order or missed any deadline.

18. On December 9, 2022, the plaintiffs filed a status report. See **Exhibit 2**.

    a. In this status report, the plaintiffs addressed the issues noted in paragraph 17 above. The plaintiffs also addressed the issue of denial of electronic filing access.

    b. Here, the plaintiffs also initiated the discretionary request to amend/supplement the original complaint.

    c. Here, the plaintiffs complied with the district court's deadline to file a status report. No court order or deadline was here violated.

19. On December 9, 2022, the plaintiffs also re-filed a Motion to Participate in Electronic Filing.

20. On December 12, 2022, the district court finally issued an order granting the Motion to Participate in Electronic Filing.

    a. For the first time in this case, the plaintiffs were granted electronic filing access.

    b. NB: The plaintiffs lived in another state outside of New Hampshire and had medical and financial reasons that made continued conventional filing prohibitive.

    c. It should be noted that there was no deadline or court order implicated here by this docket entry by the clerk or court, whereby it could be said that the plaintiffs violated a court order or missed any deadline.

21. On December 12, 2022, the district court entered an order stating: "*re 7 Status Report. Text of Order: As requested in the plaintiffs' filing, they may file an amended complaint on or before January 11, 2023. So Ordered by Judge Samantha D. Elliott.(vln).*"

    a. In this order, the judge implicitly acknowledged the issues regarding service of process raised by the plaintiffs but did not order a deadline to serve process nor provided the summons to serve process.

    b. Here, the district court responded to the plaintiffs' discretionary request to amend the complaint by stating that "they may file an amended complaint on or before January 11, 2023." It should be noted that the use of the word "may" indicates that amending the complaint was discretionary, not mandatory. The word used was not "shall" or "must", but "may". Again, this order allowing the plaintiffs to amend the complaint if they so choose, by a certain date, establishes the fact that the amending of the complaint was not mandatory. Therefore, the district court cannot dismiss this case for failing to file a discretionary filing (an amended complaint) that is not required or mandatory.

    c. Similarly, there was no deadline or court order implicated here by this docket entry by the clerk or court, whereby it could be said that the plaintiffs violated a court order or missed any deadline.

22. On January 9, 2023, the plaintiffs filed a motion to extend time to file an amended complaint.

    a. Here, the plaintiffs further initiated the discretionary request to amend/supplement the original complaint. There was no imposition of a requirement to amend the complaint. This is further borne out by the fact that the district court simply responded by stating that it was "granted".

    b. Thus, the appellants did not miss the deadline that was the subject of this motion nor violated any court order.

23. On January 11, 2023, the district court entered an order stating: "*ENDORSED ORDER granting 9 Motion to Extend Time to Amend Complaint. Text of Order: Granted. As requested the plaintiffs may file an amended complaint on or before April 1, 2023. So Ordered by Judge Samantha D. Elliott. (vln).*"

    a. Here, the district court simply responded to the extension request, by stating "as requested". This again signifies that this was discretionary. It is as the plaintiffs "requested", not as the court ordered.

    b. The appellants did not allow the deadline to lapse, but timely filed extensions prior to expiration of deadline.

    c. Thus, the appellants did not here miss the deadline that was the subject of this motion nor violated any court order.

24. On March 31, 2023, the plaintiffs filed an Emergency MOTION to Extend Time to File Amended Complaint.

    a. Here, the plaintiffs initiated another discretionary request to amend/supplement the original complaint. There was no imposition of a requirement to amend the complaint. This is further borne out by the fact that the district court simply responded by stating that it was "granted".

    b. The appellants did not allow the deadline to lapse, but timely filed extensions prior to expiration of deadline.

    c. Thus, the appellants did not miss the deadline that was the subject of this motion nor violated any court order.

25. On April 3, 2023, the district court entered an order stating: "*ENDORSED ORDER granting 10 Emergency MOTION to Extend Time to File Amended Complaint filed. Text of Order: Granted. No further extensions should be expected. So Ordered by US Magistrate Judge Andrea K Johnstone. (vln).*"
   a. Here, the district court simply responded by stating that it was "granted".
   b. This again signifies that this was discretionary.
   c. It should be noted that the appellants did not allow the deadline to lapse, but timely filed extensions prior to expiration of deadline.
   d. Thus, the appellants did not miss the deadline that was the subject of this motion nor violated any court order.

26. On May 12, 2023, the plaintiffs filed another MOTION to Extend Time to File Amended Complaint.
   a. Here, the plaintiffs initiated another discretionary request to amend/supplement the original complaint. There was no imposition of a requirement to amend the complaint.
   b. The appellants did not allow the deadline to lapse, but timely filed extensions prior to expiration of deadline.
   c. Thus, the appellants did not miss the deadline that was the subject of this motion, nor violated any court order.

27. On June 9, 2023, the district court entered an order stating: "*ENDORSED ORDER granting 11 Motion to Extend Time Amended Complaint. Text of Order: Based on the representations of the plaintiff that there shall be no further requests for an extension of time, the motion is granted. So Ordered by Magistrate Judge Andrea K. Johnstone. (vln)*".
   a. Here, the magistrate judge referenced "the representations of the plaintiffs that there shall be no further requests for an extension of time", as a basis for granting the motion to extend the time to amend the complaint.
   b. This was the last order of the district court prior to the dismissal of the case with prejudice.
   c. Here, the magistrate judge erred by not making it clear that dismissal was possible if the deadline was missed. Further, the magistrate judge gave no warning or notice that missing the deadline here would or could result in dismissal much less a dismissal with prejudice.
   d. The appellants did not allow the deadline to lapse, but timely filed for extension prior to expiration of deadline.
   e. It should be noted that the magistrate judge did not set a specific deadline in the order granting extension. The order had no clear deadline set in the order. This contrasts with the prior orders that established a clear deadline in the order itself. This signified that the district court was not demanding a set deadline but had granted the extension to the time to file an amended complaint with the understanding that the plaintiffs were not planning to seek more extensions. This in no way communicates that there was a risk of dismissal, much less one with prejudice. If the district court intended for there to be such risk of dismissal, especially with prejudice, it should have provided notice or warning of such. The appellants cannot be held accountable for the failure of the district court to provide such notice or warning as is required by due process and as is required by almost every ruling by the first circuit on this issue for decades. The district court cannot change the rules and requirements capriciously. Appellants must be able to rely on the case law and precedent set by this court. The district court must also abide by and adhere to the case law and precedent set by this court. The appellants' feet cannot be held to fire on a strict basis pertaining to the requirements of the court but then the district court is free to violate the law and precedent set by this court.

28. On August 2, 2023, the district court entered an order stating: "*ORDER DISMISSING CASE (Case Closed). So Ordered by Judge Samantha D. Elliott.(vln) (Entered: 08/03/2023)."* See **Exhibit 3**.
   a. Here, the judge erred by not making providing notice that dismissal was possible and further that dismissal with prejudice was possible. The judge further erred by not providing any opportunity for explanation of the missed deadline to file amended complaint by the plaintiffs. This even violates the Towers case. There was no serial violations of court orders or missed deadlines prior to this. The appellants followed all of the court orders prior to this, as they did not allow any deadline to lapse, but timely filed extensions prior to expiration of all deadlines. Thus, there is only one deadline that was missed and it was only this one. This court cannot find any other court order that the appellants violated or any deadline that was missed prior to this. Thus, there was no egregious or extreme or serial

4

misconduct nor is there any basis or ground to find such. This constitutes grounds for reversal of the judgment of dismissal but especially the dismissal with prejudice.

### III. COMPARATIVE ANALYSIS OF THE TOWER VENTURES CASE:

29. This section provides analysis of the first circuit case, TOWER VENTURES INC v. CITY OF WESTFIELD (2002), (hereinafter "Tower Case"), which has been cited by this court as the primary basis for basing its decision to affirm the district court's dismissal with prejudice.

30. The use of the Tower Case to affirm the district court's dismissal is not correct. This is shown by the following.

31. The second paragraph of the Tower case states:

> On May 30, 2001, the district court entered a scheduling order that, inter alia, required Ventures, on or before July 16, 2001, to effectuate certain basic discovery, designate its expert witnesses, and disclose specified information about those witnesses and their findings.  See Fed. R. Civ. P 16(b), 26(a)(2).  The deadline came and went without any discernible effort by Ventures to produce the materials required by the scheduling order.

    a. Appellants' analysis of the above is as follows:
    b. Here, the facts are distinguishable from this case because there was no discovery ordered in this case. There was no scheduling order issued by the district court in our case.

32. The third and fourth paragraph of the Tower case state:

> On August 14, 2001, the parties jointly moved to revise the scheduling order.   In that motion, Ventures represented that it had been unable to comply with the order because of its counsel's engagements elsewhere and the "summer vacations of certain individuals needed to provide information to assist in providing discovery responses."   The motion asked the court to extend the date for furnishing discovery materials to August 17, 2001, and to set a deadline of October 19, 2001 for the filing of Ventures's anticipated summary judgment motion.   The court acquiesced and immediately entered an order memorializing the proposed time line.   Despite the court's order, nothing happened.

> On November 6-eighty-one days after the revised deadline for Ventures to serve its expert witness disclosure and responses to discovery, and eighteen days after Ventures's summary judgment motion was due-the district court, citing Ventures's serial violations of the court's scheduling order, directed Ventures to show cause why the action should not be dismissed with prejudice.   On the same date, Ventures moved for a further extension of the lapsed due dates because of "unexpected delays in assembling the information" necessary to comply with its discovery obligations.1

    a. Appellants' analysis of the above is as follows:
    b. Here, the Tower district court issued a show cause order, providing notice of possible dismissal with prejudice.  The Tower district court cited serial violation of the court's scheduling order. In contrast, in our case, the district court did not issue any show cause order and did not provide any notice of dismissal with prejudice nor warned appellants of their serial violations of court orders as a basis for dismissal with prejudice. None of this occurred in our case.  Moreover, we, the appellants in our case, did not serially violate court orders. We the appellants missed one deadline and only one deadline to amend the complaint, which request to amend the complaint was discretionary and not court imposed or court required.
    c. The facts show that the Tower case is so inapposite and distinguishable from our case that is hard to understand why this court saw fit to apply it to this case. The only thing we can think of is that this is a deleterious consequence of the court failing to allow briefing and thus it has mistakenly jumped to the wrong conclusions, without truly understanding (or without having the proper information to fully understand) the critical issues and differences between this case and the Tower case. How could this Court truly understand all of these issues without briefing? This court would have to fully immerse itself into the shoes and mind of the appellants and even then there are blindspots that will inevitably arise because "sitz im leiben" (situation or setting in life) is so vastly different for the judges of this court as compared to the perspective and situation in life of the appellants. It is without controversy that judges, even of this esteemed court, are humans limited by the finitude of the human condition; they are not all-knowing or immune to human error. The judges of this court cannot possibly know or have known (or correctly assume) all that we would

5

say about the merits, without allowing us an opportunity to address the merits, in a brief or otherwise. NB: This underscores the importance of allowing briefing by parties, and allowing parties to be fully and properly heard before ruling on the merits, so as to avoid these pitfalls.

33. The fifth paragraph of the Tower case states:

Ventures filed a timely response to the show-cause order, asserting that it had furnished some draft discovery; that the defendants had not objected to the requested extension of the scheduling order;2 and that, in all events, the defendants would not be prejudiced by a further delay. Pertinently, however, Ventures gave no reason for its noncompliance beyond a general statement that its counsel had been preoccupied with the handling of other matters.

   a. Appellants' analysis of the above is as follows:
   b. Here, the case is distinguishable because the district court in our case gave us, the appellants, no opportunity to explain the missed deadline before dismissing the case with prejudice.

34. The sixth paragraph of the Tower case states:

On November 21, 2001, the district court dismissed the case for failure to comply with court orders and want of prosecution. Tower Ventures, Inc. v. City of Westfield, No. 00-30196, slip op. at 4 (D.Mass. Nov. 21, 2001) (unpublished). The court's rescript emphasized that Ventures had failed to provide an adequate explanation for its noncompliance: "all the court has been told is that [Ventures] has, on two occasions now, simply ignored court-ordered deadlines because of difficulties in providing basic discovery." Id. at 3.

   a. Appellants' analysis of the above is as follows:
   b. Here, the case is distinguishable because the Tower district court explained its decision with details. Also, in the Tower case, the plaintiff missed at least two court-ordered deadlines (which were not related to matters that were discretionary). In our case, the appellants missed one deadline on a matter that was discretionary.

35. The seventh paragraph of the Tower case states:

From a plaintiff's standpoint, the most dreaded sanction is dismissal with prejudice. Although this is strong medicine, not casually to be dispensed, a court may, in appropriate circumstances, dismiss a case with prejudice for violation of a judicial order without consideration of lesser sanctions. See, e.g., Top Entertainment Inc. v. Ortega, 285 F.3d 115, 119 (1st Cir.2002); Figueroa Ruiz v. Alegria, 896 F.2d 645, 649 (1st Cir.1990); see also Link v. Wabash R.R. Co., 370 U.S. 626, 630-31, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962). Although dismissal ordinarily should be employed only when a plaintiff's misconduct is extreme, see Enlace Mercantil Internacional, Inc. v. Senior Indus., Inc., 848 F.2d 315, 317 (1st Cir.1988), disobedience of court orders, in and of itself, constitutes extreme misconduct (and, thus, warrants dismissal), see Cosme Nieves v. Deshler, 826 F.2d 1, 2 (1st Cir.1987).

   a. Appellants' analysis of the above is as follows:
   b. In our case, the Appellants did not disobey a court order. Here, objectively, appellants' conduct was not extreme in our case.
   c. The amending of the complaint does not affect the administration of the case. The request to amend the complaint was elective/discretionary. Appellants were not required to amend the complaint. The appellant is allowed to stand on the original complaint. The district court did not order the appellants to amend the complaint. It was not the result of an order pertaining to a motion to dismiss where the district court required an amended complaint in order to cure deficiencies on failure to state a claim. This is a key point that this Court may have overlooked or misapprehended. The appellants' request to amend the complaint in our case was a request to supplement the complaint with additional facts that occurred after the filing of the original complaint. The appellants were not required to do this. The appellants could have filed a separate complaint on subsequent events or could have decided to not include subsequent events at all. This situation is in no way comparable to a court issuing a scheduling order for discovery production as a necessary means to advancing the litigation. The amendment of the complaint in our case was

not required to advance the litigation. It was sought on an elective basis because the appellants wat to add more facts to the complaint, which was not required.

d. The district court's own allowance of appellants' discretionary request to amend the complaint to supplement the case with subsequent events was not a scheduling order in this case.

e. For example, suppose a plaintiff had obtained records from a witness via subpoena and then made a request to the court to subpoena additional records from said witness. And suppose the court granted the request to subpoena additional records. Then suppose the plaintiff failed to subpoena the additional records. Could the court dismiss the case with prejudice for failing to obey a court order? That would be unconscionable.

f. Similarly, when the district court ordered that the appellants need to refile their discretionary pro se request for electronic access for efiling and to correct the missing signature, and if the appellants failed to refile the corrected request, could the court then dismiss the case with prejudice for failing to obey a court order? That would be unconscionable. The case could proceed without the refiled request for efiling access. In similar fashion, the case could proceed without the amended complaint. Thus, dismissal for failing to file a discretionary elective amended complaint was improper. It was not violation of a court order because the court order related to a discretionary act…i.e., the plaintiffs may file an amended complaint as the court first ordered. It was not required. The plaintiffs thus may or may not file an amended complaint in this case. If they failed to file an amended complaint by the deadline, then the natural consequence would be that the case would proceed on the original complaint. This is how every other court handles a discretionary request to amend the complaint.

36. The Tower case further states:

This principle applies with undiminished force to scheduling orders. To manage a crowded calendar efficiently and effectively, a trial court must take an active role in case management. Scheduling orders are essential tools in that process-and a party's disregard of such orders robs them of their utility. For that reason, litigants have an "unflagging duty to comply with clearly communicated case-management orders." Rosario-Diaz, 140 F.3d at 315.

a. Appellants' analysis of the above is as follows:

b. This was not a scheduling order nor was it a case management order. It was an order on an elective discretionary request to supplement the complaint with additional or supplemental subsequent events.

c. The case management of the case at this stage would involve setting a deadline for service of the original complaint on the defendants and providing the summons to the plaintiff for service of the complaint. The district court failed to do that. There was no case management order that fundamentally affected the district court's ability to move the case forward.

d. Without allowing briefing, this court has ostensibly misapprehended the situation.

37. The Tower case further states:

This does not mean either that every breach of a scheduling order warrants dismissal or that appellate courts will rubber-stamp the use of dismissal as a sanction, no matter how arbitrary.

a. Appellants' analysis of the above is as follows:

b. This court has said that no every breach of a scheduling order warrants dismissal. It also said it will not rubber stamp dismissals that are arbitrary.

c. Here in this case, the dismissal was arbitrary, inappropriate and without notice or opportunity to explain the missed deadline. This is not the kind of case that the Towers case identified as being deserving of dismissals.

38. The Tower case further states:

We review a trial court's choice of sanction, dismissal included, for abuse of discretion.   Nat'l Hockey League v. Metro. Hockey Club, 427 U.S. 639, 642, 96 S.Ct. 2778, 49 L.Ed.2d 747 (1976) (per curiam);  Jones, 990 F.2d at 5.

We caution, however, that this standard of review is not appellant-friendly-and a disgruntled litigant bears a heavy burden in attempting to show that an abuse occurred.   United States v. One 1987 BMW 325, 985 F.2d 655, 657 (1st Cir.1993); Spiller v. U.S.V. Labs., Inc., 842 F.2d 535, 537 (1st Cir.1988).

Against this backdrop, we turn to the facts at hand.   Ventures maintains that dismissal is too harsh a sanction because its infractions were neither willful nor egregious.   It views this as a case in which counsel on both sides tacitly agreed to conduct discovery at their own pace, and emphasizes that the resultant delay did not prejudice the defendants.

The difficulty with this argument is that it ignores the court's independent interest in administering its docket.   That interest is strong, and the court's efforts at stewardship are undermined where, as here, a party cavalierly flouts the court's scheduling orders.   Unexcused misconduct of that stripe places the choice of sanction (up to, and including, dismissal) within the sound discretion of the district court.   See Top Entertainment, 285 F.3d at 118; Barreto v. Citibank, N.A., 907 F.2d 15, 16 (1st Cir.1990).

    a.  Appellants' analysis of the above is as follows:
    b.  Here, the plaintiff did not cavalierly flout the court's orders. The plaintiff had a disability that impeded his ability to meet deadlines. The defendant had impeded the progress that was the bases for the requested extension regarding subsequent events.
    c.  This was not "unexcused conduct"

39. The Tower case further states:

To be sure, violation of a scheduling order may be excused if good cause exists for the offender's failure to comply. See Robson, 81 F.3d at 3. Here, however, the district court's show-cause order gave Ventures an opportunity to explain its serial failures to honor the discovery schedule.   Ventures responded in empty generalities, stating only that its counsel had encountered "unexpected delays" in assembling discovery.   This conclusory reply was wholly uninformative. As the lower court aptly observed, the "[p]laintiff's explanation explain[ed] nothing."   Tower Ventures, slip op. at 3. If there was a legitimate reason for Ventures's failure to comply with the scheduling order, it was not communicated to the district court.3

    a.  Appellants' analysis of the above is as follows:
    b.  The missed deadline was excusable but no opportunity to explain the excuse was provided. The district court gave no show cause order to explain the one missed deadline. Note here there was no serial failures of missing deadlines by the appellants.
    c.  The only time the plaintiff had to provide explanation was in a motion for reconsideration. But that was after the dismissal with prejudice occurred. And the district court did not rule on the motion for reconsideration because a notice of appeal had been filed before it ruled on it. This is part of the reason why appellants have asked this court to allow the district court to rule on the motion for reconsideration both in the notice of appeal and also recently in a motion to allow the district court to rule on the motion for reconsideration. But this court did not allow the request or address the issues raised by the request.

40. The Tower case further states:

When, as in this case, a non-complying party has been afforded an opportunity to explain its failure to abide by a court order, we give a wide berth to the presider's judgment that, under all of these circumstances, the proffered justification is insufficient.   See Robson 81 F.3d at 5. So it is here:  the absence of a legitimate reason, coupled with the fact that the court previously had granted Ventures an extension, made dismissal an appropriate sanction.

    a.  Appellants' analysis of the above is as follows:
    b.  Here, this court clearly and explicitly stated that a condition of its order is that a party has been afforded an opportunity to explain its failure to abide by a court order. No such opportunity has been afforded to the appellant. Therefore, the dismissal in this case violates the parameters of the Towers case because it failed to provide notice and to provide an opportunity to explain the missed deadline, before issuing the dismissal with prejudice.

41. The Tower case further states:

> If more were needed-and we doubt that it is-the circumstances surrounding the second extension request are damning. The initial motion to extend the timetable set by the scheduling order was filed on August 14, 2001.    In it, the parties requested that the time for Ventures's responses to discovery and designation of experts be extended to August 17-a mere three days later. The court had every right to expect, when it granted the requested extension, that Ventures would comply immediately. But Ventures then proceeded to ignore the August 17 deadline that it had suggested.  That is unacceptable. When a litigant seeks an extension of time and proposes a compliance date, the court is entitled to expect that the litigant will meet its self-imposed deadline. Mendez v. Banco Popular de P.R., 900 F.2d 4, 6 (1st Cir.1990). In the absence of excusatory circumstances-and none have been identified here-the litigant's failure to do so warrants an inference of deliberate manipulation.

    a. Appellants' analysis of the above is as follows:

    b. Here, the language of the Tower case further reveals that it is inapposite and distinguishable from our case. Here, the Tower case states: "*When a litigant seeks an extension of time and proposes a compliance date, the court is entitled to expect that the litigant will meet its self-imposed deadline.*" The term 'compliance date' implies that there is something that the court required the litigant to do and that the court had initially imposed a deadline for the litigant to do it, hence the term 'compliance date'. Here, there was no order by the court that required the appellant to do a thing, namely, to amend the complaint. This is a nuanced point, and one consistent with careful logic. Because the court did not initially order the plaintiffs in this case to amend the complaint, then the use of the term 'compliance date' is a misnomer if applied to this case. Although the district court granted the extension request by the plaintiffs in this case, it did not require that the plaintiffs amend the complaint in this case. Hence, there was no compliance failure by the plaintiffs. This Court has apparently conflated this situation with one where a court ordered a plaintiff to amend the complaint for defects that, if not amended, would result in dismissal. Again, there was no such order in this case.

    c. Furthermore, as a point of distinguishability, it should be noted that the appellants have excusatory circumstances. The district court provided no opportunity for the appellants to explain those excusatory circumstances prior to dismissal. This violates the principles and tenets articulated in the very Tower case that this court cited in its affirmance. Hence, this case actually helps to establish why the district court should not have dismissed the case, much less with prejudice.

42. The Tower case further states:

> In an effort to blunt the force of this reasoning, Ventures argues that the defendants were not prejudiced by its procrastination, and, therefore, that dismissal is inapropos. That assessment is far too glib. Although prejudice to the defendants can be a factor in determining whether dismissal is a condign sanction, see, e.g., Robson, 81 F.3d at 3, the analysis is multifaceted, and the presence or absence of prejudice is not determinative. To hold otherwise would devalue the judiciary's strong institutional interest in ensuring that litigants honor court orders. See Legault v. Zambarano, 105 F.3d 24, 28 (1st Cir.1997);  see also Damiani v. R.I. Hosp., 704 F.2d 12, 16 (1st Cir.1983).

    a. Appellants' analysis of the above is as follows:

    b. Here, the defendants have not entered appearance in this case, and have made no filings in this case, even though appellants gave them copies of the initial filings and the court order regarding the TRO in this case. They could have waived service and/or entered appearance in the district court but they did not do so. They chose to wait until they are served process hoping that they won't have to answer. Thus, there is and can be no prejudice to the defendants. Moreover, the defendants are the ones that impeded the appellants with obtaining the materials needed to supplement the complaint with respect to the rules committee hearing.

    c. Either way, the appellants are not placing heavy emphasis on this point regarding there being no prejudice to the defendants because the focus is on the failures of the district court in adhering to the parameters required by the Tower case. But appellants here address this just so as to eliminate it as having any bearing on the analysis of this matter.

    d. The bottom line here is that the district court's dismissal with prejudice with notice and opportunity to explain, for only one missed deadline on an elective discretionary self-requested extension on a matter that was not court ordered or court required, is an arbitrary and capricious dismissal and thus constitutes an abuse of discretion.

    e. Appellants know there is inertia to reverse this Court's decision. But I ask this court to do the right thing and not let inertia prevent it from doing justice here.

    f. If the court upholds the affirmance, the appellants request a stay of the mandate for 90 days to allow them to file a petition for writ of certiorari to the US Supreme Court. We believe this situation is so unjust that it would warrant further review by the US Supreme Court.

43. The Tower case further states:

We need go no further.4 In National Hockey League, the Supreme Court explained that sanctions for discovery violations have a dual purpose:  they serve not only to punish the offender but also to deter others from similar misconduct.   427 U.S. at 642-43, 96 S.Ct. 2778. The sanction imposed here achieves both ends. It is reasonably commensurate to the infraction, and its imposition sends a clear signal to others that court orders must be obeyed. See id. at 643, 96 S.Ct. 2778 (suggesting that dismissal as a sanction may prevent other litigants from "feel[ing] freer than we think . they should feel to flout other discovery orders of other district courts"). Viewed in this light, the dismissal of this case for noncompliance with the scheduling order was well within the ambit of the trial court's discretion. Affirmed.

    a. Appellants' analysis of the above is as follows:

    b. Here, the dismissal was not reasonably commensurate with the one missed deadline on a pre-service discretionary request to supplement the complaint with subsequent events and developments.

    c. It should be noted that the Appellants failed to file another motion to extend time after 6-9-23 for several reasons, one of which was because of medical reasons at the time.

44. The Tower case further states in its footnotes (4):

Inasmuch as the district court did not abuse its discretion in dismissing this action on the basis of Ventures's failure to comply with the scheduling order, we do not consider whether it would have been an abuse of discretion to dismiss for want of prosecution.

    a. Appellants' analysis of the above is as follows:

    b. The Tower case does not address whether there was an abuse of discretion to dismiss for want of prosecution. Thus, it can only be applied to the portion of the district court's order of dismissal with prejudice that pertained to failing to comply with court order, which in this case involves missing one time a self-requested extension to supplement the complaint with subsequent facts.

## IV. MERITS OF THE UNDERLYING CASE

45. The July 2022 order on the motion for injunctive relief/TRO preceded the dismissal and had an impacts on events leading up to the dismissal in that it deprived the plaintiffs of a speedy process of getting the defendants to respond and resolving some of the important issues raised by the motion or the complaint. The district court should have allowed the TRO. This would have preserved the records sought and required the defendants to address the issue, at the very least. This would have obviated the need to amend the complaint as supplemental events would not have occurred by the time the defendants came to court to respond the TRO issues. The district court ruled that it had jurisdiction and that the doctrines barring subject matter jurisdiction had essentially been overcome. The district court should have allowed the TRO given its ruling that effectively found prima facie merit to the claims.  If the district court had granted TRO, there would have been no dismissal with prejudice and appellants would have obtained some relief. Because the district court did otherwise, the appellants were left with no relief and then later suffered unjust dismissal with prejudice due to procedural technicalities and traps. This is unfair and untenable.

46. Appellants intended to brief these issues in this appeal but this court did not allow briefing so this court could not have considered these issues.

47. Appellants could not appeal interlocutory orders on a piecemeal basis. And even so, appellants are allowed to raise interlocutory orders on appeal after final judgment. By not allowing briefing, this court is denying the appellant the right to appeal important interlocutory orders that could not have been properly or effectively appealed on interlocutory basis in federal court. This creates a situation where the appellants' constitutional right to due process and equal treatment under the law were be violated.

48. This court cannot, or at least should not, take the position that the denial of the plaintiffs' motion for injunctive relief/TRO presents no substantial question or could present no substantial question. Therefore, it cannot be resolved upon summary disposition without briefing, and especially not on a sua sponte basis, as the summary disposition pertained only to a preliminary show cause order on timeliness of appeal and not to any merits briefing or merits presentation of questions/issues by appellants.

## V. LESSER SANCTIONS ANALYSIS

49. Here are some of the lesser sanctions that were available to the district court that were not considered or addressed at all by the district court.
   a. Forfeiting the opportunity to amend the complaint prior to service.
   b. Warning before dismissal
   c. Reprimand before dismissal
   d. Show cause order showing why the case should not be dismissed (without prejudice)
   e. Dismissal without prejudice
   f. Show cause order showing why the case should not be dismissed (without prejudice)
   g. NB: Dismissal with prejudice is the ultimate harshest sanction

50. The district court thus jumped/rushed straight to dismissal with prejudice, without warning, without notice, without due process, without opportunity to explain the missed deadline.

## VI. COMPARATIVE ANALYSIS OF VIVALDI SERVICIOS DE SEGURIDAD, INC. V. MAISO GRP., CORP., 93 F.4TH 27, 30-31 (1ST CIR. 2024) CASE

51. In February 2024, less than a year ago, and just a few months prior to the judgment in this case (in September 2024), this court entered an order in the case of Vivaldi Servicios De Seguridad, Inc. v. Maiso Grp., Corp., 93 F.4th 27, 30-31 (1st Cir. 2024), (hereinafter "Vivaldi Case") which contradicts the order in this case.

52. Upon closer scrutiny the facts of the Vivaldi case are strikingly similar to this case, yet this court arrived at the opposite conclusion of law.  As pro se litigant, this is puzzlingly as it undermines the consistency and reliability of the courts and the law, and gives the appearance of caprice and arbitrariness.

53. Here is the Vivaldi court order with appellants' comparative analysis integrated therein:

54. The Vivaldi case states:

   Dismissal under Rule 41(b) as a sanction is warranted "only when a plaintiff's misconduct has been extreme" or contumacious. Nargol, 69 F.4th at 13 (quoting Malot v. Dorado Beach Cottages Assocs., 478 F.3d 40, 44 (1st Cir. 2007)); see also Vázquez-Rijos v. Anhang, 654 F.3d 122, 127 (1st Cir. 2011); Batiz Chamorro v. Puerto Rican Cars, Inc., 304 F.3d 1, 4-5 (1st Cir. 2002); Cosme Nives v. Deshler, 826 F.2d 1, 2 (1st Cir. 1987).

   a. Appellants' analysis of the above is as follows:
   b. Appellants' conduct in this case has not been extreme.
   c. This violates the Vivaldi principles.

55. The Vivaldi case further states:

   "[D]ismissal should not be viewed either as a sanction of first resort or as an automatic penalty for every failure to abide by a court order." Lawes v. CSA Architects & Eng'rs, 963 F.3d 72, 91 (1st Cir. 2020) (alteration in original) (quoting Young v. Gordon, 330 F.3d 76, 81 (1st Cir. 2003)).

   a. Here, the district court used dismissal as a sanction of first resort.
   b. Here, the district court used dismissal as an automatic penalty for any failure to abide by a court order.
   c. This violates the Vivaldi principles.

56. The Vivaldi case further states:

"We have repeatedly made clear that 'dismissal with prejudice for want of prosecution is a unique and awesome [sanction]' to which courts should not resort lightly." Keane v. HSBC Bank USA for Ellington Tr., 874 F.3d 763, 765 (1st Cir. 2017) (alteration in original) (quoting Pomales v. Celulares Telefónica, Inc., 342 F.3d 44, 48 (1st Cir. 2003)).

   a. Further, dismissal with prejudice is a unique and awesome sanction which the district court evidently resorted to lightly in appellants' case.
   b. This violates the Vivaldi principles.

57. The Vivaldi case further states:

We balance the district court's authority to manage its docket against "the larger concerns of justice, including the strong presumption in favor of deciding cases on the merits and procedural aspects such as notice[.]" García-Pérez v. Hosp. Metropolitano, 597 F.3d 6, 7 (1st Cir. 2010) (per curiam) (internal quotation marks and citations omitted).

   a. Here, the district court gave appellants no notice.
   b. Here, the district court gave no consideration of the larger concerns of justice and the strong presumption in favor of deciding cases on their merits.
   c. It also appears that this court gave no consideration of the larger concerns of justice and the strong presumption in favor of deciding cases on their merits as it did in the Vivalidi case and other cases.
   d. NB: The Tower case is the exception where plaintiff's counsel in that case missed several deadlines for court-ordered mandatory discovery and gave no valid excuse for doing so, which was treated as an extreme case with a pattern of misconduct. That is not compatible with this case. The bar should be high for triggering the Tower case as an exception to the principles outlined in Vivaldi.
   e. It is unfair, unjust, and unreasonable for this court to construe Vilvadi principles against the appellants. This is especially so for pro se parties. Note: In the Tower case, it was plaintiff counsel's conduct that was treated as extreme, not the plaintiff.

58. The Vivaldi case further states:

That is why we have offered several, non-exhaustive factors to consider before entertaining dismissal, including "the severity of the violation, . . . the deliberateness vel non of the misconduct, mitigating excuses, prejudice to the other side and to the operations of the court, and the adequacy of lesser sanctions." Nargol, 69 F.4th at 14 (quoting Malot, 478 F.3d at 44).

   a. These non-exhaustive factors to consider before entertaining dismissal were not used by the district court. Neither were they considered by this court.
   b. NB: To the extent this court wants to bypass these factors by suggesting that this case is exactly like the Tower case, appellants have already shown that this case is not like the Tower case. The only thing that is similar to the Tower case is the fact there was a self-imposed deadline that was missed. Nothing else is comparable or similar in the facts or the substance of these cases.

59. The Vivaldi case further states:

With the presumption in favor of resolving cases on their merits in mind, dismissal "should be employed only after the district court has determined 'that none of the lesser sanctions available to it would truly be appropriate.'" Lawes, 963 F.3d at 91 (quoting Enlace Mercantil Internacional, Inc. v. Senior Indus., Inc., 848 F.2d 315, 317 (1st Cir. 1988)).

   a. Here, this court laid out a clear and firm rule: "*dismissal should be employed only after the district court has determined 'that none of the lesser sanctions available to it would truly be appropriate*'".
   b. Here, the district court employed dismissal without determining whether lesser sanctions available were truly appropriate. In doing so, the district court violated this clear Vivaldi principle.
   c. This Vivaldi case was decided/came out after the Tower case and thus supersedes the Tower case.
   d. It is unclear why this court did not address this clear principle that was articulated only a few months before, in this Vivaldi case. The only thing appellants can think of is the judicial-political nature of the complaint in this case that pertains to a state court, its judges and employees and the judicial system. Is it that this court disfavors, as a matter of prejudgment bias, any case raising concerns about judicial

branch employees of state courts or state court bodies? Is it because this might be seen as a judicial-politically sensitive case with all sorts of things in the background that dooms this case no matter the merits? If no, then why has this court overlooked the principles it so profoundly applied to the Vivaldi case? Appellants truly do not understand why this is the case. On top of that, this court appears to not want to allow the appellants to be properly heard on the merits of the case, nor allow briefing to take place, and thus seem bent on dooming this case no matter what. This is how it is coming across. We hope this is not in fact the case and that this was a matter of oversight or misapprehension. NB: If the individual justices of this court were for a moment to put themselves in our shoes, what would you think? Would you think it was fair the way this case has been handled or that different principles are being applied than that were applied to the Vivaldi case? We trust this makes sense what we are trying to say, howbeit inartfully.

60. The Vivaldi case further states:

Our circuit and others have thus looked unfavorably upon district courts dismissing cases sua sponte without showing a pattern of contumacious conduct, contemplating or giving a lesser sanction, warning the disruptive party that it may be sanctioned, or, at the very least, developing a record showing that they weighed the relevant factors seriously. For example, in Crossman v. Raytheon Long Term Disability Plan, 316 F.3d 36, 39-40 (1st Cir. 2002), we reversed the district court's dismissal of the case based on an attorney's single failure to appear at a hearing because the record showed no pattern of the plaintiff's recalcitrance or prejudice to the district court or defendant, and the district court did not consider lesser sanctions. See also Keane, 874 F.3d at 765-66 (vacating a dismissal where the plaintiff's attorney inadvertently missed a hearing because there was no notice that the district court might dismiss the case for failure to appear and the only claim of prejudice -- costs to the defendant -- could be remedied with a monetary fine).

   a. Again, here, this court laid out a clear and firm rule: that district courts must not dismiss cases sua sponte without showing a pattern of contumacious conduct, contemplating or giving a lesser sanction, warning the disruptive party that it may be sanctioned, or, at the very least, developing a record showing that they weighed the relevant factors seriously.

   b. The district court here dismissed our case sua sponte without showing a pattern of contumacious conduct, contemplating or giving a lesser sanction, warning us that we may be sanctioned, or, without at the very least, developing a record showing that they weighed the relevant factors seriously.

   c. This is an egregious violation of the Vivaldi principles.

61. The Vivaldi case further states:

Other circuits are in accord, such as in Peterson v. Archstone Communities LLC, 637 F.3d 416 (D.C. Cir. 2011). There, the D.C. Circuit vacated a dismissal order where the plaintiff did not appear for a single hearing -- just as here, where the district court did not consider other sanctions, demonstrate how failing to appear at one hearing prejudiced the defendant, or document the plaintiff's history of contumacious conduct. Id. at 418–20. Tolbert v. Leighton, 623 F.2d 585 (9th Cir. 1980), is also analogous. The Ninth Circuit reversed a district court's dismissal of a plaintiff's case sua sponte "where (1) the only evidence of dilatoriness [was] his or his attorney's failure to attend a pretrial conference; (2) the court [had] not warned that failure to attend [would] create a risk of dismissal; and (3) the case [was] still 'young.'" Id. At 587.

   a. Here, our case was still young in its very early stages, and here, the only evidence of a violation was one missed self-imposed/self-requested deadline for a discretionary request to amend the complaint, and the district court had not warned of the risk of dismissal for failing to amend the complaint by the deadline.

   b. This shows that our case and the Vivaldi case are almost exactly the same. Therefore, the same Vivaldi principles should be applied to our case in terms of prohibiting dismissal under these similar circumstances.

62. The Vivaldi case further states:

Here, we follow our own precedent and, to the extent other circuits align with our standard, are persuaded by those circuits faced with analogous scenarios. See, e.g., Keane, 874 F.3d at 765-66; Crossman, 316 F.3d at 39-40; Peterson, 637 F.3d at 418-20; Tolbert, 623 F.2d at 587. Plaintiff's counsel's non-appearance at the final pretrial conference was

13

the first and only instance of non-compliance by Plaintiff or its counsel of record.1 [1 Defendants assert that Plaintiff's counsel, without their consent, scheduled dates to meet in anticipation of the final pretrial conference that they could not attend. A review of the record, however, fails to show that the district court considered this allegation at all, other than to set the final pretrial conference. See García-Pérez, 597 F.3d at 7 n.1 (discounting the district court's attempt to rely on other purported non-compliance where "it identified no such orders and none [were] pointed out by the appellees or apparent in the record").] Just as in the cases we described above, "the only evidence of dilatoriness" was Plaintiff's counsel's "failure to attend a pretrial conference[,]" Tolbert, 623 F.2d at 587, the district court "gave no notice that failure to appear would result in dismissal[,]" Keane, 874 F.3d at 766, the record is "absen[t with] evidence – or even any contention – that the defendants were prejudiced by the delay[,]" García-Pérez, 597 F.3d at 9 (citing Benitez-Garcia v. Gonzalez-Vega, 468 F.3d 1, 5 (1st Cir. 2006)), and the district court did not "try 'less dire alternatives' before resorting to dismissal[,]" Peterson, 637 F.3d at 419 (quoting Noble v. U.S. Postal Serv., 71 F. App'x 69, 69 (D.C. Cir. 2003) (per curiam)). The district court thus improvidently dismissed the case under these circumstances.

    a.  Here, the district court gave us no notice that dismissal could result from missing the deadline, which was the first and only deadline missed by appellants. The district court gave several deadlines in this case, on various things, and the plaintiffs complied with all of them, except this one.

    b.  Note: This court too cannot suggest or assert other purported non-compliance where no such orders were identified by the district court and where none were apparent in the record.

    c.  Here, the district court did not try less dire alternatives before resorting to dismissal.

63.  The Vivaldi case further states:

We cannot discern any other basis for the district court's ruling from the record. Although the district court mentions that it made "repeated attempts to contact" Plaintiff's counsel, those appear to have been made contemporaneously with the final pretrial conference. Hence, absent any other indication in the record, we cannot conclude that these are separate and repeated violations that amount to contumacious conduct worthy of dismissal. Cf. Nargol, 69 F.4th at 14-15 (affirming dismissal where the district court explained, and the record supported, why the party's recalcitrance throughout decade-long litigation merited dismissal). And while the district court discredited Plaintiff's counsel's justification for failing to appear – to wit, that he could not connect to the video conference – this amounts to a sole violation of a court order, leading to an "automatic" dismissal that cannot stand. Lawes, 963 F.3d at 91 (quoting Young, 330 F.3d at 81).

    a.  Similarly, the court cannot conclude from the record that there were any separate and repeated violations by the appellants. There was only one missed deadline that led to an automatic dismissal without notice or warning. This likewise too cannot stand.

    b.  It should be noted that the district court has not attempted to discredit the plaintiffs' justification for missing the deadline that was proffered in the plaintiffs subsequent motion for reconsideration but instead stayed its decision on said motion to be refiled after this appeal. This signals that the district court may be inclined to grant reconsideration.

    c.  This court should not take a harsh stand at this juncture given all of the above.

64.  The Vivaldi case further states:

To be clear, our ruling today does not imply that counsel and parties are entitled to a "get-out-of-jail-free pass" to violate court orders. To the contrary, the district court had a panoply of alternative lesser sanctions it could employ. It could have, for example, fined counsel, awarded attorney's fees to the opposing party, or rescheduled the conference with a warning that any future dilatory behavior would result in more severe consequences. See, e.g., García-Pérez, 597 F.3d at 9; Crossman, 316 F.3d at 39-40. What it may not do is immediately dismiss a case upon a single, inadvertent violation of a court order and without even considering lesser sanctions. See, e.g., Keane, 874 F.3d at 765-67; Crossman, 316 F.3d at 39-40.

    a.  Here, the court shows examples of lesser sanctions that could have been employed in the Vivaldi case.

    b.  Similarly, the district court could have employed lesser sanctions in this case.

65.  The Vivaldi case further states:

We thus advise district courts not to automatically penalize the parties, who may have meritorious claims, for an attorney's single mistake or lapse. Cf. Carpenter v. City of Flint, 723 F.3d 700, 704 (6th Cir. 2013) (advising against involuntary dismissal with prejudice unless the circumstances warrant it because it "deprives a plaintiff of his day in court due to the inept actions of his counsel" (quoting Patterson v. Township of Grand Blanc, 760 F.2d 686, 688 (6th Cir. 1985))).

    a.  Here, the court advised district courts to not automatically penalize parties for a single mistake or lapse.
    b.  Presumably, this advisory applies to the NH federal district court.
    c.  Here, the pro se plaintiffs made only one mistake or lapse.
    d.  Here, the district court has effectively deprived the pro se plaintiffs of their day in court due to one mistake or lapse.
    e.  The court's advisory in Vivaldi should apply with equal force to this case.

66. The Vivaldi case further states:

We further remind district courts to afford "the strong presumption in favor of deciding cases on the merits" the weight that it deserves. García-Pérez, 597 F.3d at 7 (quoting Malot, 478 F.3d at 43).

    a.  Here, the court reminds district courts to afford the strong presumption in favor of deciding cases on the merits" the weight that it deserves.
    b.  Presumably, this advisory applies to the NH federal district court.
    c.  The court's advisory in Vivaldi should apply with equal force to this case.

## VII. FURTHER COMPARATIVE ANALYSIS OF THE VIVALDI CASE

### A. Facts of Vivaldi Case:

67. Here is basic summary of the facts Vivaldi case as follows:
    a.  Plaintiff filed a complaint.
    b.  Defendants moved to dismiss.
    c.  Plaintiff was permitted to file an amended complaint.
    d.  After Plaintiff did so, the case proceeded to discovery.
    e.  The district court resolved the few discovery issues that arose before it.
    f.  The district court scheduled a final pretrial conference and ordered the parties to appear at said conference.
    g.  Plaintiff's counsel failed to appear at the final pre-trial conference.
    h.  No excuse for failing to appear was provided by plaintiff's counsel in advance of or at the conference.
    i.  The district court was not in receipt of an excuse and did not know the reason for the failure to appear.
    j.  Also, the district court attempted to contact plaintiffs' counsel at the time of the conference but counsel was unreachable.
    k.  Consequently, the district court dismissed the case.
    l.  Up until the final pretrial conference, the district court -- as evidenced by the docket -- did not note a single non-compliant act by any of the parties.
    m.  Plaintiff's counsel filed a motion to clarify the district court's decision, asking if, in fact, the district court dismissed the case outright. In this motion, Plaintiff's counsel informed the district court that he "was unable to connect for reasons [outside] of [his] control."
    n.  The district court denied the motion to clarify stating: "Motion denied. There is nothing to clarify. This case was dismissed due to the failure of plaintiff's counsel to appear at a duly scheduled final pretrial conference notwithstanding repeated attempts to contact him. If this motion was intended to be treated as a motion for reconsideration, it is denied as wholly unsupported."
    o.  The district court then entered judgment against Plaintiff, and timely appeal followed.

68. These facts will be compared to the facts of our case below.

### B. Facts of Appellants' Case:

69. Here are the facts of our case:
    a.  Plaintiffs filed a pro se complaint.

b. Plaintiffs filed a motion for immediate injunctive relief/TRO.

c. Plaintiffs notified the defendants of the complaint filed and motion for immediate injunctive relief/TRO and provided them a copy of the foregoing both by email and by the state court's efiling system. See **Exhibit 4**.

d. After consideration, the district court ruled (and this is a paraphrased summary) that the case had potential merit and appeared to be within the jurisdiction of the court (though some things were not fully clear to the court from the pro se pleadings), and also that in order to grant relief requested by the plaintiffs, the defendants needed to be notified and to be given an opportunity to respond. Thus, the district court denied the emergency TRO on that basis but left open the issue of injunctive relief until after the defendants responded.

e. Plaintiffs provided a copy of the district court's order to the defendants by email and via the state court efiling system.

f. However, the defendants did not appear or respond. They did not respond as the district court's order provided for them to respond.

g. The district court did not address service of process to the defendants as the defendants were not yet served process and could not be served process until or unless it was authorized by the district court and until or unless the district court provided the summons to the plaintiffs for service.

h. Furthermore, no instructions were provided to the plaintiffs from the district court on what to do next, whether in the order on the TRO/injunctive relief or otherwise. No scheduling order was provided. No deadlines were provided including to serve process. No summons was provided.

i. Subsequently, the plaintiffs proactively contacted the clerk seeking clarification on any deadlines or instructions on what they needed to do but were told by the court clerk they did not need to do anything but to wait on the court for a preliminary review order from the magistrate judge. See email chain below. See also **Exhibit 5**.

> From: Vincent Negron <Vincent_Negron@nhd.uscourts.gov>
> Sent: Monday, August 22, 2022 11:50 AM
> To: Liberty _6 <Liberty_6@msn.com>
> Subject: RE: Anderson et al v. Donovan et al
>
> Ms. Anderson,
>
> No deadlines are pending in this case. Currently, the case has been referred to the Magistrate Judge for preliminary review.  Upon completion of preliminary review, an order will issue.  When that happens, you will be notified by mail.
>
> Thank you,
> Vincent
>
> From: Liberty _6 <Liberty_6@msn.com>
> Sent: Friday, August 19, 2022 4:59 PM
> To: Vincent Negron <Vincent_Negron@nhd.uscourts.gov>
> Subject: Re: Anderson et al v Donovan et al
>
> Dear Mr. Negron,
>
> I am a plaintiff in the Anderson v Donovan case.
> I would like to know if there are any deadlines that I should be aware of for this case.
>
> Thanks
> Natalie Anderson

j. No preliminary review order was provided by the magistrate judge. Instead, a couple of months later, the district court requested a status report from plaintiffs regarding the progress of the case via a show cause order. This evidently was an error by the district court because the district court was supposed to conduct a preliminary review of the case and then issue an order. No such order was done. We were told to wait on that order and to do nothing until then. Yet, here the district court in utter confusion told me to provide a status report showing that we had not abandoned the case as if we had been delinquent or something, which was not correct. This was utterly surprising that the district court did

that. This showed a certain dysfunction and disorientation in the district court as to how it was handling this case because of the contradictory actions by the district court.

k. The plaintiffs then contacted the clerk seeking clarification on the status report. See **Exhibit 6**.

> From: Liberty _6 <liberty_6@msn.com>
> Sent: Tuesday, December 6, 2022 2:20 PM
> To: Vincent Negron <Vincent_Negron@nhd.uscourts.gov>
> Subject: Re: Anderson et al v. Donovan et al
>
> Dear Vincent,
>
> I am following up on the below. I was of the understanding, per your below email on 8-22-22, that there was not anything for us to do until we hear from the court.
>
> However, I recently received notice of an order from the judge asking to show why we haven't abandoned the case by or before December 9. As a result, I am a bit confused. I thought we were supposed to wait to hear from the court before doing anything further.  I assume this some kind of misunderstanding or miscommunication.
>
> Also, the last filing made seeking permission for us to electronically file in the case was rejected by the judge because my signature was not on it, which was an oversight. NB: Even so, it seems that at least my spouse should have been allowed e-filing since his signature was on it but he was not allowed either.
>
> Given the above recent developments, we intend to comply with the judge's order by or before December 9. However, because we were not allowed efiling, we need to re-file the motion for permission for efiling. We do not live in NH and travel to Concord NH is extremely costly and inconvenient for us. Therefore, would it be possible for us to send you the motion for efiling by email and you present it to the judge on this one occasion, so that we can obtain efiling status in order to file our status report on time?
>
> Look forward to your reply.
>
> Thanks,
> Natalie Anderson

l. The plaintiffs then timely provided a status report which included the foregoing points including those made in the prior email exchanges with the clerk and the impediment to filing due to lack of efiling access. The plaintiffs also told the district court that they wanted to amend the complaint.

m. The district court accepted the status report and granted Plaintiffs request to file an amended complaint, setting a certain date to do so. The district court also finally granted efiling access.

n. At this point, there had been no missed deadlines and no violation of any court order.

o. Note: In this case, the plaintiffs made three requests to extend the time to file an amended complaint. Each were made prior to the expiration of deadlines and each were granted by the district court.

p. At this point, there had been no missed deadlines and no violation of any court order.

q. However, regarding the third request to extend time to file the amended complaint, the Plaintiffs missed deadline to file the amended complaint.

r. [NB: This was due to both medical reasons including hospitalization, and also due to obstacles created by the defendants.]

s. No request to extend the deadline was provided by plaintiffs to the district court prior to the deadline.

t. No excuse for missing the deadline was provided by plaintiffs to the district court after the deadline.

u. Consequently, in or around one month after the deadline expired, the district court sua sponte dismissed the case for missing the deadline to file an amended complaint.

v. The Plaintiffs filed a motion to reconsider.

w. The Plaintiffs also subsequently filed a timely notice of appeal. See **Exhibit 7.**

x. The district court then stayed the case and denied without prejudice the motion to reconsider as moot with invitation to refile the motion to reconsider after the appeal was resolved by this court.

70. These facts when compared to the facts of the Vivaldi case show striking similarity in the basic contours of the cases. The Vivaldi case has more in common with our case than the Tower case. In other words, the Tower case is a lot less like our case whereas the Vivaldi case is a lot more like our case. This is undeniable. Vivaldi thus should control and the outcome of this case should be the same as the outcome of the Vivaldi case.

## C. Facts Stated In This Court's Judgment

71. Here is the judgment of this court in this case:

> Pro se plaintiffs-appellants Natalie Anderson and Andre C. Bisasor filed a notice of appeal designating the district court's order of dismissal with prejudice, which the district court entered on August 3, 2023, following appellants' failure to file an amended complaint by the deadline set in prior orders. See Fed. R. Civ. P. 41(b). Prior to dismissal, appellants sought what they called a "final request for an extension of time to file an amended complaint," D.Ct. Dkt. 11 at 1, and the district court granted that request, stating, "Based on the representations of the plaintiff that there shall be no further requests for an extension of time the motion is granted," Endorsed Order, entered on district court docket June 9, 2023. With their extension motion, appellants expressly had requested an extension "of 45 more days . . . until June 30, 2023" to file an amended complaint. D.Ct. Dkt. 11 at 1. With the above-quoted ruling on the motion, the district court did not set a specific updated deadline; however, even construing the district court's June 9 order as extending the deadline to 45 days from entry -- that is, until July 24, 2023 -- appellants missed the deadline to file an amended complaint. Accordingly, on August 3, 2023, 55 days after the district court had granted a 45-day extension, the district court entered its Rule 41(b) order of dismissal with prejudice. D.Ct. Dkt. 12.
>
> After the appeal was opened, this court entered an order to show cause flagging timeliness concerns. See generally Fed. R. App. P. 4(a). Appellants have responded. We assume, without deciding, that the appeal is properly before the court. See Aponte–Rosario v. Acevedo–Vilá, 617 F.3d 1, 6 (1st Cir. 2010) (discussing bypass of non-Article III issues in favor of affirmance on the merits).
>
> After careful review of the record and of appellants' submissions thus far, we discern no abuse of discretion and affirm the district court's dismissal of the underlying action, substantially for the reasons set forth by the district court in relevant rulings. See Local Rule 27.0(c) (court may dispose of appeal at any time if "no substantial question" is presented); Vivaldi Servicios De Seguridad, Inc. v. Maiso Grp., Corp., 93 F.4th 27, 30-31 (1st Cir. 2024) (standard of review and general principles re dismissals under Fed. R. Civ. P. 41(b)); Tower Ventures, Inc. v. City of Westfield, 296 F.3d 43, 47 (1st Cir. 2002) ("When a litigant seeks an extension of time and proposes a compliance date, the court is entitled to expect that the litigant will meet its self-imposed deadline."). All remaining pending motions, to the extent not mooted by the foregoing, are denied; this includes the pending motion to intervene.
> Affirmed.

72. Here, this court acknowledges that the district court's order of dismissal with prejudice was due to the act of appellants' failure to file an amended complaint by the deadline, citing Fed. R. Civ. P. 41(b).

73. This court further acknowledges that prior to dismissal, appellants sought an extension of time to file an amended complaint, and that the district court granted that request. [NB: This means therefore that the appellants did not fail to meet prior deadlines but timely requested extension and received timely allowance].

74. This court also acknowledges that the plaintiffs indicated, in that extension motion, that they would not request further extensions.

75. This court also acknowledges that there was one extension motion at issue where they requested an extension "of 45 more days . . . until June 30, 2023" to file an amended complaint.

76. This court further acknowledges that with the above-quoted ruling on the motion, the district court did not set a specific updated deadline.

77. This court also stated that, even construing the district court's June 9 order as extending the deadline to 45 days from entry – the deadline would be July 24, 2023. [Note: If the timeline was construed to expire on July 24, 2023, as this court suggests in the alternative, the district court dismissed the case within 10 days after expiration of the deadline. If the timeline expired on June 30, 2023, the district court dismissed the case within 34 days after expiration of the deadline. The court seems to have counted 55 days after the district court entered the order but that is not relevant. It is the date that deadline expires that is relevant because that is the date from which the count begins as to missing of the deadline. By using 55 days, it gives the appearance of a larger gap than is warranted, and doing so is prejudicial to the plaintiffs for purposes of this analysis.]

78. This court also acknowledge that after appellants missed the 6-9-23 deadline to file an amended complaint (which was only one missed deadline), the district court entered its Rule 41(b) order of dismissal with prejudice.

79. In its own judgment, this court thus acknowledges that there was only one missed deadline, which was a self-imposed deadline, where the court itself gave no explicit deadline in its order.

80. This court gave no analysis of the Vivaldi factors or the abuse of discretion standards under Rule 41b.

81. This court remained silent as to the fact that there were no prior violations of the district court orders or missing of prior deadlines.

82. This court cited the Vivaldi case but did not explain how it was applying Vivaldi to this case (especially since the Vivaldi case supports or favors the appellants' position).

83. This court also cited the Tower case, in conclusory fashion, without providing any factual support for why that case applied to the facts of this case.

84. This court gave no consideration of the fact that plaintiffs were pro se. This includes how it construed the fact that the pro se plaintiffs requested a "final" extension. This cannot be construed against pro se plaintiffs who are not trained in law or who are not experienced lawyers who properly understand or can accurately anticipate how much time to request to accomplish certain legal tasks such as amending a complaint that is in part dependent of events that were unfolding in real time. See the 5-12-23 motion to extend time to amend the complaint and the attendant attachments.

85. This court gave no consideration to the fact that the plaintiffs had medical disabilities that impeded their ability to meet deadlines (as referenced in the motion for reconsideration filed in the district court after dismissal).

86. This court gave no consideration of the plaintiffs' motion for reconsideration that was filed in the district court, even though it had been stayed and not effectively ruled on by the district court.

87. This court did not allow the plaintiffs to brief the case in this court but evidently made prejudgments on the merits without allowing the plaintiffs to be heard on the merits.

88. The bottom line is that this court gave no real or clear consideration of applying the principles outlined in the February 2024 ruling on the Vivaldi case to the facts of this case.

89. The court did not address the fact that the district court did not explain its decision. The district court gave only a one sentence order of dismissal, stating: *"In accordance with the provisions of Federal Rule of Civil Procedure 41(b), this case is dismissed with prejudice for plaintiffs' failure to comply with the court's orders and failure to prosecute."* It should be noted that the wording of the district court's dismissal order creates an incorrect impression that the plaintiffs failed to comply with the court's "orders" (i.e., orders "plural"), which could sound as though there were more than one such failure. The syntax and the semantics of the usage of the words "court orders", can both be used to signify one court order, or, conversely, more than one court order. In this case, it would be more precise to say "court order". Yet, if the district court intended to mean more than one court order, then it should have explained what it meant and then cited these court "orders" that were violated. As noted in this filing, there were no such multiple court orders that were failed to be complied with. There was only one court order of 6-9-23. And that was an order that contained no actual deadline set by the court but simply facilitated appellants own anticipated deadline. This is not the kind of "court order" that can be said to represent a violation of a court order or represent a contumacious flagrant defiant attitude towards one's obligations to the court, as a litigant.

90. Moreover, the appellants' request to amend the complaint was discretionary and not required or mandated by the district court. Thus, it cannot, as a matter of logic and fairness, carry the force of a court order that could be violated. For example, in this very case, the plaintiffs requested permission to file electronically. It was initially denied for a technical reason (missing signature) and the district court ordered that it be refiled with appropriate signatures. Now, if the plaintiffs did not refile it as directed by the court, then the appropriate consequence would be that the plaintiffs would have to revert to the default position of having to file documents conventionally. It was thus discretionary. The plaintiffs could choose to file conventionally or could request permission to file electronically or not. If they chose not to refile, it would not be a violation of a court order, even though the court ordered that the request must be refiled with appropriate signatures in order to be granted. It could not be that the district court could dismiss the case for failing to refile the motion for electronic access, by declaring it to be a failure to comply with a court order. Similarly, the failure to amend the complaint is not a failure to comply with a court order because the case can be prosecuted using the original complaint, as the default position.

91. Similarly, with respect to the charge of a failure to prosecute, the failure to seek electronic access is not a failure to prosecute the case because the case can be prosecuted using conventional filing methods (at least for pro se parties).

92. Thus, to construe the failure to amend the complaint as a failure to comply with court orders or a failure to prosecute, is a factually and legally erroneous conclusion, and to do so (especially without warning or notice), is not only draconian but a gross injustice. Beyond that, to further dismiss with prejudice, is undoubtedly unconscionable and does complete violence to any basic construct of fairness or justice.

93. All of this constitutes an injustice to the plaintiffs.

## VIII. PLAINTIFF MISSED ONLY ONE DEADLINE AND NO OTHER

94. The district court should not dismiss a case with only one missed deadline to file a discretionary filing.

95. The appellants missed no other deadline.

96. The appellants did not fail to comply with prior court orders.

97. There is no serial missing of deadlines.

98. There is no serial violations of court orders.

99. There was only one missed deadline.

100.    The missed deadline is explainable by valid excuse which was, at least in part, outlined in a motion to reconsider filed in the district court shortly after dismissal.

101.    This one missed deadline comports with the Vivaldi factors barring dismissal in such instances.

102.    This one missed deadline comports with the Tower case, which also prohibits dismissal in such instances.

103.    This case was in early preliminary stages. The complaint had not been served. The defendants had not appeared. There was no motion to dismiss. There was no discovery. The case was in its nascent stage.

104.    The district court could have reviewed the case for preliminary review without the amended complaint filed prior to service of process. In fact, that is the most appropriate sanction that the district court should have employed in this instance.

## IX. DISTRICT COURT ERRED IN NOT SETTING DEADLINE TO SERVE PROCESS

105.    The district court could have ordered a deadline to serve the complaint. If it had done so, the plaintiff would be required to either amend the complaint prior to the deadline for service or then file an amended complaint under Rule 15, which deadline is automatically set to be 21 days after service of process. This would make the only court-mandated action, to be serving process with the complaint or the amended complaint. That would leave the discretion to the plaintiffs as to whether they want to amend the complaint or not by the service deadline. In that event, the failure to serve process by the deadline would be a valid basis to dismiss the case. However, this raises an important point of note. If a case is dismissed for missing the deadline for service of process, the dismissal, by definition, is without prejudice. Failure to serve process by the deadline cannot be with prejudice. Thus, in this case, the district court gave a sanction of dismissal with prejudice, for missing the self-requested/self-imposed deadline to amend the complaint, which sanction could never be entered for missing the deadline to serve process.

106.    Even assuming arguendo that the missing the deadline to serve process is kind of a similar equivalent to missing the deadline to file an amended complaint (which is it is not because the filing of an amended complaint is discretionary while serving process is mandatory), then even so, at a minimum, the case should not have been dismissed with prejudice but at most should have been dismissed without prejudice, going no further than what would be the harshest sanction for missing a service of process deadline.

## X. FUNDAMENTAL FAIRNESS REQUIRES GRANTING OF THIS PETITION FOR REHEARING

107.    When the district court, on 6-9-23, granted the plaintiffs' request to extend time to amend the complaint, the district court simply allowed the request. The plaintiffs did not understand this to be a court order that could be violated in the true sense of the word.

108.    Similarly, it was the plaintiffs' own voluntary request to amend complaint. The district court did not on its own ask or instruct the plaintiffs to amend the complaint. This was a voluntary request to amend the complaint. Therefore, by allowing the plaintiffs' request to amend the complaint, the district court did not issue an order in the true sense of the word. The district court simply facilitated the plaintiffs' request. Therefore, the plaintiffs did not understand that there was a court order that could be violated in any real sense. To the extent the district court treated the delay in filing an amended complaint, as a violation of a court order, the plaintiffs did not it could be so treated. However, the plaintiffs have not violated any other court order, assuming that this is counted as such.

109.    Additionally, the delay in filing an amended complaint was largely due to the fact that the defendants sought an extension of time to respond to the plaintiffs' request for information needed from the public rules committee hearing that took place on June 3, 2023. The extension sought was 30 days from May 15, 2023.

However, the defendants did not provide a response to plaintiffs request for records for the hearing, until August 7, 2023. This was after the June 30, 2023 timeline for plaintiffs to file amended complaint. It was also after the district court dismissed the case.

110.     There were also other impediments to plaintiffs having access to participate in the June 2, 2023 rules committee public hearing, resulting in plaintiffs having to wait to obtain a tape recording from the defendants of the hearing. This information was critical to the amending of the complaint, without which the plaintiffs were impeded from completing the amended complaint. The plaintiffs have also been befuddled and impeded by certain health challenges as will be further referenced herein.

111.     Because there was no warning that preceded dismissal, the plaintiffs were surprised by the dismissal of the case. Similarly, the plaintiffs had reached out to the clerk but he was essentially non-responsive, in the time period after the filing of the last motion and up to prior to dismissal.

112.     The plaintiffs have generally pursued this case demonstrating intent to prosecute. The docket shows about 12 entries prior to dismissal. The plaintiffs have also been diligently seeking procedural clarification from the clerk or the court. There is ample evidence that the plaintiffs did not abandon the case or failed to prosecute the case.

113.     Furthermore, the plaintiffs have not engaged in egregious or extreme conduct. Dismissal "should be employed only when a plaintiffs misconduct is particularly egregious or extreme," id. at 107 (citing Estate of Solis-Rivera v. United States, 993 F.2d 1, 2 (1st Cir.1993)).

114.     The plaintiffs' behavior was not intentional, egregious, or repetitive. Dismissal with prejudice is too harsh given the circumstances. Keane v. HSBC Bank USA, 874 F.3d 763 (2017).

115.     The plaintiffs did not violate a court order. Similarly, even assuming arguendo that it could be said that the plaintiffs violated one court order (of 6/9/23), still there is no pattern of the plaintiffs repeatedly flouting court orders. Cf. e.g., Crossman v. Raytheon Long Term Disability Plan, 316 F.3d 36, 39 & n. 2 (1st Cir.2002) (noting the importance generally of finding a pattern or series of disobedience and reversing an order of dismissal where all of the alleged infractions stemmed from noncompliance with a single order).

116.     Also, there has been no serious delay with respect to the one missed deadline. On 5/12/23, the plaintiffs' Motion to Extend Time to File Amended Complaint, sought extension until 6/30/23. NB: Prior to that, the plaintiffs only sought an extension a couple of times, including due to plaintiff Bisasor undergoing major surgery.

117.     On 6/9/23, the court granted plaintiffs' Motion to Extend Time Amended Complaint, stating: "Based on the representations of the plaintiff that there shall be no further requests for an extension of time the motion is granted. So Ordered by Magistrate Judge Andrea K. Johnstone.". Therefore, the extension of time expired on 6/30/23. On 8/3/23, the court ordered a dismissal of the case which was entered on the docket. Hence, only about one month of delay occurred before dismissal occurred.

118.     It should be noted that, in the Pomoles case, a four-month delay "did not alone constitute misconduct sufficiently extreme to justify dismissal with prejudice." 342 F.3d at 49.

119.     The plaintiffs' delay here is not a case of extreme delay warranting dismissal. Dismissal with prejudice for failure to prosecute is appropriate in the face of "extremely protracted inaction (measured in years), disobedience of court orders, ignorance of warnings, contumacious conduct, or some other aggravating circumstance." Cosme Nieves v. Deshler, 826 F.2d 1, 2 (1st Cir.1987); see 9 Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 2369 (2d ed.1995).

120.     The one-month delay by plaintiffs here is hardly the kind of "extremely protracted inaction ('measured in years)," Cosme Nieves, 826 F.2d at 2 (emphasis added), that ordinarily accompanies dismissals for failure to prosecute. See Pomales v. Celulares Telefónica, Inc., 342 F.3d 44 (2003).

121.     The first circuit has stated that: "We tend to reserve dismissal with prejudice for delays measured in years, see Cosme Nieves v. Deshler, 826 F.2d 1, 2 (1st Cir.1987) (collecting cases), while reversing dismissals for conduct resulting in delays of merely a few months. Pomales v. Celulares Telefónica, Inc., 342 F.3d 44, 48 (1st Cir.2003); see also Benítez-García, 468 F.3d at 5."

122.     Moreover, only just over a week passed after dismissal before the plaintiffs reached out to the clerk seeking clarification on the reason for dismissal and for reversing dismissal, and only 2 weeks passed before plaintiffs sought relief from the dismissal via a filed motion. The plaintiffs thus reacted quickly and diligently. See Ortiz-Anglada, 183 F.3d at 67 (holding dismissal with prejudice improper and emphasizing that the plaintiff, who

had no reason to suspect her case was at risk, "responded promptly to the unexpected dismissal with a motion to reconsider it"); Cosme Nieves, 826 F.2d at 2 (holding dismissal with prejudice improper and noting that the plaintiffs "responded immediately to the only warning they received — the sua sponte dismissal — with a motion to the court").

123.    Additionally, the plaintiffs did not know that a dismissal was possible, nor that it could be with prejudice.

124.    The court gave no warning of a dismissal, especially one with prejudice. The district court gave no notice that failure to file amended complaint would result in dismissal with prejudice. Dismissal with prejudice is far too much to ask under these circumstances. See Torres-Vargas v. Pereira, 431 F.3d 389, 393 (1st Cir.2005) ("Where, as here, the court appropriately forewarns a plaintiff of the consequences of future noncompliance with an unambiguous order, the court need not exhaust less toxic sanctions before dismissing a case with prejudice.").

125.    Dismissal with prejudice is also too harsh in light of the isolated nature of the conduct at issue, which is not sufficiently egregious to warrant the "death knell" of a lawsuit, see Aoude v. Mobil Oil Corp., 892 F.2d 1115, 1118 (1st Cir.1989)."[dismissal with prejudice 'is a harsh sanction,'" Benjamin v. Aroostook Medical Ctr., Inc., 57 F.3d 101, 107 (1st Cir.1995) (quoting Richman v. General Motors Corp., 437 F.2d 196, 199 (1st Cir.1971)), "which runs counter to [this Circuit's] 'strong policy favoring the disposition of cases on the merits,'" id. (quoting Zavala Santiago v. Gonzalez Rivera, 553 F.2d 710, 712 (1st Cir.1977)).

126.    Dismissal with prejudice is an extraordinary action which is too drastic in this instance. The sanction of dismissal with prejudice for want of prosecution is a unique and awesome one, foreclosing forever the plaintiffs opportunity to obtain judicial redress. See Ortiz-Anglada v. Ortiz-Perez, 183 F.3d 65, 67 (1st Cir.1999) (describing dismissal with prejudice for failure to prosecute as "drastic"); Velazquez-Rivera v. Sea- Land Serv., Inc., 920 F.2d 1072, 1075-76 (1st Cir.1990) ("the most severe sanction"); Richman v. Gen. Motors Corp., 437 F.2d 196, 199 (1st Cir.1971) ("a harsh sanction"). Disposition on the merits is favored.

127.    Ortiz-Ang-lada, 183 F.3d at 66. "Dismissal with prejudice for want of prosecution is a unique and awesome [sanction]" to which courts should not resort lightly. Pomales v. Celulares Telefónica, Inc., 342 F.3d 44, 48 (1st Cir. 2003) (collecting cases)…and is appropriate "in the face of extremely protracted inaction (measured in years), disobedience of court orders, ignorance of warnings, contumacious conduct, or -some other aggravating circumstance." Id. Dismissal for failure to prosecute is usually not appropriate for garden-variety, isolated instances of negligence.

128.    A dismissal sanction should be reserved for cases of "extremely protracted inaction (measured in years), disobedience of court orders, ignorance of warnings, contumacious conduct, or some other aggravating circumstance." Cosme Nieves v. Deshler, 826 F.2d 1, 2 (1st Cir.1987).

129.    See also Pomoles v. Celulares Telefonica, Inc., 342 F.3d 44, 48-49 (1st Cir.2003) (reversing a dismissal with prejudice for lack of prosecution); Ortiz-Anglada v. Ortiz-Perez, 183 F.3d 65, 66-67 (1st Cir.1999) (same).

130.    Where dismissal with prejudice is involved, it has long been rule in the first circuit that a case should not be dismissed with prejudice except "when a plaintiffs misconduct is particularly egregious or extreme." Benjamin v. Aroostook Med. Ctr., Inc., 57 F.3d 101, 107 (1st Cir.1995); see also Tower Ventures, 296 F.3d at (explaining that not "every breach of a scheduling order warrants" dismissal with prejudice, and noting that we will not "rubber-stamp the use of dismissal as a sanction"). In addition, "fairness requires that some limits be placed on [the] use" of a sanction of this severity. Velazquez-Rivera v. Sea-Land Serv., Inc., 920 F.2d 1072, 1075-76 (1st Cir.1990). These fairness concerns encompass both the law's preference that cases be disposed of on the merits, see Pomoles, 342 F.3d at 48, and procedural aspects such as notice and an opportunity to be heard, see Ortiz-Anglada, 183 F.3d at 67.

131.    Hence, dismissal with prejudice is not appropriate in this case. Several considerations underlie this argument: (1) Plaintiffs have generally prosecuted their claims except for the one month delay prior to dismissal; (2) the district court did not give plaintiffs' fair warning of its inclination to employ so severe a sanction; and (3) the one-month delay caused did not alone constitute misconduct sufficiently extreme to justify dismissal with prejudice.

132.    Similarly, the plaintiffs had little reason to believe they were facing imminent dismissal of their complaint. As laypersons, the pro se plaintiffs did not appreciate the risk inherent in delay. See, e.g., Cintron-Lorenzo v. Departamento de Asuntos del Consumidor, 312 F.3d 522, 526 (1st Cir.2002) (protracted noncompliance with court orders, "in the teeth of explicit warnings," justified dismissal with prejudice); Chamorro, 304 F.3d at 4-5

(dismissal justified where the plaintiff, despite being "suitably forewarned," nevertheless disobeyed a court order). In the absence of any such warning, Plaintiffs' conduct was not sufficiently "extreme" to justify dismissal with prejudice. See Velazquez-Rivera, 920 F.2d at 1078 (emphasizing the lack of fair warning to the plaintiff in reversing district court's dismissal for failure to prosecute).

133.   The plaintiffs had further things to add to the case by way of amendment so that they can file one suit bringing all issues before the district court rather than piecemeal in various cases, which would redound to judicial economy.

134.   The plaintiffs had every intention of pursuing this case and have good reasons for missing the deadline to file an amended complaint (including but not limited to the fact the defendants acted to impede plaintiffs' ability to file an amended complaint and also have even requested a wait over 30 days to receive information from them needed for the amended complaint and which they knew we were intending to file amended complaint, among other things, etc.).

135.   Additional valid grounds for reconsideration and vacatur of dismissal also includes the impact of other personal and medical issues. Plaintiff Bisasor, who is critical to the prosecution of this case, was experiencing significant health challenges, which hampered the ability to amend the complaint. Plaintiff Bisasor was undergoing at the time 4 hospital procedures and over 20 medical appointments over the time since May 12, 2023, due to significant medical issues. For example, at the time, plaintiff Bisasor had a medical procedure that required admission to a hospital for which plaintiff Anderson also has been required to be at the hospital with him until he was ready to be discharged, as required by hospital policy as his sole caretaker and given that he would be disoriented from the procedure.

136.    Moreover, there is no prejudice to the defendants, who had not (and still have not) yet entered an appearance in this case, as it is still relatively early procedurally-speaking.

## XI. CASE SHOULD BE RESOLVED ON ITS MERITS

137.   The plaintiffs brought this action in good faith to defend or vindicate their rights. The case should be heard on the merits. The district court found that there is merit to the plaintiff's case subject to further information and response by defendants. A potentially meritorious case should be resolved on the merits.

138.   The law also manifests a strong preference that cases be resolved on their merits. See Ortiz-Anglada v. Ortiz-Perez, 183 F.3d 65, 66 (1st Cir. 1999) ("[Disposition on the merits is favored.... ").

139.   There is strong preference in this circuit for adjudicating disputes on the merits, which counsels against sua sponte dismissals where there has never been any consideration of the merits.

140.   The district court's dismissal in this case violates the principle that cases ought to be decided on their merits and not on procedural failures or technicalities.

141.   Other courts have generally favored that cases be heard on their merits. See Litton Bus. Sys. v. Commissioner of Revenue, 383 Mass. 619, 622 (1981).

142.   In Owens v. Amtrak, No. 94-7444 (Mass. Super. Ct. 1998), the Superior Court explicitly stated that the "spirit of the [procedural] rules favors decisions on the merits, not technicalities, unless the result would be prejudicial to the other party." The court allowed a case to proceed despite a procedural misstep in filing, emphasizing that dismissals based on technicalities (e.g., minor filing errors) are disfavored when no prejudice exists. This decision underscores Massachusetts courts' preference for adjudicating substantive rights over strict procedural compliance.

143.   In John Dewing vs. J.B. Driscoll Insurance Agency, 30 Mass. App. Ct. 467 (1991), the Appeals Court reversed a dismissal for failure to prosecute under Mass.R.Civ.P. 41(b)(2), noting that mere delay without evidence of prejudice or intentional neglect does not justify terminating a case. The court emphasized that dismissals for procedural lapses must be weighed against the policy of resolving disputes on their merits, particularly when there is no showing of harm to the opposing party.

144.   In Schiavone v. Fortune, 477 U.S. 21 (1986), the U.S. Supreme Court highlighted that statutes of limitations should not be rigidly enforced if they undermine the fair adjudication of claims. Courts similarly prioritize merits-based outcomes over strict procedural timelines when no prejudice is shown.

145.   See also American Express Travel v. Moskoff, 148 N.H. 446, 450 (2002)("It is important that cases be decided on their merits, that a party have his day in court and that rules of practice and procedure shall be tools in aid of the promotion of justice rather than barriers and traps for its denial." Douglas v. Douglas, 143

N.H. ___, ___, 728 A.2d 215, 219 (1999)". And also see Krainewood Shores Assoc., Inc. v. Town of Moultonborough, 174 N.H. 103, 111 (2021).

## SECTION III. CONCLUSION

### XII. CONCLUSION

146.    It should be noted that this is not appellants' complete briefing as appellants still hope to be able to file their full and proper briefing at some point later if the court allows. Appellants hereby preserve and reserve their right to file a complete brief with all arguments including any or those not presented herein.

147.    Appellant Bisasor hereby incorporates by reference the motions for clarification and motion to allow district court to rule on pending motion for reconsideration, that were recently filed in this court, as well as the motion for reconsideration filed in the district court on 9-26-23, as well as Appellant Anderson's separately filed petition for rehearing, which compliments this filing, and vice versa.

### XIII. PRAYER FOR RELIEF

148.    Appellant requests that the Court grant a pro se liberal construction to this pleading and construe these words in their favor. Appellant requests that the Court vacate its judgment and establish a briefing schedule in accordance with the Federal Rules of Appellate Procedure.

149.    Appellant respectfully requests:
   a)  Panel rehearing to address overlooked interlocutory orders, procedural errors, and substantive issues.
   b)  Opportunity to file a merits brief on all issues including the merged issues.
   c)  Rehearing en banc if the Panel declines to revisits its decision, as this case raises issues of exceptional importance regarding the scope of merger doctrine in procedural dismissals and due process rights to brief appeal issues as well as given the conflict with prior First Circuit precedent and the need to maintain uniformity of decision by the Court.

150.    Appellant asks the Court to really take time to hear and listen to the core heart of what appellants are trying to say and to not be harsh with the appellants but to step back and consider what the fair outcome should be in the interests of justice.

151.    For the foregoing reasons, Appellant respectfully requests that the Court grant this petition for rehearing, vacate its September 23, 2024 judgment, and order full briefing on the merits of this appeal or otherwise remand the case back to the district court for ruling on the stayed motion for reconsideration or, in the alternative, reverse the judgment of dismissal of the district court.

Respectfully submitted,
/s/ Andre Bisasor
Andre Bisasor

April 15, 2025

### CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the First Circuit using the appellate CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

/s/ Andre Bisasor
Andre Bisasor

# Exhibit 1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Andre Bisasor and Natalie Anderson

        v.                          Civil No. 22-cv-264-SE

Patrick Donovan et al.


                    O R D E R

    Plaintiffs Andre Bisasor and Natalie Anderson bring suit

against the New Hampshire Supreme Court, New Hampshire Supreme

Court Justice Patrick Donovan, the New Hampshire Rules Advisory

Committee, the New Hampshire Professional Conduct Committee

("PCC"), and the secretary of the New Hampshire Supreme Court

advisory committee on rules, Lorrie Platt. The complaint

alleges, among other things, that the plaintiffs were denied the

opportunity to provide commentary on proposed changes to the New

Hampshire Supreme Court rules, that the PCC improperly refused

to accommodate their request for an electronic copy of certain

records, and that the New Hampshire Supreme Court unlawfully

denied them a request for an extension of the deadline to submit

a filing in a pending case. The plaintiffs allege several

claims, including violations of their constitutional rights

pursuant to 42 U.S.C. § 1983 and a violation of the Americans

with Disabilities Act. They move for an emergency temporary

restraining order staying New Hampshire Supreme Court

proceedings in a case in which Anderson is the

plaintiff/appellant, Case # 2021-0604.[1] See doc. no. 3.

I.    Anti-Injunction Act

     Before the court discusses the relevant law regarding
requests for a temporary restraining order, it notes that the
plaintiffs' requested relief implicates the Anti-Injunction Act,
28 U.S.C. § 2283. The Act provides that a "court of the United
States may not grant an injunction to stay proceedings in a
State court except as expressly authorized by Act of Congress,
or where necessary in aid of its jurisdiction, or to protect or
effectuate its judgments." Id. Claims brought pursuant to 42
U.S.C. § 1983 are "expressly authorized" exceptions to the Anti-
Injunction Act. Mitchum v. Foster, 407 U.S. 225 (1972).

     The plaintiffs allege constitutional claims brought
pursuant to § 1983, which seemingly takes their requested relief
outside of the prohibition in the Anti-Injunction Act. However,
the relationship between their § 1983 claims and their requested
relief is unclear. The plaintiffs' constitutional claims appear

_____

     [1] The plaintiffs' motion also includes a request for a
preliminary injunction and seeks additional relief. See doc. no.
3 at 34. The court does not address that portion of the motion
in this order and, consistent with Federal Rule of Civil
Procedure 65(a)(1), will consider that part of the plaintiffs'
request after the defendants have an opportunity to respond.

2

to arise largely out of the alleged denial of their opportunity to provide commentary on proposed New Hampshire Supreme Court rule changes. Nevertheless, in light of the plaintiffs' pro se status, the court assumes without deciding for purposes of this order that their claims brought pursuant to § 1983 provide an exception to the Anti-Injunction Act. In doing so, the court bears in mind that "[a]lthough Section 1983 falls within the 'expressly authorized by Congress' exception to the Anti-Injunction Act, the Supreme Court has held that federal courts must abstain from interfering with 'pending state judicial proceedings absent extraordinary circumstances.'" Scholwin v. Spence, No. CV 07-11937-JLT, 2008 WL 11511609, at *5 (D. Mass. Apr. 23, 2008) (quoting Middlesex County Ethics Comm. v. Garden State Bar Ass'n, 457 U.S. 423, 431 (1982) (further citation omitted)).

II.  Request for Temporary Restraining Order

"[Injunctive relief] is an extraordinary and drastic remedy that is never awarded as of right." Peoples Federal Sav. Bank v. People's United Bank, 672 F.3d 1, 8-9 (1st Cir. 2012). The standard for issuing a temporary restraining order is "the same as for a preliminary injunction." Bourgoin v. Sebelius, 928 F.

Supp. 2d 258, 267 (D. Me. 2013). To obtain relief, the moving
party must satisfy the following four factors: (i) the
likelihood that the movant will succeed on the merits; (ii) the
possibility that, without an injunction, the movant will suffer
irreparable harm; (iii) the balance of relevant hardships
between the parties favors relief; and (iv) the effect of the
court's ruling on the public interest. CVS Pharmacy, Inc. v.
Lavin, 951 F.3d 50, 55 (1st Cir. 2020) (quotations and citations
omitted).

A finding of irreparable harm is "the essential
prerequisite for equitable relief." Braintree Lab'ys, Inc. v.
Citigroup Glob. Markets Inc., 622 F.3d 36, 41 (1st Cir. 2010).
Indeed, the Supreme Court "has repeatedly held that the basis
for injunctive relief in the federal courts has always been
irreparable injury and the inadequacy of legal remedies."
Weinberger v. Romero-Barceló, 456 U.S. 305, 312 (1982). Thus,
"[a]n injunction should issue only where the intervention of a
court of equity is essential in order effectually to protect
property rights against injuries otherwise irremediable." Id.

Here, the plaintiffs have not carried their burden to
demonstrate that they would suffer irreparable harm absent a
temporary restraining order. Their request for a temporary

4

restraining order asks the court to issue a stay in New
Hampshire Supreme Court Case# 2021-0604, in which Anderson is a
party.[2] In support of their claim for irreparable harm, they
assert that 1) the New Hampshire Supreme Court will imminently
issue a ruling adverse to Anderson in that case and 2) as a
result of that ruling, certain defendants will destroy documents
that the plaintiffs are attempting to obtain.[3]

There are several issues with the plaintiffs' claim of
irreparable harm. For example, they do not provide the basis for
their belief that the New Hampshire Supreme Court is about to
issue a ruling in the referenced case. Nor do they explain why
any such ruling would allow the defendants to destroy the
documents that the plaintiffs seek.

---

[2] According to the allegations in the complaint, it appears
that Anderson is the only plaintiff in Case# 2021-0604.
Therefore, it is unclear from the record whether Bisasor has
standing to assert certain claims in this case. Because the
court denies the plaintiffs' motion on other grounds, it
declines to address that issue in this order.

[3] The court need not address the entirety of the factual
allegations contained in the plaintiffs' complaint here.
However, the court notes for the sake of clarity that the
documents that the plaintiffs reference relate to attorney
disciplinary proceedings. The plaintiffs have allegedly
attempted but been denied the opportunity to review those
documents. They appear to allege that the changes to the New
Hampshire Supreme Court rules on which they were denied the
opportunity to comment will allow the defendants to destroy
those documents once the New Hampshire Supreme Court issues an
adverse ruling in Case# 2021-0604.

5

In short, the plaintiffs have not shown that absent this court issuing a temporary restraining order to stay Anderson's case in front of the New Hampshire Supreme Court, there is a likelihood that they will suffer irreparable harm. Because the plaintiffs cannot meet this "essential prerequisite" for injunctive relief, the court need not address the remaining injunctive relief factors and their motion for a temporary restraining order is denied on that basis.

Finally, the court notes that even where a plaintiff makes a showing of "immediate and irreparable" injury, the court cannot issue a temporary restraining order without notice to the adverse parties unless the plaintiff "certifies in writing any efforts made to give notice and the reasons why it should not be required." Fed. R. Civ. P. 65(b)(1)(b). The "requirements of Rule 65(b)(1) are not mere technicalities but establish minimum due process. Thus, to obtain ex parte relief, a party must strictly comply with those requirements." Strahan v. O'Reilly, No. 22-CV-52-LM, 2022 WL 788623, at *1 (D.N.H. Feb. 16, 2022), report and recommendation adopted, No. 22-CV-52-LM, 2022 WL 788258 (D.N.H. Mar. 14, 2022) (alterations, quotations, and citations omitted). The plaintiffs have not complied with Rule 65(b)(1)(b) and their motion for a temporary restraining order

6

is denied for that additional reason.

## Conclusion

For the foregoing reasons, the court denies the plaintiffs' motion for immediate injunctive relief (doc. no. 3) to the extent it requests a temporary restraining order. The court will rule on the portion of the motion that requests a preliminary injunction after the defendants have had an opportunity to respond.

SO ORDERED

_____
Samantha D. Elliott
United States District Judge

July 21, 2022

cc: Natalie Anderson, pro se
    Andre Bisasor, pro se

7

# Exhibit 2

UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

CIVIL ACTION NO: 1:22-cv-00264-SE

NATALIE ANDERSON, et. al.
Plaintiffs,
V.
PATRICK DONOVAN et. al.
Defendants.

## STATUS REPORT

NOW COMES the Plaintiffs, Natalie Anderson and Andre Bisasor, and respectfully submit this status report as follows.

1. The court has issued an order on November 10, 2022, instructing the plaintiffs to file a status report showing that they have not abandoned their claims.
2. The plaintiffs have not abandoned their claims or this case.
3. Moreover, the plaintiffs have not failed to comply with any orders of this Court.
4. The plaintiffs intend to move forward with this litigation.
5. Grounds supporting this status report are shown below.
6. We had communicated with the case manager clerk regarding the case, from early on, and it was our understanding, per the case manager clerk's email on August 22, 2022, that there was not anything for us to do until we heard from the court.
    a. On August 19, 2022, the plaintiffs wrote: "Dear Mr. Negron, I am a plaintiff in the Anderson v Donovan case. I would like to know if there are any deadlines that I should be aware of for this case. Thanks Natalie Anderson".
    b. The case manager clerk then stated: "Ms. Anderson, No deadlines are pending in this case. Currently, the case has been referred to the Magistrate Judge for preliminary review.  Upon completion of preliminary review, an order will issue. When that happens, you will be notified by mail. Thank you, Vincent."
    c. See **Exhibit 1** for email chain with the case manager clerk.
    d. Therefore, the above confirms that we reached out, early on, to the court case clerk about any deadlines (including for service), but the case clerk said there was nothing we needed to do, because of certain procedural requirements pertaining to the processing of a complaint when the plaintiff is pro se. We were told we would be informed at a later time what deadlines there are (which we assumed included deadline for service), but until then we would have to wait, or something to that effect. We then looked at the local rules of the court to see if we could find confirmation of what the case clerk said, and it did appear to us that this was how things worked in the federal court with respect to pro se cases.
    e. See Local Rule 4.3(d)((3)(The clerk's office shall forward initial filings, including actions removed by a pro se defendant, to the magistrate judge for preliminary review to determine whether the court has subject matter jurisdiction), and see also Local Rule 4.1(For those cases subject to preliminary review pursuant to LR 4.3(d)(1), (2) and (4), the court shall not issue a summons for service and a notice of lawsuit/request for waiver of service of summons shall not be sent to any party until the preliminary review has been completed and service has been ordered.).

1

      f.   Apparently, after further review, we recently realized that there may be a caveat that does not apply the above carve out of the local rules to our case. So, it seems that both the case clerk and us were confused by the technical rules here.

      g.   NB: It was also our understanding that we cannot simply issue service ourselves because we have to receive certified summons for service from the federal court before service can be issued.

7.  So, the above facts provide the reasons why we have not filed anything else in the court, as we believed (or were led to believe) that we should await further instruction from the court first before proceeding further with our case. It is certainly not because we have abandoned the case.

8.  To our surprise, on November 10, 2022, this court issued an order instructing us to show why the court should not conclude that we have abandoned the case, and to do so by filing a status report by or before December 9, 2022.[1] NB: We only recently received notice of this order in the mail (since we have not yet been approved, by the court, for electronic notification and filing).

9.  As a result, we realize that there was some kind of misunderstanding or miscommunication with the case manager clerk. As per his August 22, 2022, email, we thought we were supposed to wait to hear from the court before doing anything further.

10.  Also, the last filing we made to this court, seeking permission for us to electronically file in the case, was rejected by the judge because Natalie Anderson's signature was not on it, which was an inadvertent oversight by us. [NB: Even so, it seems that at least Andre Bisasor should have been allowed e-filing since his signature was on it, but he was not allowed either.]. Because we were not allowed e-filing, we were impeded from further filings in the case as we do not live in NH and travel to Concord NH is extremely costly and inconvenient for us. Thus, after recent consultation with the case manager clerk about this, we are also now re-filing the motion for permission for e-filing, via email provided with permission from the case manager court clerk.

11.  Also, we intend to file an amended complaint. New developments have occurred since the filing of the complaint in this case. There are new acts by the defendants that have occurred that are relevant to the matters before this court. We could seek to file a new lawsuit regarding these new facts or acts by the defendants. However, we figured that for judicial economy reasons, it would be best brought to the attention of this court, via an amended complaint.

12.  We also recently spoke to the case clerk about this, and he confirmed that we can go ahead and submit an amended complaint, along with a filled-out summons, without first filing a motion to amend the complaint (since there are no defendants served as yet). Thus, we will then seek to amend the complaint and then finalize obtaining certified summons from the court in order to complete service of the amended complaint and summons on the defendants, in coordination with the court clerk's office.

13.  We ask for 30 days, from the date of the court's ruling in response to this status report, to complete amendment of the complaint and to file it with the court, especially in taking into account the upcoming Christmas and New Year holidays. We are also in the process of seeking legal assistance and/or representation, if possible, to assist in this matter and/or to

---

[1] NB: A few days before the court issued this order, the case clerk emailed us also informing us that a summons was missing from our case and that we should endeavor to file a completed summons should we want the defendants to be served.

help with amending the complaint, and so 30 days will allow time for that as well, including consideration of the holidays.

14. Please consider this status report and grant any appropriate relief requested or otherwise.

Respectfully submitted,

/s/ Andre Bisasor

Andre Bisasor

679 Washington Street, Suite # 8-206

Attleboro, MA 02703

T: 781-492-5675

Email: quickquantum@aol.com

/s/ Natalie Anderson

Natalie Anderson

679 Washington Street, Suite # 8-206

Attleboro, MA 02703

T: 617-710-7093

Email: liberty_6@msn.com

December 9, 2022

## **CERTIFICATE OF SERVICE**

I certify that a copy of the foregoing was served to the defendants in this case.

Respectfully submitted,

/s/ Andre Bisasor

Andre Bisasor

679 Washington Street, Suite # 8-206

Attleboro, MA 02703

T: 781-492-5675

Email: quickquantum@aol.com

/s/ Natalie Anderson

Natalie Anderson

679 Washington Street, Suite # 8-206

Attleboro, MA 02703

T: 617-710-7093

Email: liberty_6@msn.com

10/6/23, 8:23 PM    Mail - Liberty_6 - Outlook

## Re: Anderson et al v. Donovan et al

Liberty _6 <liberty_6@msn.com>
Wed 12/7/2022 3:08 PM
To: Vincent Negron <Vincent_Negron@nhd.uscourts.gov>

Great, we will file both the status report due and the motion for efiling on December 9, 2022 using the email you provided below.
Thank you so much.
Natalie

---

**From:** Vincent Negron <Vincent_Negron@nhd.uscourts.gov>
**Sent:** Tuesday, December 6, 2022 2:49 PM
**To:** Liberty _6 <liberty_6@msn.com>
**Subject:** RE: Anderson et al v. Donovan et al

You can email your filings to ecfintake@nhd.uscourts.gov.

Thank you,

*Vincent L. Negron*
Case Manager
United States District Court
55 Pleasant Street
Concord, NH 03301
603-226-7733
vincent_negron@nhd.uscourts.gov



---

**From:** Liberty _6 <liberty_6@msn.com>
**Sent:** Tuesday, December 6, 2022 2:20 PM
**To:** Vincent Negron <Vincent_Negron@nhd.uscourts.gov>
**Subject:** Re: Anderson et al v. Donovan et al

**CAUTION - EXTERNAL:**

Dear Vincent,

I am following up on the below. I was of the understanding, per your below email on 8-22-22, that there was not anything for us to do until we hear from the court.

However, I recently received notice of an order from the judge asking to show why we haven't abandoned the case by or before December 9. As a result, I am a bit confused. I thought we were supposed to wait to hear from the court before doing anything further.  I assume this some kind of misunderstanding or miscommunication.

Also, the last filing made seeking permission for us to electronically file in the case was rejected by the judge because my signature was not on it, which was an oversight. NB: Even so, it seems that at least my spouse should have been allowed e-filing since his signature was on it but he was not allowed either.

Given the above recent developments, we intend to comply with the judge's order by or before December 9. However, because we were not allowed efiling, we need to re-file the motion for permission for efiling. We do not live in NH and travel to Concord NH is extremely costly and inconvenient for us. Therefore, would it be possible for us to send you the motion for efiling by email and you present it to the judge on this one occasion, so that we can obtain efiling status in order to file our status report on time?

Look forward to your reply.

Thanks,
Natalie Anderson


Sincerely,
Natalie

---

**From:** Vincent Negron <Vincent_Negron@nhd.uscourts.gov>
**Sent:** Monday, August 22, 2022 11:50 AM
**To:** Liberty _6 <Liberty_6@msn.com>
**Subject:** RE: Anderson et al v. Donovan et al

Ms. Anderson,

No deadlines are pending in this case. Currently, the case has been referred to the Magistrate Judge for preliminary review.  Upon completion of preliminary review, an order will issue.  When that happens, you will be notified by mail.

Thank you,
Vincent

---

**From:** Liberty _6 <Liberty_6@msn.com>
**Sent:** Friday, August 19, 2022 4:59 PM
**To:** Vincent Negron <Vincent_Negron@nhd.uscourts.gov>
**Subject:** Re: Anderson et al v. Donovan et al

**CAUTION - EXTERNAL:**

Dear Mr. Negron,

I am a plaintiff in the Anderson v Donovan case.

I would like to know if there are any deadlines that I should be aware of for this case.

Thanks
Natalie Anderson

**CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.

**CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.

# Exhibit 3

UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

Natalie Anderson, et al

   v.                                    Case No. 22-cv-264-SE

Patrick Donovan, et al

<u>ORDER OF DISMISSAL</u>

In accordance with the provisions of Federal Rule of Civil Procedure 41(b), this case is dismissed with prejudice for plaintiffs' failure to comply with the court's orders and failure to prosecute.

SO ORDERED.

_____
   Samantha D. Elliott
   United States District Judge

Date: August 2, 2023

cc:  Natalie Anderson, pro se
     Andre C. Bisasor, pro se

# Exhibit 4

## Re: Heads Up Regarding Filings

From:   Andre Bisasor (quickquantum@aol.com)

To:     Jennifer.S.Ramsey@doj.nh.gov; Anthony.J.Galdieri@doj.nh.gov; Christopher.G.Aslin@doj.nh.gov

Date:   Wednesday, July 20, 2022 at 02:53 PM EDT

P.S. I just am filing one more item. See attached. Not sure if it was necessary. But just in case.

Andre

> -----Original Message-----
> From: Andre Bisasor <quickquantum@aol.com>
> To: Jennifer.S.Ramsey@doj.nh.gov <Jennifer.S.Ramsey@doj.nh.gov>; Anthony.J.Galdieri@doj.nh.gov
> <Anthony.J.Galdieri@doj.nh.gov>; Christopher.G.Aslin@doj.nh.gov <Christopher.G.Aslin@doj.nh.gov>
> Sent: Wed, Jul 20, 2022 1:43 pm
> Subject: Re: Heads Up Regarding Filings
>
> Hi Jennifer,
>
> See attached.
>
> Let me know if you would like to discuss or if have any questions or would like clarification on anything. I do plan to follow-
> up with you all regarding some of the issues raised and whether you all were aware of the actions being done by the ADO with
> the rules committee, etc, or what was going on with the rules committee prior to this.
>
> Thanks
> Andre
>
>
> -----Original Message-----
> From: Ramsey, Jennifer <Jennifer.S.Ramsey@doj.nh.gov>
> To: quickquantum@aol.com <quickquantum@aol.com>; Galdieri, Anthony <Anthony.J.Galdieri@doj.nh.gov>; Aslin, Christopher
> <Christopher.G.Aslin@doj.nh.gov>
> Sent: Wed, Jul 20, 2022 1:27 pm
> Subject: RE: Heads Up Regarding Filings
>
> Hi Mr. Bisasor,
>
> Would you please forward those filings to us?
>
> Thanks,
>
> Jennifer Ramsey
> Senior Assistant Attorney General
> Civil Bureau
> Department of Justice
> 33 Capitol Street
> Concord, NH 03301
> (603) 271-1221
> jennifer.s.ramsey@doj.nh.gov
>
> E-MAIL CONFIDENTIALITY NOTICE: The contents of this e-mail message and any attachments are intended solely for the
> addressee(s) and may contain confidential and/or legally privileged information. If you are not the intended recipient of this message or

if this message has been addressed to you in error, please immediately alert the sender by reply e-mail and then delete this message and any attachments. If you are not the intended recipient, you are notified that any use, dissemination, distribution, copying, or storage of this message is strictly prohibited.

**From:** Andre Bisasor <quickquantum@aol.com>
**Sent:** Wednesday, July 20, 2022 1:24 PM
**To:** Galdieri, Anthony <anthony.j.galdieri@doj.nh.gov>; Aslin, Christopher <christopher.g.aslin@doj.nh.gov>; Ramsey, Jennifer <jennifer.s.ramsey@doj.nh.gov>; Ramsey, Jennifer <jennifer.ramsey@doj.nh.gov>
**Subject:** Re: Heads Up Regarding Filings

**EXTERNAL:** Do not open attachments or click on links unless you recognize and trust the sender.

P.S. I filed a motion for immediate injunctive relief (pertaining to federal court action).

I also filed a motion to recuse based on the developments cited herein.

Just giving you a heads up.

Andre


-----Original Message-----
From: Andre Bisasor <quickquantum@aol.com>
To: anthony.j.galdieri@doj.nh.gov <anthony.j.galdieri@doj.nh.gov>; christopher.g.aslin@doj.nh.gov <christopher.g.aslin@doj.nh.gov>; jennifer.s.ramsey@doj.nh.gov <jennifer.s.ramsey@doj.nh.gov>; jennifer.ramsey@doj.nh.gov <jennifer.ramsey@doj.nh.gov>
Sent: Tue, Jul 19, 2022 5:31 pm
Subject: Heads Up Regarding Filings

Dear Anthony, Jennifer and Chris,'

I wanted to give you a heads up regarding a federal court filing just filed today but I had no time to do so in advance prior to the federal court closing. My apologies.

Also, I filed a motion to stay in the NHSC as well. Again, I was not able to contact you prior to filing just before the closing of the NHSC.

Regarding the issues, there are several issues that developed over the last few weeks and ultimately got out of control with the rules committee. I had no choice but to go federal court given what transpired. Asking the NHSC to resolve such issues seems pointless at this juncture, given the NHSC hostility towards us. Therefore, this appeal cannot proceed with these issues swirling around. Hence the filing of the federal complaint and the motion for stay.

Again, this is just a heads up. Again, my apologies for not being able to contact sooner.

Sincerely,
Andre

# Exhibit 5

 Outlook

---

**RE: Anderson et al v. Donovan et al**

---

**From** Vincent Negron <Vincent_Negron@nhd.uscourts.gov>
**Date** Mon 8/22/2022 11:50 AM
**To** Liberty _6 <Liberty_6@msn.com>

Ms. Anderson,

No deadlines are pending in this case. Currently, the case has been referred to the Magistrate Judge for preliminary review.  Upon completion of preliminary review, an order will issue.  When that happens, you will be notified by mail.

Thank you,
Vincent

---

**From:** Liberty _6 <Liberty_6@msn.com>
**Sent:** Friday, August 19, 2022 4:59 PM
**To:** Vincent Negron <Vincent_Negron@nhd.uscourts.gov>
**Subject:** Re: Anderson et al v. Donovan et al

 **CAUTION - EXTERNAL:**

Dear Mr. Negron,

I am a plaintiff in the Anderson v Donovan case.

I would like to know if there are any deadlines that I should be aware of for this case.

Thanks
Natalie Anderson

**CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.

# Exhibit 6

 Outlook

---

**RE: Anderson et al v. Donovan et al**

---

**From** Vincent Negron <Vincent_Negron@nhd.uscourts.gov>

**Date** Tue 12/6/2022 2:50 PM

**To** Liberty _6 <liberty_6@msn.com>

You can email your filings to ecfintake@nhd.uscourts.gov.

Thank you,

*Vincent L. Negron*
Case Manager
United States District Court
55 Pleasant Street
Concord, NH 03301
603-226-7733
vincent_negron@nhd.uscourts.gov



---

**From:** Liberty _6 <liberty_6@msn.com>
**Sent:** Tuesday, December 6, 2022 2:20 PM
**To:** Vincent Negron <Vincent_Negron@nhd.uscourts.gov>
**Subject:** Re: Anderson et al v. Donovan et al

**CAUTION - EXTERNAL:**

Dear Vincent,

I am following up on the below. I was of the understanding, per your below email on 8-22-22, that there was not anything for us to do until we hear from the court.

However, I recently received notice of an order from the judge asking to show why we haven't abandoned the case by or before December 9. As a result, I am a bit confused. I thought we were

supposed to wait to hear from the court before doing anything further.  I assume this some kind of misunderstanding or miscommunication.

Also, the last filing made seeking permission for us to electronically file in the case was rejected by the judge because my signature was not on it, which was an oversight. NB: Even so, it seems that at least my spouse should have been allowed e-filing since his signature was on it but he was not allowed either.

Given the above recent developments, we intend to comply with the judge's order by or before December 9. However, because we were not allowed efiling, we need to re-file the motion for permission for efiling. We do not live in NH and travel to Concord NH is extremely costly and inconvenient for us. Therefore, would it be possible for us to send you the motion for efiling by email and you present it to the judge on this one occasion, so that we can obtain efiling status in order to file our status report on time?

Look forward to your reply.

Thanks,
Natalie Anderson


Sincerely,
Natalie

---

**From:** Vincent Negron <Vincent_Negron@nhd.uscourts.gov>
**Sent:** Monday, August 22, 2022 11:50 AM
**To:** Liberty _6 <Liberty_6@msn.com>
**Subject:** RE: Anderson et al v. Donovan et al

Ms. Anderson,

No deadlines are pending in this case. Currently, the case has been referred to the Magistrate Judge for preliminary review.  Upon completion of preliminary review, an order will issue.  When that happens, you will be notified by mail.

Thank you,
Vincent

---

**From:** Liberty _6 <Liberty_6@msn.com>
**Sent:** Friday, August 19, 2022 4:59 PM
**To:** Vincent Negron <Vincent_Negron@nhd.uscourts.gov>
**Subject:** Re: Anderson et al v. Donovan et al

**CAUTION - EXTERNAL:**

Dear Mr. Negron,

I am a plaintiff in the Anderson v Donovan case.

I would like to know if there are any deadlines that I should be aware of for this case.

Thanks
Natalie Anderson

**CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.

**CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.

# Exhibit 7

UNITED STATES DISTRICT COURT-DISTRICT OF NEW HAMPSHIRE
CASE #: 1:22-cv-00264-SE

NATALIE ANDERSON and ANDRE BISASOR, Plaintiffs
V.
PATRICK DONOVAN et. al., Defendants

## NOTICE OF APPEAL TO THE FIRST CIRCUIT
## OF THE DISTRICT COURT OF NEW HAMPSHIRE'S 8-3-23 FINAL JUDGMENT/ORDER OF DISMISSAL

Notice of Appeal to the United States Court of Appeals for the First Circuit

1. The plaintiffs, Natalie Anderson and Andre Bisasor, appeals to the United States Court of Appeals for the First Circuit from the final judgment of the district court for the district of New Hampshire, entered in this case on 8/3/23.
2. The plaintiffs provide this notice of appeal as follows.
3. On 8/2/23 the district court, sua sponte, dismissed this case for failure to prosecute, as follows.

   "08/02/2023   12 ORDER DISMISSING CASE (Case Closed). So Ordered by Judge Samantha D. Elliott.(vln) (Entered: 08/03/2023)"

4. See **Exhibit 1** for district court order being appealed.
5. On 8/3/23 the district court clerk entered the order on the docket.
6. On 8/17/23, the plaintiffs requested an extension of time to file a motion to reconsider until 9/5/23.
7. On 8/17/23, the court granted the extension of time to file a motion to reconsider until 9/5/23.
8. On 9/1/23, the plaintiffs filed an Emergency MOTION to Extend Time to 9/20/23 EXPEDITED/EMERGENCY MOTION FOR EXTENSION OF TIME TO FILE NOTICE OF APPEAL [IF NECESSARY]
9. On 9/1/23, the district court granted the motion as follows: "ENDORSED ORDER granting 14 Motion to Extend Time. Text of Order: Granted. If the plaintiff files a motion for reconsideration on or before September 5, 2023, any notice of appeal must be filed within 30 days after the court decides the motion for reconsideration. If the plaintiff does not file a motion for reconsideration on or before September 5, 2023, the deadline to file a notice of appeal remains September 5, 2023. So Ordered by Judge Samantha D. Elliott.(vln) (Entered: 09/01/2023)."
10. Hence, the district court ordered that the plaintiffs will have 30 days from date of district court's decision to file a notice of appeal.
11. On 9/5/23, the plaintiffs filed a motion to reconsider. The district court has not yet ruled on the motion to reconsider. It has been 8 days since the filing of the motion to reconsider.
12. However, in the abundance of caution, the plaintiff are filing this notice of appeal, in order to preserve plaintiffs' rights.
13. It is the plaintiffs' understanding that the filing of this notice of appeal immediately confers jurisdiction on the first circuit upon the filing of this notice of appeal, and so the first circuit now has jurisdiction.
14. The plaintiffs will seek clarification from the first circuit whether the first circuit would like to grant permission for the district court to rule on the motion to reconsider.
15. The plaintiffs ask that the district court take note of this notice of appeal, docket this notice of appeal, and transfer the case to the first circuit immediately.

1

Respectfully submitted,
s/ Natalie Anderson
Natalie Anderson
679 Washington Street, Suite # 8-206
Attleboro, MA 02703
Email: liberty_6@msn.com

s/ Andre Bisasor
Andre Bisasor
679 Washington Street, Suite # 8-206
Attleboro, MA 02703
Email: quickquantum@aol.com

Dated: 9-13-23

# EXHIBIT 1

UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

Natalie Anderson, et al

    v.                                           Case No. 22-cv-264-SE

Patrick Donovan, et al


ORDER OF DISMISSAL


In accordance with the provisions of Federal Rule of Civil

Procedure 41(b), this case is dismissed with prejudice for plaintiffs'

failure to comply with the court's orders and failure to prosecute.


SO ORDERED.

                                         _SDElliott_
                                         _____
                                         Samantha D. Elliott
                                         United States District Judge



Date: August 2, 2023


cc:  Natalie Anderson, pro se
     Andre C. Bisasor, pro se