## **APPELLANT NATALIE ANDERSON'S MOTION FOR LEAVE TO EXCEED WORD LIMIT FOR PETITION FOR REHEARING [UPDATED]**

1. Appellant Natalie Anderson ("Appellant" or "Appellant Anderson") respectfully moves this Court for leave to exceed the word limit prescribed by Federal Rule of Appellate Procedure 40(b) and First Circuit Local Rule 35.1 for petitions for rehearing.
2. Appellant Anderson further hereby moves the Court to allow this motion to exceed the word limit for this petition for rehearing, and to accept her petition for rehearing as filed. As grounds for this motion, Appellant Anderson states the following.

## **I. INTRODUCTION**

3. On 10-4-23, this Court issued an order directing Appellants to show cause why the appeal should not be dismissed as untimely. Appellants' response, limited to jurisdictional arguments under Rule 4(a), spanned 8 pages and focused exclusively on timeliness. Despite the absence of merits briefing from any party, the Court's final judgment disposed of the case on substantive grounds, creating ambiguity about whether Appellants' rehearing petition must now address both procedural and merits issues to secure meaningful review.
4. The petition at issue addresses exceptional circumstances warranting expanded discussion: (1) the Court's reliance on a truncated procedural record to resolve merits-based issues without full briefing, and (2) the need to clarify whether merits arguments must be included in a rehearing petition when the Court's initial decision rested solely on a jurisdictional show-cause order.
5. The requested expanded word limit aligns more closely with the length permitted for principal briefs under Rule 32(a)(7)(A) and is essential to ensure adequate development of novel legal questions and factual complexities overlooked in or by the Court's summary disposition.

## **II. BRIEF REVIEW OF RELEVANT PROCEDURAL HISTORY AND BACKGROUND**

6. On August 3, 2023, the United States District Court for the District of New Hampshire ("district court") dismissed Appellants' case with prejudice under Federal Rule of Civil Procedure 41(b) for failure to file an amended complaint by a self-imposed deadline.
7. On September 5, 2023, Appellants filed a motion for reconsideration of the district court's dismissal with prejudice.
8. On September 13, 2023, Appellants filed their notice of appeal which was docketed by this Court on September 20, 2023.
9. On September 26, 2023, the district court issued an order on the motion for reconsideration, stating:

    ENDORSED ORDER denying as moot 15 Motion for Reconsideration denying as moot 18 Motion to Intervene. Text of Order: The court granted the plaintiffs' motion for an extension of time to file a motion for reconsideration of the court's order of dismissal, clarifying that a motion for reconsideration extended the deadline to appeal until 30 days after the court decided the motion for reconsideration. Nevertheless, before the court could rule on the motion for reconsideration, the plaintiffs filed a notice of appeal of the court's order of dismissal. In light of the plaintiffs' appeal, this case is stayed and all pending motions are denied as moot without prejudice to refiling after plaintiffs' appeal is resolved. So Ordered by Judge Samantha D. Elliott.(vln)

10. On October 4, 2023, this Court issued a show cause order directing Appellants to "either move for voluntary dismissal under Fed. R. App. P. 42(b) or show cause, in writing, why this appeal should not be dismissed." The order specifically identified timeliness as the sole concern, stating that "it appears that this appeal should be dismissed as untimely" because "[a]n untimely motion for reconsideration does not toll the time for filing a notice of appeal."
11. On December 4, 2023, Appellants filed their response to the show cause order, addressing only the timeliness concern as directed.
12. On December 14, 2023, Appellants filed a supplemental response addressing arguments raised by a proposed intervenor (whose intervention was subsequently denied).
13. Nearly five months later, on May 1, 2024, the case was submitted to the panel consisting of Chief Judge Barron, Judge Gelpi, Jr., and Judge Rikelman.

14. On September 23, 2024, the Court issued its judgment affirming the district court's dismissal on the merits rather than addressing only the timeliness issue raised in the show cause order. In its judgment, the Court stated that it would "assume, without deciding, that the appeal is properly before the court".[1]
15. On February 25, 2025, the Court extended the time to file a petition for rehearing to March 27, 2025.
16. On March 14, 2025, Appellant filed a motion for clarification on the following:
    a) whether this Court's decision to affirm without allowing merits briefing was an oversight or an intentional deviation from standard appellate procedure, and whether Appellants were expected to argue the merits of their underlying case within their response to the show cause order on timeliness, despite the order's specific focus and the word limit for motions under Federal Rule of Appellate Procedure 27(d)(2).
    b) whether the Court expects her to address the underlying merits of the appeal in her forthcoming petition for rehearing (which clarification was necessary because petitions for rehearing typically address errors in the Court's decision rather than presenting arguments that were never made in the first instance).
    c) whether she is expected to address the underlying merits of the case along with the procedural issues in this court, all within the 3,900-word limit for petitions for rehearing established by Federal Rule of Appellate Procedure 40(b)(1) (especially since, given that principal briefs are normally allowed 13,000 words under Rule 32(a)(7), compressing a full merits argument into a 3,900-word petition for rehearing would significantly limit Appellant's ability to present her case).
17. On March 24, 2025, the Court issued an order denying clarification, essentially stating that none was necessary, but extending the time to file petition for rehearing until April 7, 2025. NB: The order ostensibly addressed only paragraph 14a above, but not paragraph 16b or 16c above. This effectively left appellant without clarification relief requested.
18. On April 2, 2025, appellants filed a motion to allow the district court to rule on pending motion for reconsideration.
19. On April 4, 2025, a single justice of the Court issued an order denying the motion and then resetting a final deadline for filing a petition for rehearing to April 11, 2025.
20. On April 11, 2025, during Friday night, the appellant submitted her petition for rehearing to the Court by email, as an alternative/remedy to technical problems encountered with submitting the petition via the e-filing system, and then, after contacting the clerk's office on the next business day, and upon recommendation of the clerk's office, she re-filed her petition via the e-filing system on Tuesday, April 15, 2025 (after further technical problems with efiling were encountered on Monday April 14, 2025 were resolved with the assistance of the clerk's office). Note: It should be noted that appellant also had additional issues that affected this issue, that are confidential and which are outlined in an accompanied sealed ADA request.

### III. IMPLICATIONS FROM PROCEDURAL HISTORY AND BACKGROUND
#### A. The Show Cause Order Only Pertained To Timeliness of Appeal

21. The Court's show cause order only pertained to "why this appeal should not be dismissed as untimely."
22. The Appellants' response to the show cause order only contained arguments addressing "why this appeal should not be dismissed as untimely." The appellants did not address the underlying merits of the appeal nor did the appellants include facts and arguments showing why the underlying dismissal by the district court was unfair, unwarranted, or erroneous. This includes but is not limited to additional facts that are not evident in the district court case docket or record, of which this Court can and should take judicial notice.
23. When the appellants filed their response to the show cause order, they followed the instructions of the Court carefully, and adhered to addressing the grounds, bases, and reasons for why the Court issued the show cause order, which was for timeliness.
24. The Court did not issue instructions to the appellants that they should brief the underlying merits of the appeal in their response to the show cause order for timeliness of appeal, nor could the appellants infer from the show cause order that they were in fact required to brief the merits of the appeal, in addition to showing why the appeal should not be dismissed for untimeliness.

---

[1] NB: The Court's order did not address the propriety of the dismissal with prejudice. The appellants did not have a chance to address these and other issues because they were not allowed an opportunity to address the merits of the appeal.

25. The Appellants spent 8 pages in their response to the show cause order, focusing exclusively on the timeliness of appeal issue and were disciplined to not go beyond what the show cause order required or instructed.
26. The Appellants were thus taken by surprise by the Court's judgment on the merits of the underlying appeal when they acted to resolve the show cause order for timeliness (which was ostensibly resolved in appellants' favor).

### B. Appellants' Submissions Were Incomplete Given the Limited Scope of the Show Cause Order

27. In its judgment, the Court stated that it affirmed the district court's dismissal "[a]fter careful review of the record and of appellants' submissions thus far." This phrasing is particularly notable because it acknowledges the incomplete nature of Appellants' submissions. The phrase "submissions thus far" inherently recognizes that Appellants' presentations to the Court were preliminary and incomplete. It serves as a key indicator that the appellants' submissions were not complete i.e., "submissions thus far", which signify incompleteness. This statement alone should have triggered a reminder or otherwise alerted the Court that something was not quite right with the procedural posture of the appeal (i.e., that the appellants were cut off from completing their submissions). It is not as though the appellants could have submitted further submissions at this preliminary show cause order stage of the appeal, as that would be improper and violative of the show cause order instructions. By way of analogy, if the defendants had participated in this appeal, what the Court did here with the appellants, would be tantamount to deciding the merits of the appeal, without allowing the defendants to submit their brief on the merits of the appeal. If it would be unfair to do so to the defendants, then it must be likewise unfair to do so to the appellants.
28. The only submissions that Appellants made were their response to the show cause order regarding timeliness and a supplemental response addressing arguments raised by a proposed intervenor. These submissions were constrained by the word limit for motions under Federal Rule of Appellate Procedure 27(d)(2). This word limit, less than half of what is permitted for principal briefs under Rule 32(a)(7), made it practically impossible to address both the timeliness issues and present a comprehensive argument on the merits of the appeal.
29. Furthermore, responses to show cause orders are typically focused exclusively on the issue raised in the order. It would have been procedurally irregular and potentially inappropriate for Appellants to include full merits arguments in their response to a show cause order that specifically addressed only timeliness. Such an approach could have been viewed as non-responsive to the Court's directive or as attempting to circumvent the normal briefing process. So given that the show cause order focused solely on the timeliness of the appeal, it was not apparent that Appellants should have included their full merits arguments in that response. Moreover, the word limit for motions under Federal Rule of Appellate Procedure 27(d)(2) would have made it extremely difficult to present both timeliness arguments and a full discussion of the merits of the appeal. By contrast, principal briefs are allowed 13,000 words under Rule 32(a)(7).
30. The Court's recognition that it was reviewing only Appellants' "submissions thus far" should have prompted the establishment of a briefing schedule to allow Appellants to present their complete arguments on the merits of the appeal. Instead, the Court rendered judgment based on admittedly incomplete submissions, depriving Appellants of their opportunity to present their case fully.

### IV. PROCEDURAL IRREGULARITIES REQUIRING EXPANDED TREATMENT IN THE PETITION FOR REHEARING

### A. The Court's Summary Affirmance Without Merits Briefing Presents Due Process Concerns

31. This Court affirmed the district court's dismissal without allowing any briefing on the merits of the appeal. The only order issued by this Court prior to its judgment was a show cause order regarding timeliness. After Appellants responded to that order, the Court proceeded directly to affirming the dismissal "substantially for the reasons set forth by the district court".
32. This Court's decision to affirm the district court's dismissal without permitting any briefing on the merits raises significant due process concerns and contradicts this Circuit's established precedent. This summary disposition without briefing further violates due process. A court of appeals should not dismiss an appeal on the merits without affording the appellant an opportunity to brief the issues. Summary disposition is appropriate only in those rare cases in which the frivolousness of the appeal is so patent that it would be a waste of judicial resources to allow the case to proceed further. No such finding of patent frivolousness was made in this case.

Given the lack of any finding of frivolousness, the Court should have allowed full briefing before deciding the merits. Moreover, even hypothetically-speaking, assuming arguendo that frivolousness could be found, how could the Court properly find frivolousness without allowing or reading the brief?
33. Furthermore, the Court's judgment acknowledges that it had to "assume, without deciding, that the appeal is properly before the court." This approach—bypassing jurisdictional questions to reach the merits—typically applies when the merits question is more readily resolved. However, this approach presupposes that the parties have had a full and fair opportunity to present their arguments on the merits, which did not occur here.
34. The Supreme Court has consistently recognized that due process requires notice and an opportunity to be heard before a court renders judgment. Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950). In the appellate context, this typically means the opportunity to file briefs addressing the substantive issues on appeal. By affirming the district court's dismissal without allowing Appellants to brief the merits, this Court effectively denied Appellants their fundamental right to be heard on appeal.
35. Furthermore, Federal Rule of Appellate Procedure contemplates that after preliminary matters like jurisdiction are resolved, the court will proceed to set a briefing schedule for the merits of the appeal. The Court's decision to bypass this critical step of the appellate process raises serious procedural concerns that warrant clarification.
36. Federal Rule of Appellate Procedure 31(a) states: *"The appellant must serve and file a brief within 40 days after the record is filed."* This rule establishes the right and expectation for appellants to file briefs.
37. Similarly, when a show cause order is issued, the court does not set the briefing schedule until after the timeliness issue is resolved. This allows the court to first determine whether the appeal can proceed before setting deadlines for briefs on the merits. In this instance, the show cause order focused solely on the timeliness of the appeal as a threshold or jurisdictional issue (i.e., whether the Court had jurisdiction over the case). Appellants placed all or much of their focus on addressing timeliness and nothing much further because the appellants were led to believe that any merits argument would be premature without resolution of the timeliness issue. As a result, Appellants did not properly address the merits or the record of the underlying district court case, as it relates to the merits of the appeal.
38. Given the specific focus of the show cause order, it was not apparent that Appellants should have included their full merits arguments in that response, if in fact they should have done so.
39. Without adequate notice, Appellants did not receive due process and were deprived of an opportunity to provide briefing on the merits of the appeal. It is the Appellants' understanding that a court of appeals should not dismiss an appeal on the merits without affording Appellants opportunity to brief the issues.
40. Appellants do not know or understand why the Court seems to have departed from its standard practice and prior precedent, in this case.
41. Given this lack of clarification, the appellant is not sure what is required of them in the petition for rehearing, regarding the underlying merits of the appeal.
42. The Court had no opportunity to review the appellants' arguments regarding the underlying merits of the appeal because none was provided by the appellants, which in turn was because no briefing on the underlying merits of the appeal was requested, instructed, or ordered by the Court. This set of circumstances has introduced confusion and lack of clarity to the Appellants.

### B. The Show Cause Order's Limited Scope Did Not Signal That Merits Briefing Would Be Bypassed

43. The Court's show cause order dated October 4, 2023, focused exclusively on the timeliness of the appeal.
44. When faced with this narrow directive, Appellants reasonably focused their response solely on the timeliness issue. Nothing in the show cause order indicated that Appellants should also address the substantive merits of their appeal. Indeed, doing so would have been potentially inappropriate and contrary to the Court's specific instructions. The Federal Rules of Appellate Procedure distinguish between jurisdictional motions practice and merits briefing, allotting different word limits and procedural sequences to each. Compare Fed. R. App. P. 27(d)(2) (limiting motions to 5,200 words) with Fed.R.App. P. 32(a)(7) (allowing principal briefs 13,000 words).
45. The structure of appellate practice is built upon the understanding that preliminary matters such as jurisdiction and timeliness are resolved before the parties engage in full briefing on the merits. This sequential approach ensures that resources are not wasted preparing extensive merits briefs in cases where the court lacks jurisdiction. See Steel Co. v. Citizens for a Better Environment, 523 U.S. 83, 94-95 (1998) (discussing the importance of resolving jurisdictional questions before addressing merits).

46. By affirming on the merits immediately after resolving the timeliness issue (or assuming without deciding that the appeal was timely), the Court apparently deviated from standard appellate procedure without notice to Appellants. This unusual procedural approach left Appellants with no opportunity to present their substantive arguments challenging the district court's dismissal.

### C. The Court Should Have Established a Briefing Schedule After Resolving the Timeliness Issue

47. The Court evidently decided that the appeal was timely filed (i.e., the Court stated that it assumes without deciding that it was timely which effectively was a designation that the appeal is treated as timely). It would be grossly unfair for the court to, after-the-fact, reverse course and treat it as untimely, after already stating that it effectively was treating it as timely.

48. Once the Court determined—or assumed without deciding—that the appeal was timely, the appropriate next step normally would have been to establish a briefing schedule for the merits of the appeal. This is the standard procedure in federal appellate practice and is contemplated by the Federal Rules of Appellate Procedure. Thus, the court should have proceeded to set a briefing schedule and allow the appellants to submit a brief. This is the only right and fair thing to do. Even assuming arguendo that after the court set a briefing schedule and the appellants submitted their briefs, the court could or would have possibly reached a similar conclusion, the fact of the matter is that the court should allow the appellants their day in court and a chance to present their case on the merits. It cannot be that the Court is taking the position that it does not need briefing on the merits because it already prejudged the case or that there are no set of facts, arguments, or law that the appellants could ever possibly present that would change the outcome. If the Court were somehow to take such a position, it arguably would undermine, if not utterly destroy, the concept of due process, a fair trial and just jurisprudence, not to mention obliterate the precedent set by this very Court, if not also set by the US Supreme Court (as it is such a fundamental aspect of fairness). This is not the kind of case that lends itself to summary disposition without briefing, especially where the outcome must turn on certain facts that the Appellant is more intimately acquainted with and where the District Court's dismissal ruling was only one sentence.

49. According to the customary internal operating procedures of the Court, the clerk's office is supposed to review the case to determine whether there may be a jurisdictional defect, after an appeal is docketed. If the clerk's office identifies a potential jurisdictional defect, it will typically issue an order directing the appellant to address the issue. Nothing in this procedure suggests that the Court will proceed directly from resolving jurisdictional issues to deciding the merits without briefing. It is the appellants' understanding that, in a circumstance like this one, either the Court finds that the appeal was untimely and dismisses the appeal for untimeliness OR the Court rules that the appeal was timely and then proceed to briefing.

50. Other circuits have explicitly recognized the impropriety of deciding appeals on the merits without affording the parties an opportunity to brief the substantive issues. See In re Rains, 428 F.3d 893, 902 (9th Cir. 2005) (concluding that it was error to decide a legal issue without allowing briefing).

51. By proceeding directly from the show cause order on timeliness to a decision on the merits without any intervening briefing schedule, the Court deprived Appellants of the procedural protections that are fundamental to appellate practice. This approach is particularly concerning in a case where the Court's judgment explicitly cites substantive legal standards that Appellants never had an opportunity to address, including Vivaldi Servicios De Seguridad, Inc. v. Maiso Grp., Corp., 93 F.4th 27, 30-31 (1st Cir. 2024) and Tower Ventures, Inc. v. City of Westfield, 296 F.3d 43, 47 (1st Cir. 2002).

### D. The Case Was Improperly Submitted as Though Full Briefing Had Occurred

52. The docket entry for May 1, 2024, states: "CASE submitted. Panel: David J. Barron, Chief Appellate Judge; Gustavo A. Gelpi, Jr., Appellate Judge; Julie Rikelman, Appellate Judge." This designation of "CASE submitted" is typically used after briefing is complete and the case is ready for decision on the merits. See Fed. R. App. P. 34(j)(3) (discussing submission without oral argument after "briefs have been filed").

53. The use of this designation in this case creates the incorrect impression that the case had proceeded through normal briefing channels when, in fact, no merits briefing had been permitted or completed. This procedural irregularity suggests a possible clerical or administrative error in how the case was processed and presented to the panel.

54. This seems to be part of the misconception here, where the responses to the show cause order was presented to the full panel as though it involved briefing. But it had not been briefed. Also, another point of confusion

5

could be the fact that the attempted intervention by a proposed intervenor cluttered the docket with peripheral issues that are not normally attendant to the procedural posture endemic to a show cause order for timeliness. Either way, the appellant believes that the show cause order issue should not have been presented as the case being submitted to the full panel of this court for full resolution, as though the case had been fully briefed.

55. The Federal Rules of Appellate Procedure distinguish between different types of motions and proceedings. Rule 27 governs motions practice, including responses to show cause orders, while Rules 28-32 govern briefs on the merits. The conflation of these distinct procedural mechanisms—treating responses to a show cause order as though they constituted full briefing on the merits—undermines the integrity of the appellate process and violates Appellants' reasonable expectations regarding how their appeal would be handled.
56. The procedural irregularity in how this case was processed and submitted to the panel further supports Appellant's request for procedural relief.

## V. FURTHER GROUNDS REQUIRING EXPANDED TREATMENT IN THE PETITION FOR REHEARING

57. Expanded treatment for the petitions for rehearing is needed for the following reasons:
58. The appellants need to address both the procedural issues as well as the merits of the appeal. The procedural issues that need to be addressed is its own separate 'beast' to deal with, and this alone would eat up the customary word limit allotted for petitions for rehearing.
59. Appellants never got an opportunity to brief the appeal. Appellants were deprived of that opportunity. Appellants need some modicum of an opportunity to be heard on the merits and this is our only opportunity to do so in this court, prior to resolution of the petition for rehearing. If Appellants don't act now to say something about it, Appellants fear we might not have another chance. So, this is Appellants only opportunity to try to address the merits of the appeal, in this case and in this court, though this is not a complete brief. Appellants still need a proper opportunity to brief the appeal including on the interlocutory orders that preceded the dismissal.
60. As noted above, the Appellants, on 3-24-25, sought clarification on whether we were expected or required to address the merits of the appeal in the petition for rehearing AND if so, whether we were expected to address both, within the customary word limit, but the court didn't provide any clarification in its orders and ostensibly left the questions unanswered. The Court declined to provide clarification on those questions, thus it is presumable that the Court did not object to a situation where if both were addressed, that more space could be used.
61. However, because the Appellants truly didn't know what to do, the Appellants also contacted the case manager for our case in this Court about the issue. She recommended to Appellants that they file a motion to exceed word limits along with the petition for rehearing (once completed). She told us that if our concern is that we need more space to address both the procedural issues and the merits issues, then a solution is to take the space we need to address those issues and then file a motion to exceed word limits explaining we needed the additional space. When we asked her if such a motion should be filed prior to the filing of the petition for rehearing, but she told us "no" and that the best approach is to file it along with the petition because only once the petition was completed and ready to be filed, would it be clear the additional space needed. She further told us that this is how she has seen other appellants do it in the past. Thus, Appellants did not file this motion in advance, but waited until the petition was completed, as this is what the case manager told Appellants to do. Appellants thus followed the case manager's advice/instructions and are filing this motion along with or around the same time period as the petition.
62. The bottom line is that the Appellants decided to err on the side of addressing the merits of the appeal in the petition for rehearing (not the underlying complaint filed in district court but the merits for why the district court should not have dismissed the case), and in doing so, they needed to expand the treatment of the issues well beyond the customary word limits for a petition for rehearing.
63. These are unique circumstances that warrant expanded treatment and use of excess word beyond the limit..
64. Also, there are ADA issues that require accommodation. See accompanying sealed ADA request[2], filed conventionally.

---

[2] Note: See also ADA request for late filing (as appellants have already filed the petition) which also filed conventionally.

# VI. DUE PROCESS REQUIRES ENLARGEMENT OF WORD LIMIT
## A. Nature of the Petition:
65. Appellant Anderson's petition for rehearing spans approximately 13,000 words. This length reflects:
    a) A detailed treatment of the Court's analysis as referenced in the 9-23-24 judgment.
    b) A merits-based challenge to the Court's sua sponte substantive rulings.
    c) Citations to and analysis of intervening case law and authorities that crystallize conflicts under First Circuit precedent.

## B. Unprecedented Procedural Posture Demands Expanded Analysis
66. This case presents a "perfect storm" of procedural and substantive issues.
67. The Court's decision to reach the merits without briefing created a hybrid procedural posture requiring appellant to address, de novo, the merits conclusions that formed the basis for judgment.
68. The 3,900-word limit—designed for routine rehearing petition situations—is inadequate to untangle this procedural knot.
69. The Court's show-cause order framed timeliness as the sole issue, leading Appellants to omit merits arguments in prior filings under FRAP 28(a)(5). The petition faced a Catch-22:
    a) If merits arguments are required for rehearing, Appellants must introduce them de novo.
    b) If merits arguments are irrelevant, Appellants must still distinguish several substantive holdings in the Court's judgment, that evidently assumed a fully briefed record.
70. This ambiguity forced Appellants to brief both scenarios, paralleling the 13,000-word limit for principal briefs where "the subject matter clearly requires expansion" under Local Rule 32.1(c).
71. The word limit of 3900 in this instance was insufficient to complete the petition for rehearing, due to the nature and complexity of the issues.
72. There are critically important points of facts and/or of law that needed to be brought to the court's attention, but the complexity of the issues, and the importance of the facts involved, necessitates an explanation in excess of the allotted word limit. This limit prevents appellant from fully or properly presenting her arguments, especially since complex, novel and/or multiple issues are involved.
73. Appellants ask that the court allow an accommodation of excess words to adequately assert and preserve all arguments needed. This is warranted given the complexity of the legal issues involved and the significance of the issues that are addressed.
74. It would also be of benefit to this court in its decision making to be apprised of the appellant's merits arguments in this matter so that justice may be served.
75. Therefore, Appellant's request is not an unreasonable request, especially in light of the multiplicity of careful/critical issues that are needed to be addressed in order to try to fight an uphill battle to try to persuade the court to grant rehearing, on a pro se basis, and in light of the liberal construction that should be afforded pro se attempts to persuade the court. As one who is not trained as a lawyer, appellant hopes that the court will grant the benefit of the doubt and some leniency on technical matters regarding her pleading before the court. NB: Please grant a pro se liberal construction to this pleading in accordance with the attendant US supreme court rulings[3] and other supporting case law as well as pursuant to the dictates of modern socially responsible and conscientious jurisprudence. Also, pro se pleadings are supposed to be treated in a less strict manner. Pro se pleadings are required to be treated less stringently. So this further supports this motion.

---

[3] The Supreme Court has recognized the need for additional consideration when dealing with pro se litigants. In Erickson v. Pardus, 551 U.S. 89, 94 (2007), the Court held that pro se complaints must be liberally construed and "held to less stringent standards than formal pleadings drafted by lawyers". The Supreme Court also has recognized that pro se pleadings should be held "to less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520 (1972). The issues that need to be presented for rehearing are complex and warrant careful consideration, particularly for a pro se litigant. In Tower Ventures, Inc. v. City of Westfield, 296 F.3d 43, 47 (1st Cir. 2002), this Court emphasized the importance of providing litigants with a fair opportunity to present their case. Furthermore, in Castro v. United States, 540 U.S. 375, 381-82 (2003), the Supreme Court recognized the obligation of courts to ensure that pro se litigants are given a fair opportunity to present their arguments. Jones v. Barnes, 463 U.S. 745, 751 (1983) further provides that pro se litigants cannot be held to "the same high standards as trained counsel". Also, Castro v. United States, 540 U.S. 375, 382 (2003) similarly provides that Courts must liberally construe pro se filings to avoid "inadvertent forfeiture."

# VII. CONFLICTING POSTURES NEED TO BE ADDRESSED IN EXPANDED PETITION
## A. District Court's Stay Invitation

76. As noted in the procedural history and background section, the district court explicitly preserved Appellants' right to refile their reconsideration motion after appeal resolution. The September 26, 2023 order states: "*In light of the plaintiffs' appeal, this case is stayed and all pending motions are denied as moot without prejudice to refiling after plaintiffs' appeal is resolved.*" This creates a procedural pathway for Appellants to present reconsideration arguments (or evidence) to the district court in order to reconsider the dismissal with prejudice.
77. NB: The district court technically denied the motion for reconsideration as moot because appellants filed a notice of appeal before the court ruled on it; but the denial was not on the merits of the motion. The order explicitly states that the motion for reconsideration was denied without prejudice to refiling after the appeal is resolved. The district court stayed the motion for reconsideration until after appeal is resolved. This situation has set up a kind of Kafkaesque procedural trap as will be further elucidated below.

## B. This Court's Judgment On The Merits Was Entered Without Briefing

78. This Court affirmed dismissal based solely on Appellants' response to a show cause order focused on timeliness. The Court:
    a) Assumed jurisdiction "without deciding" timeliness (Judgment at 2);
    b) Cited Local Rule 27.0(c) to affirm summarily, stating "no substantial question" existed.
79. Appellants believe that this bypassed due process requirements where merits adjudication without briefing is prohibited unless the appeal is "patently frivolous."
80. This Court thus affirmed dismissal without merits briefing, which appellants believe is a fundamental due process violation. This is further because this court does not even know which issues the appellant planned to appeal. The court assumed that the dismissal was the only item being appealed but that is not so. Appellants had planned to appeal prior decisions including failure to issue summons for service of process and failure to set a deadline to serve process, as well as the July 21, 2022 order on preliminary injunction. By not allowing any briefing, this court could not know what issues appellants intended to appeal. This is just one example of the devastating effects of not allowing plaintiff any opportunity to brief the appeal.
81. Appellants face permanent loss of their civil rights claims without full merits review. The opportunity afforded by the district court invitation to refile motion for reconsideration provides an opportunity for merits review by the district court, which has not yet occurred.
82. Appellants have a constitutionally protected interest in such meaningful merits review as this case involves constitutional claims (1st/14th Amendment issues) and because dismissal with prejudice constitutes "legal death penalty" sanction.

## C. Irreconcilable Procedural Conflict

83. Appellants faced a Hobson's choice:
    a) Option 1: File a rehearing petition in this court addressing the merits issues that are not yet ruled on by the district court but are contained in the pending stayed motion for reconsideration filed in the district court. This could risk waiver of rights in the district court and potentially could prejudice Appellants' ability to refile reconsideration motion in the district court.
    b) Option 2: Omit merits arguments from rehearing petition which could risk forfeiture in this court in terms of presenting full arguments in this appeal.
84. Appellants are genuinely concerned that this unfair situation would prejudice them no matter what they do.
85. It should be noted that appellants spoke to the case manager in this court and was informed that appellants have the right to file another notice of appeal if the district court denies the refiled motion for reconsideration (assuming arguendo that this court denies petition for rehearing and that the district court thereafter denies any refiled motion for reconsideration). NB: The Appellant assumes or understand that the first circuit's 9-23-24 judgment affirming the dismissal by Judge Elliott of the NH federal court does not impede Judge Elliott from reversing her original decision of dismissal with prejudice, if the first circuit upheld its judgment after appellant's filing a petition for rehearing. The Appellant also assumes or understands that she would be free to file another appeal on the refiled motion for reconsideration in the NH federal court as invited to do by Judge Elliott in her 9-26-23 order, should that become necessary.

### D. Addressing The Preservation Of District Court's Ability To Correct Its Own Judgment

86. The district court expressly preserved Appellants' right to refile their reconsideration motion after appeal resolution. Judge Elliott's original dismissal contained potential reversible errors, including failure to consider lesser sanctions. If the district court reverses the dismissal, then further appeal would be become moot, eliminating the need for filing a petition for rehearing and the need to brief the case on the merits in this court. It would also rectify the situation of the appellant being deprived of an opportunity to brief the appeal before this court ruled on the merits of the case. If the district court denies reconsideration, then the appeal can be consolidated with all of the relevant pending issues being brought into one matter to be fully resolved by this court.

### E. This Court's Judgment Did Not Address Pending Motion For Reconsideration Not Yet Ruled On In The District Court

87. This Court's summary affirmance focused solely on whether the district court abused its discretion in dismissing under Rule 41(b). It did not—and could not—address Appellants' forthcoming motion for reconsideration arguments to be refiled in the district court, which will include arguments and documents showing excusable neglect for missing deadlines and showcase the legal error of the district court's failure to consider lesser sanctions (Benitez-Garcia v. Gonzalez-Vega, 468 F.3d 1, 5 (1st Cir. 2006)).
88. It should be noted that appellants spoke to the clerk/case manager of this Court about this issue and were informed that because the district court's order staying the motion for reconsideration was issued after the notice of appeal, the district court did not include it in the official transmittal of the record to the first circuit court. However, it is not clear whether the court reviewed or intended to include appellants' motion for reconsideration that was filed in the district court but stayed by the district court, in its basis for the September 23, 2024 judgment. If this court did include it, then that would result in a procedural irregularity, where a motion that was not ruled on by the district court and was stayed by the district court, was used to adjudicate an appeal without allowing briefing.

### F. Due Process Requires Avoiding Procedural Traps

89. The Fifth Amendment prohibits "sandbagging" litigants with hidden waiver risks. See Mullane v. Cent. Hanover Bank & Tr. Co., 339 U.S. 306, 313 (1950) (due process requires notice and opportunity to be heard).
90. Forcing Appellants to guess whether to brief merits issues in a rehearing petition or risk waiver or to avail the use of the district court's invitation to file reconsideration after appeal—violates these principles.
91. This unique procedural paradox is one where Appellants risk waiver no matter how they proceed. The district court's invitation to refile reconsideration and this Court's summary affirmance without briefing create incompatible obligations.
92. Justice demands resolution of this conundrum to prevent constitutional harm from such procedural irregularities.
93. One aspect of this conundrum involves the procedural trap of having to address both procedural issues and the merits issues, on a de novo basis, in a petition for rehearing where briefing prior to judgment on the merits by this court was not allowed. One aspect of rectifying this conundrum is granting excess words to address the above issues. The petitions also need to address this procedural conundrum and needs added space to do so.

## VIII. CONCLUSION

94. Appellants respectfully submit that an excess of the word limit is necessary to fully set out the grounds for rehearing. Appellant is asking for a certain amount of excess of the word limit that will allow Appellants to be meaningfully heard through the pleading as filed.
95. NB: Please note that the points and arguments made herein apply with equal force to Appellant Bisasor's petition for rehearing that was separately filed.
96. For the foregoing reasons, Appellant respectfully requests the Court grant leave to file an approx. 13,000-word petition for rehearing, allow exceeding of the word limit, or grant other relief deemed just and proper.

Respectfully submitted,
/s/ Natalie Anderson
Natalie Anderson

April 15, 2025

**CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the First Circuit using the appellate CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

<u>/s/ Natalie Anderson</u>
Natalie Anderson